1              UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF OHIO
2                     EASTERN DIVISION

3    UNITED STATES OF AMERICA,     )
                                   )  Case No. 1:14-cr-438
4             Plaintiff,           )  Youngstown, Ohio
                                   )  Thursday, July 2, 2015
5        vs.                       )  10:15 a.m.
                                   )
6    RYAN D. MALONE,               )
                                   )
7             Defendant.           )

8                 TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE BENITA Y. PEARSON
9               UNITED STATES DISTRICT JUDGE

10                      SENTENCING

11   APPEARANCES:

12   For the Government:
          Office of the U.S. Attorney
13        Northern District of Ohio
          By:  Mary Kendra Klump, Esq.
14        Suite 400
          801 Superior Avenue, West
15        Cleveland, Ohio  44113
          (216) 622-3689
16        kendra.klump@usdoj.gov

17

18

19

20

21              Mary L. Uphold, RDR, CRR
     Thomas D. Lambros Federal Building and U.S. Courthouse
22              125 Market Street, Room 337
                Youngstown, Ohio  44503-1780
23                   (330) 884-7424
               Mary_Uphold@ohnd.uscourts.gov
24

         Proceedings recorded by mechanical stenography;
25   transcript produced by computer-aided transcription.

1    **APPEARANCES (CONTINUED):**

2    **For the Defendant:**
         Office of the Federal Public Defender
3        Northern District of Ohio
         **By:**  Darin Thompson, Esq.
4        750 Skylight Office Tower
         1660 West Second Street
5        Cleveland, Ohio  44113
         (216) 522-4856
6        darin_thompson@fd.org

7
                                    - - -
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

- - -

1  THE CLERK:  The matter before the court is Case

2  Number 1:14-cr-438, the United States of America versus Ryan

3  D. Malone.

4  THE COURT:  Good morning, everyone.  You may all

5  retake your seats.

6  ALL:  Good morning.

7  THE COURT:  Counsel for the United States, will

8  you please introduce yourself for the record and the person

9  seated with you at counsel's table?

10  MS. KLUMP:  Good morning, Your Honor.  Kendra

11  Klump for the United States.  Along with me at table is

12  Special Agent Paul Cruz of the FBI.

13  THE COURT:  Welcome to you both.

14  MS. KLUMP:  Thank you.

15  THE COURT:  Counsel for Mr. Malone, will you

16  please introduce yourself for the record, along with your

17  client?

18  MR. THOMPSON:  Good morning, Your Honor.  Darin

19  Thompson from the Federal Public Defender Office, and to my

20  left is Ryan Malone.

21  THE COURT:  Welcome to you both.

22  I am pleased that our representative from the

23  Office of Pretrial Services and Probation is here with us

1    today.  Sir, will you please introduce yourself for the

2    record?

3         PROBATION OFFICER:  Good morning, Your Honor.

4    Jordan Wlotzko with United States Probation.

10:16:21  5         THE COURT:  Welcome, Mr. Wlotzko, and thank you

6    for not only being here, but for the work you've done in

7    helping us all to prepare for today's sentencing hearing.

8         Mr. Malone, this hearing has been scheduled to

9    allow me to impose sentence upon you.  And this sentencing

10:16:36  10   follows the indictment brought against you charging you with

11   being a felon in possession of firearm and ammunition, your

12   plea of guilty to that count, and that plea of guilty was

13   taken by a magistrate judge and accepted by me.

14        I have reviewed, of course, the transcript of that

10:16:53  15   hearing.  In addition to that, I've also reviewed the

16   sentencing memorandum that was filed on your behalf by your

17   counsel, Mr. Thompson.

18        Mr. Thompson, this morning I was given a copy of

19   sentencing -- a supplement to the sentencing memorandum.

10:17:12  20   And I note that it contains several letters written to the

21   court in support of Mr. Malone.  So I also have that.

22        The presentence investigation report that regards

23   Mr. Malone was first disclosed in May, on the 6th of that

24   month, this year, 2015.  Its final disclosure was made on

10:17:36  25   the 23rd of June, this year, 2015.  I have that report.

1    I've reviewed it.

2         Let me start with you, Ms. Klump.  Is there

3    anything that I haven't listed that you believe I should

4    have listed to assure you that I am prepared to go forward

10:17:50  5    today?

6         MS. KLUMP:  No, Your Honor.

7         THE COURT:  Thank you.

8         Mr. Thompson, anything you can think of, sir?

9         MR. THOMPSON:  No, Your Honor.

10:17:56  10         THE COURT:  Ms. Klump, let me start again with

11    you.  The final presentence report that I've identified, the

12    one issued on the 23rd of June, this year, when you look at

13    page 21 of that report, it tells me there are no objections

14    filed on behalf of the government.

10:18:13  15         Is that true?

16         MS. KLUMP:  Yes, Your Honor.

17         THE COURT:  Have you had enough time to review

18    fully this report?

19         MS. KLUMP:  Yes, I have, Your Honor.

10:18:19  20         THE COURT:  Thank you.

21         Mr. Thompson, on that same page, that's page 21,

22    it tells me that there is one unresolved objection.  Is that

23    all that you have that's unresolved regarding this

24    presentence report?

10:18:34  25         MR. THOMPSON:  Actually, Your Honor, that is no

1    longer unresolved.  In the sentencing memo, I believe I

2    indicated that we are withdrawing that objection.

3         THE COURT:  I note the objection on the addendum

4    at page 21 is withdrawn.  Thank you, Mr. Thompson.

10:18:55  5       MR. THOMPSON:  Thank you, Your Honor.

6         THE COURT:  And otherwise, sir, you've had enough

7    time to fully review the presentence report?

8         MR. THOMPSON:  Yes, Your Honor.

9         THE COURT:  Along with Mr. Malone?

10:19:07  10      MR. THOMPSON:  Yes.

11        THE COURT:  Then, Counsel, this is the way I'll

12   proceed.  And, Mr. Malone, it is important to me that you

13   understand this as well.

14        The first part of this hearing is going to be

10:19:17  15   reviewing with counsel the presentence report and assuring

16   myself that I've correctly calculated the advisory

17   guidelines sentencing range.

18        Once I've completed that part of the hearing, I'll

19   then move on to the part of the hearing wherein I apply not

10:19:36  20   only the law, but my discretion to develop what I believe is

21   a sufficient, not greater than necessary sentence to be

22   imposed in this case.

23        I will, of course, give consideration to the

24   statutory maximum of 120 months, the correct guidelines

10:19:54  25   range, which is advisory.  And when I take into

1    consideration those things, I'll certainly also be taking

2    into consideration the 3553(a) factors, meaning those

3    factors that will help me to ultimately fashion your

4    sentence.

10:20:12    5        Not only the nature and circumstances of the

6    offense, but things regarding your history and

7    characteristics, prior record, any violence in that record,

8    physical abuse, diminished capacity, employment, age,

9    substance abuse, family ties.

10:20:27    10        Just punishment is part of what I'll be

11    considering as well, but that's not all, adequate

12    deterrence, protecting the public, and reflecting the

13    seriousness of the offense.

14        And while considering all of that, to the extent

10:20:38    15    it can be achieved, sir, I will also give serious

16    consideration to what can be done to allow you to improve

17    your conduct and condition.

18        With that, I'm ready to begin.  Counsel, what I'll

19    do is direct your attention to certain parts of the

10:20:57    20    presentence report.  I won't specifically ask about every

21    paragraph, Mr. Malone, of this many-paragraph report.  So if

22    there is any part that I don't volunteer to address, just

23    ask and we'll address that part together on the record.

24        The first place where I'd like to direct your

10:21:20    25    attention is on page 4, under the subtopic heading

1   "Adjustment for Acceptance of Responsibility," paragraph 10.

2   Mr. Malone, this is what paragraph 10 says:  "The

3   defendant provided the following statement through defense

4   counsel wherein he admitted involvement in the offense."

10:21:42  5   And this is in quotes, Mr. Malone.  After I read

6   it, I am going to ask you two questions.  The first will be

7   if that's indeed your statement provided through counsel to

8   the probation office.  The next is if I read it correctly.

9   "On November 4th, 2014, I possessed the firearm

10:22:02  10   described in the indictment after having been convicted of a

11   felony.  I deeply regret my conduct and ask the court for

12   lenience."

13   Sir, is that indeed your statement?

14   THE DEFENDANT:  Yes, Your Honor.

10:22:12  15   THE COURT:  Did I read it correctly?

16   THE DEFENDANT:  Yes.

17   THE COURT:  On that same page, this time under the

18   subtitle "Offense Level Computation," starting with

19   paragraph 11, it identifies that this report has been

10:22:30  20   compiled using the 2014 Guidelines Manual.

21   Any objection to paragraph 11, Ms. Klump?

22   MS. KLUMP:  No, Your Honor.

23   THE COURT:  Mr. Thompson?

24   MR. THOMPSON:  No, Your Honor.

10:22:47  25   THE COURT:  Now we move on to the calculation for

1      Count 1 of the indictment, and it's the sole count brought

2      against Mr. Malone, and that is being a felon in possession

3      of firearm and ammunition.

4             Paragraph 12 suggests a base offense level of 24.

10:23:06    5      In paragraph 12, it's explained why the base offense level

6      of 24 is applicable, and that's pursuant to Section 2K2.1 of

7      the Guidelines Manual.

8             Any objection to paragraph 12, its explanation,

9      Ms. Klump --

10:23:24   10             MS. KLUMP:  No, Your Honor.

11             THE COURT:  -- or the ultimate suggestion of 24?

12             MS. KLUMP:  No, Your Honor.

13             THE COURT:  Mr. Thompson?

14             MR. THOMPSON:  No, Your Honor.

10:23:31   15             THE COURT:  So then moving on to paragraph 13.

16      This is the first place where an adjustment upwards is

17      suggested.  And this suggests an adjustment upwards of two

18      levels because the firearm possessed by Mr. Malone was

19      stolen or had an altered or obliterated serial number.  In

10:23:53   20      this case, the firearm was stolen.  And therefore, pursuant

21      to the sentencing guidelines -- and, Mr. Wlotzko -- I am

22      pronouncing that poorly, aren't I?

23             PROBATION OFFICER:  "Wlotzko."

24             THE COURT:  "Wlotzko."

10:24:09   25             -- it doesn't state in paragraph 13 the section on

1    which you rely.  You say (b)(4), but that's also Section

2    2K2, isn't it?

3              PROBATION OFFICER:  Yes, Your Honor.

4              THE COURT:  And I'd like it to identify that.  You

10:24:20    5    and I, and I think those with us in the courtroom know it,

6    but for those who are less familiar, it would be better if

7    we put the full citation to the section there.

8              PROBATION OFFICER:  Okay, Your Honor.

9              THE COURT:  Thank you.

10:24:33   10              Apart from that addition, Ms. Klump, any objection

11    or any other addition that you'd suggest to paragraph 13?

12              MS. KLUMP:  No, Your Honor.

13              THE COURT:  How about you, Mr. Thompson?

14              MR. THOMPSON:  No, Your Honor.

10:24:42   15              THE COURT:  Thank you.

16              Now we're moving on to paragraph 14.  And the same

17    adjustment would be appropriate there, don't you agree?

18              PROBATION OFFICER:  Yes, Your Honor.

19              THE COURT:  Now, understanding that that

10:24:53   20    adjustment will be made, and that Mr. Malone's objection to

21    the increase of four levels, which was addressed on page 21

22    in the addendum, as I've spoken to earlier -- tell me,

23    Ms. Klump, does the United States have an objection to the

24    increase by four levels specified in paragraph 4, because

10:25:20   25    the firearm was used in connection with any other felony

1   offense?

2             MS. KLUMP:  No objection, Your Honor.

3             THE COURT:  Mr. Thompson?

4             MR. THOMPSON:  No objection, Your Honor.

10:25:28  5       THE COURT:  Counsel, let's double-check the math

6   here.  I have, and I believe that when 24 is increased by

7   two, it becomes 26.  When it's further increased by four, it

8   does indeed become 30, as suggested at paragraph 18.  And I

9   have no problems with the zero suggested at paragraphs 15,

10:25:51  10  16 and 17.

11            Ms. Klump, any objections to the zeros suggested

12  at 15, 16 and 17?

13            MS. KLUMP:  No, Your Honor.

14            THE COURT:  Are you in agreement with the math

10:26:01  15  suggested at paragraph 18, that Mr. Malone's adjusted

16  offense level is a 30 before further adjustment?

17            MS. KLUMP:  Yes, Your Honor.

18            THE COURT:  Mr. Thompson, can you tell me, do you

19  object to there being no victim-related adjustment, no

10:26:16  20  role-related adjustments, no obstruction adjustment?

21            MR. THOMPSON:  No objection, Your Honor.

22            THE COURT:  And do you agree also with the math at

23  paragraph 18, sir?

24            MR. THOMPSON:  Yes.

10:26:25  25      THE COURT:  It's 30, isn't it?

1          MR. THOMPSON:  Yes, Your Honor.

2          THE COURT:  Okay.  So now, and I will remark that

3     I found no bases in the record for Chapter 4 enhancements.

4          Have you, Ms. Klump?

10:26:36  5          MS. KLUMP:  No, Your Honor.

6          THE COURT:  Mr. Thompson?

7          MR. THOMPSON:  No, Your Honor.

8          THE COURT:  So the zero there is correct.

9          Now we're to the acceptance of responsibility

10:26:44 10     paragraphs.  There are two of them, paragraphs 20 and 21.

11          While I'm not required to hear the government

12     regarding paragraph 20, Ms. Klump, I'd like to hear you

13     regarding that paragraph.  As importantly, I'd certainly

14     like to hear you regarding paragraph 21, the suggestion that

10:27:05 15     Mr. Malone be granted a third level downwards pursuant to

16     3E1.1, subpart (b).

17          Would you care to be heard?

18          MS. KLUMP:  Yes, Your Honor.  Thank you.

19          The government would move for the third point

10:27:15 20     reduction for acceptance of responsibility under that

21     subsection.  Mr. Malone did accept responsibility, and also

22     did so in a timely fashion, enabling the government to save

23     resources and avoiding preparation for trial.

24          THE COURT:  Thank you.

10:27:31 25          Mr. Thompson, I won't ask for a response and I

1   won't keep you in suspense.  I find that -- first of all, I

2   will grant the government's motion regarding 3E1.1, Section

3   (b), and I also find that Mr. Malone is worthy of the two

4   levels downward suggested by Section 3E1.1, subpart (a).

10:27:50  5   Therefore, Mr. Malone, I adopt the suggestions at

6   paragraphs 20 and 21 and reduce the 30 by three levels, and

7   believe that paragraph 22 is correct, Mr. Thompson, when it

8   suggests a total offense level of 27.

9   Any objection to that, sir?

10:28:08  10   MR. THOMPSON:  No objection, Your Honor.

11   THE COURT:  Ms. Klump?

12   MS. KLUMP:  No, Your Honor.

13   THE COURT:  I think we've correctly calculated the

14   advisory guidelines offense level.  Now let's move on to

10:28:19  15   criminal history.  We'll work towards the correct

16   calculation of the score, and then ultimately the category.

17   Regrettably, this is a long section, Mr. Malone.

18   It starts at the bottom of page 5, spills over onto a full

19   page 6, a full page 7, a full page 8, a full page 9, a full

10:28:44  20   page 10, a full page 11.  Midway on page 12, although the

21   criminal history doesn't end there, but because what follows

22   regards other criminal conduct that is not scored, we can

23   stop at the middle of page 12.  And I ask you to focus on

24   paragraphs 34, 35 and 36.

10:29:09  25   Starting at 34, we're told that the criminal

1    convictions result in a total criminal history score of 11.

2              Paragraph 35 tells us that because Mr. Malone was

3    under supervision by the Adult Parole Authority, two points

4    are added.  And that's pursuant to Section 4A1.1, subpart

10:29:31    5    (d).

6              And, Mr. Wlotzko, I think that's a reference back

7    to paragraph 32, isn't it, the Parole Authority supervision,

8    because that at 33 had terminated?

9              PROBATION OFFICER:  That is correct, Your Honor.

10:29:53   10              THE COURT:  Okay.  Thank you, sir.

11              Lastly, paragraph 36 combines the additional two

12    levels with the 11 points at 34, resulting in a total score

13    of 13, placing Mr. Malone in a criminal history category of

14    VI.

10:30:15   15              Ms. Klump, any corrections or objections to

16    paragraphs 34, 35 or 36?

17              MS. KLUMP:  No, Your Honor.

18              THE COURT:  Mr. Thompson?

19              MR. THOMPSON:  No, Your Honor.

10:30:23   20              THE COURT:  I don't think it necessary to review

21    that which follows at the bottom half of page 12, 13 or 14,

22    but again, if anyone would like me to, I will.  Absent that,

23    I think we now have the correct criminal history category,

24    and that is a VI.

10:30:47   25              The intersection of an offense level 27 with a

1    category of VI, Mr. Malone, suggests a low end range of

2    incarceration of 130 months, the high end of 162 months.

3    The maximum term of incarceration that the law allows to be

4    imposed for the offense to which you've pled guilty is only

10:31:13  5  ten years; therefore, I must cap the range at ten years.  So

6    in place of the low end of 120, I use just a single number,

7    and that is 120.

8            Any disagreement with that, Mr. Thompson?

9            MR. THOMPSON:  No, Your Honor.

10:31:29  10   THE COURT:  Ms. Klump?

11           MS. KLUMP:  No, Your Honor.

12           THE COURT:  Counsel, with that I think we're ready

13   to move on to the second phase of sentencing, and that being

14   the phase wherein I hear from counsel, of course,

10:31:42  15 incorporating not only the allocutions of counsel, but the

16   sentencing memorandum filed on behalf of Mr. Malone, and

17   also the letters that were filed as a supplement to that

18   sentencing memorandum.

19           Is there anything more, Ms. Klump, before I hear

10:31:58  20 your allocution?

21           MS. KLUMP:  No, Your Honor.  Thank you.

22           THE COURT:  Mr. Thompson, how about you before the

23   allocutions start, anything more?

24           MR. THOMPSON:  No, Your Honor.  Thank you.

10:32:04  25   THE COURT:  Certainly.

         Mr. Malone, after I've heard both counsel

allocute, I will hear from you.  Should you choose to speak

to the court, I will hear you before I sentence you.

Understand?

10:32:20         THE DEFENDANT:  Yes.

         THE COURT:  Ms. Klump, I'm ready when you are.

         MS. KLUMP:  Thank you, Your Honor.

         The government would request that the court impose

a statutory maximum in this case.  The government feels that

10:32:28 a sentence of 120 months would be sufficient, but not

greater than necessary, to achieve the goals of 3553(a).

         The government recognizes that asking for the

statutory max is unusual, but does feel that it is

appropriate in this case for several reasons.

10:32:45         First, as to the nature and circumstances of the

offense, the court is, of course, familiar with those

circumstances from the PSR report.  But just to touch

briefly on some aspects of the offense conduct and relevant

conduct.

10:33:00         The government would respectfully submit this is

anything but a garden variety felon in possession case, Your

Honor.  Here, not only -- well, here there are several

aggravating factors to an otherwise somewhat common offense,

unfortunately, before this court.

10:33:19         One, to start with, the firearm itself, of course,

1    there is the enhancement for that firearm being stolen, and

2    the dangers and risks that are associated with stolen

3    firearms in our community.  But also, I think it's important

4    to note that this firearm was loaded; not just with 15

10:33:35    5    rounds in the magazine, but also with one in the chamber,

6    further amplifying the danger that was inherent with the

7    carrying of that firearm.

8         In addition, the firearm was found on Mr. Malone's

9    person.  It wasn't, as it might be in other cases, found in

10:33:53    10    a nearby desk drawer or under the seat in a car, but it was

11    found on his person as he was exiting a vehicle.

12         Which transitions me to the other relevant

13    conduct, of course, looming in this case, which is the

14    four-level enhancement that Mr. Malone has received for use

10:34:12    15    of a firearm in connection with another felony offense.

16         Here, as Your Honor is aware, the other felony

17    offenses involved are very severe and very troubling ones.

18    In summary, the kidnapping of an individual victim on the

19    east side of Cleveland that was committed by Mr. Malone and

10:34:31    20    three other individuals.

21         The evidence connecting Mr. Malone to that crime,

22    not only from his failure to -- or his non-objection to the

23    enhancement, but as is evident in the report, the use of his

24    phone to make a ransom demand to the victim's family.

10:34:51    25         Also, when he was taken into custody and when he

1    had the firearm in question on his person, in addition,

2    there was a mask on his person, there was duct tape.  The

3    evidence suggests that duct tape was used to bind the victim

4    in the kidnapping.  And certainly the presence of a mask

10:35:11  5    further amplifies the fear that was brought about by this

6    whole conduct.

7        I won't belabor the facts underlying the

8    kidnapping, Your Honor.  You have it before you in paragraph

9    6.  But certainly this -- the conduct involved, not just the

10:35:30 10    abduction of a person, but binding the individual and

11    placing him in the trunk of a car, and then later the

12    backseat, demonstrates that Mr. Malone not just possesses a

13    firearm, but certainly is not afraid to use a firearm to

14    further his own needs and desires, but also uses violence.

10:35:52 15    And unfortunately, we see that on a repeated basis

16    throughout this report.

17        Along with Mr. Malone's use of violence and

18    firearms to further his personal agendas, we also see

19    throughout his criminal history repeated disregard for

10:36:14 20    others, personally as well as their property.

21        Which leads me, Your Honor, to the history and

22    characteristics of the defendant, which further evidences

23    that the statutory max is warranted in this case.

24        When Your Honor looks at the criminal history of

10:36:30 25    Mr. Malone, unfortunately, what is apparent is a consistent

1   and troubling pattern of not just criminal conduct starting

2   at an early age, but unfortunately, violent criminal

3   conduct.

4            Starting as early as age 13, we see five

10:36:47   5   adjudications as a juvenile.  At age 15, Mr. Malone was

6   adjudicated delinquent of felonious assault, and there, I

7   believe, is the first time where we see the firearm -- use

8   of a firearm clearly involved in his criminal history.  And,

9   of course, from there, unfortunately, the presence of a

10:37:10  10   firearm continues.

11            As an adult, we see all of the convictions that he

12   acquires, starting with the aggravated burglary and

13   attempted.  We also then on page 9 of the report, again we

14   see aggravated riot, this time with firearm specifications.

10:37:30  15   Once again, there's a trafficking offense, with not only a

16   firearm specification, but a school yard specification.

17            And as Your Honor can see, a firearm is a part of

18   nearly every single one or a majority of Mr. Malone's

19   offenses.  And in many of them, as is evident from the

10:37:52  20   descriptions included in the report, the firearm isn't just

21   present, but is involved in brandishing, and many times --

22   or several times, the firearm is discharged as a part of the

23   offense.

24            In paragraph 33, and I think this one is very

10:38:07  25   important to note, this is not Mr. Malone's first time in

1  federal court, and it's not his first time in federal court

2  for a felon in possession charge.

3      In 2006, he was sentenced to 65 months.  I believe

4  that was by Judge O'Malley, if I'm not mistaken.  And so he

10:38:26  5  has already had a previous federal sanction for this very

6  same or very similar conduct.  He got off supervised release

7  in April 2013.  It appears he didn't have too many problems

8  during his period of supervised release with one of Your

9  Honor's former colleagues.

10:38:47  10  But unfortunately, in August of 2013, just shortly

11  within four months or so of him being released from federal

12  supervision is when he picks up an offense -- well, I'm

13  sorry, it's a pending charge.  But when he's arrested in

14  Indiana for driving under the influence of a controlled

10:39:05  15  substance.

16      I think this is good evidence, Your Honor, of the

17  defendant's lack of regard for the laws that are put in

18  place by our society, and also indicating that previous

19  sanctions have achieved little to no deterrent effect.

10:39:28  20  Particularly given that he's already been through a

21  significant federal sentence before returning to very

22  similar, and actually even worse once you consider the

23  relevant conduct of the kidnapping, offense conduct.

24      For all these reasons, Your Honor, we would ask

10:39:47  25  that you impose the statutory max.  We feel that's necessary

1    to promote respect for the law, to achieve just punishment

2    for this offense, and most importantly, two of the factors

3    under 3553(a), which are deter the defendant, primarily,

4    from engaging in future criminal conduct of this nature,

10:40:06    5    particularly ones involving firearms, and also to protect

6    the public, such as the victim who was involved in the

7    kidnapping here, and any other future people who might be

8    put in harm's way by Mr. Malone's use or possession of

9    firearms.

10:40:23    10          Thank you.

11          THE COURT:  Thank you, Ms. Klump.  May I ask you a

12    question?

13          MS. KLUMP:  Yes, ma'am.

14          THE COURT:  The memorandum submitted on behalf of

10:40:31    15    Mr. Malone indicates, and if you have it, you could look at

16    the bottom of page 4, and then Mr. Thompson repeats it

17    without the citation to the guidelines section on page 5.

18          And basically what he does at the bottom of page 4

19    is he introduces a relatively new section of the Guidelines

10:40:54    20    Manual, and that's 5G1.3.  And he's kind enough to quote it

21    there for me.  And I appreciate that, Mr. Thompson, because

22    it's not been in existence all that long.

23          But basically, he asks that I state that whatever

24    sentence I impose today be served concurrently with an

10:41:16    25    anticipated state sentence.  And Mr. Thompson will speak to

1    me about this as well.  I have some difficulty with

2    anticipated.  The guidelines, unfortunately, doesn't define

3    that.

4         We know that there is the kidnapping with firearms

10:41:34  5    specifications offense pending against Mr. Malone in

6    Cuyahoga County, and it's the offense that's referred to.

7    Generally we talk about another felony offense resulting in

8    the four-level increase.

9         My difficulty with the imposition of a concurrent

10:41:53  10   sentence, because I anticipate a state sentence, is he

11   hasn't pled guilty in state court, he hasn't been tried,

12   he's only been charged.  And you and I know that an

13   indictment is proof of nothing.

14        So I'd simply like to hear your position on the

10:42:10  15   imposition of this federal sentence concurrently with an

16   anticipated state sentence pursuant to Section 5G1.3.

17        MS. KLUMP:  Thank you, Your Honor.  I have some

18   similar confusion as to how this is -- how this particular

19   guideline is to be implemented, given that it would

10:42:35  20   apparently ask the court to impose a sentence concurrent to

21   a sentence that we don't know if it will take place or what

22   it would ever be.

23        Unfortunately, I do read -- it's the government's

24   understanding in this case that this guideline does,

10:42:57  25   however, direct the court to -- or recommends to the court

1    to impose a concurrent sentence.

2            Perhaps if the court, in issuing its judgment, if

3    it found a concurrent sentence appropriate, which the

4    government would not object to, to specify perhaps the

10:43:15  5    particular case, county case in which the case should run

6    concurrent to, as opposed to perhaps -- so there's no

7    confusion in the record or with the Bureau of Prisons, as to

8    perhaps any other pending matter that Mr. Malone might have,

9    as is apparent, for example, in paragraph 45, or maybe other

10:43:38 10    pending charges which are not known at this time.

11            THE COURT:  Thank you.  I appreciate that.

12            Are you otherwise finished?

13            MS. KLUMP:  Yes, Your Honor.  Thank you.

14            THE COURT:  Mr. Thompson, I am ready for your

10:43:50 15    allocution.  And unless you'd prefer to stay there, you are

16    welcome to stay there if you'd like to, I'd invite you to

17    the podium with your client.

18            MR. THOMPSON:  Please, Your Honor.  Thank you.

19            Come up to the podium.

10:44:17 20            THE COURT:  Thank you.

21            MR. THOMPSON:  Thank you.  May it please the

22    court.

23            THE COURT:  Certainly.

24            MR. THOMPSON:  I would ask the court to consider,

10:44:23 25    with regard to his history and circumstances, circumstances

1    of his upbringing that I pointed out in his sentencing memo

2    filed with the court, and that are reflected in his

3    presentence report.

4        He does have family here in support of him today,

10:44:41  5    including his mother.  I would ask the court to consider

6    both the fact that his childhood was difficult, given that

7    both parents were actively using crack cocaine during most

8    of his young life, as mitigatory.

9        And I would also ask the court to consider the

10:45:07  10    fact that his mother is here, clean and sober for many

11    years, as reason for hope.

12        His father also became clean and sober, but,

13    unfortunately, passed away in June of this year, on June

14    6th.

10:45:26  15        Mr. Malone, in reflecting on where his conduct has

16    brought him and what his life looks like now and what he

17    hopes to make it when he's released, feels the pain of his

18    father's loss especially.

19        He is before the court, having spent previous

10:45:45  20    times in federal and state prison, and is now facing a

21    prison sentence here and in state court that will result in

22    him being released in his upper 30s, if he is very lucky,

23    and most likely higher.

24        The state charges he is facing, and the state

10:46:05  25    sentence that we are anticipating, is likely to be higher

than the maximum in this case. I believe they will be, of course, asking the state judge to consider concurrent time and consider a sentence that would not increase his total sentence. However, the kidnapping with a firearm specification carries, I believe, 6 to 13 years of mandatory time. With a repeat violent offender specification, I believe that may make the maximum term mandatory. The felonious assault with a firearm carries an identical term.

I would ask this court to consider also that Mr. Malone has given himself, through his hard work, a skill that's going to, you know, enable him to find employment, as he did when he was on supervision for his last felon in possession case. He got a certificate in asbestos removal that he is going to have to renew because it will expire, but he found employment in that field. It's a field that I expect will still be in existence in ten or more years.

And I think the fact that he has a -- that he has real employment opportunities is something else that this court can consider as reason for hope in this case.

I would ask the court to therefore consider a sentence less than the maximum in this case. I would ask the court to follow the guideline provision directing concurrent time with the anticipated state sentence. Both because the guidelines indicate that it should be done, but I believe that there's good commonsense reason for it also.

1          THE COURT:  Let me, before you get to that, the

2    difficulty I have is not -- if there were a sentence

3    pending, then that would be an easy adjustment.  I'd simply

4    state "concurrent to the sentence imposed."  Or even if

10:48:28    5    there had been a conviction, a plea of guilty.  We don't

6    have either of those.  We simply have a charge pending.

7          And I don't know if you've had this 5G1.3 applied

8    in a circumstance such as this, where there is not yet an

9    imposed sentence.  And how am I to know whether or not to

10:48:48   10    truly anticipate it?  Our justice system is alive and well.

11    What if there is an acquittal?  Then I would assume right,

12    there would be no concurrent sentence.  But it's simply

13    asking me to make a case.

14          I will admit to you, because of the four-level

10:49:06   15    enhancement, this is not as difficult as it could otherwise

16    be.  Because I've had to review that, even before the

17    withdrawal of the objection, to decide for myself if there

18    was an appropriate enough nexus, if, by a preponderance of

19    the evidence, I find that there was a firearm used in

10:49:23   20    relation to another felony offense.  Therefore, I've been

21    able to satisfy myself that there was some other felony

22    offense.  But that still isn't a conviction.

23          MR. THOMPSON:  That's understood, Your Honor.  And

24    I don't believe that the guideline -- I believe the

10:49:41   25    guideline provision was meant to apply in circumstances like

1    this, and not create, you know, sort of a procedural

2    minefield through which a defendant must walk to afford

3    himself of that provision.

4              Certainly, it is expected, and I want to be

10:50:04    5    careful, because as Your Honor indicates, Mr. Malone hasn't

6    pled guilty in that case, and remains presumed innocent, and

7    plea negotiations are not, it's my understanding, finalized.

8    But I believe I can represent to the court, based on

9    conversations with state counsel, that it is anticipated

10:50:25   10    that that case is going to be resolved.

11              However, I mean, certainly should this court not

12    find that it would apply otherwise, and find that a

13    concurrent sentence would not be appropriate without that

14    provision being applicable, then I would indicate that I'd

10:50:50   15    deeply regret not having that case resolved prior to coming

16    before Your Honor and would ask for an opportunity to do so.

17              But if I could just touch on I believe the

18    commonsense reasons --

19              THE COURT:  Certainly.

10:51:04   20              MR. THOMPSON:  -- why this court should do so in

21    this case.

22              First, as Your Honor noted, he's already receiving

23    a substantial four-level increase for involvement in that

24    conduct, such that consecutive time would perhaps not be

10:51:17   25    within the letter of the law of double jeopardy or double

1    punishment, certainly would violate the spirit of it.

2         But most importantly I think, what he is being

3    punished for in this case is just possession of the firearm.

4    Although the surrounding circumstances are important and

10:51:36    5    inform this court's decision, I would suggest that this

6    court's role is punishment for possession of the firearm

7    itself.

8         This court is not -- doesn't have the victim, the

9    alleged victim in that case before it, doesn't have a full

10:51:51    10   view of all of the facts and circumstances in that case, nor

11   would it be appropriate to turn this sentencing hearing into

12   a minitrial or a minisentencing of felonious assault and

13   kidnapping.  That is really the state court's role.

14         And I would ask the court to, by ordering a

10:52:12    15   sentence to run concurrent with the state sentence, to

16   preserve the state judge's power in that case.  The state

17   court judge who sees that -- looks that person in the eye,

18   who has these circumstances fresh before him, should be in

19   the position to control whether or not ten years is enough,

10:52:35    20   or whether consecutive time of some amount is enough, even

21   if it's concurrent but the sentence is higher than ten, so,

22   therefore, it overlaps, or whether a full consecutive

23   sentence is required, which would result in a sentence -- in

24   this case, would result in a sentence near -- in excess of

10:52:56    25   20 years, potentially, far greater than is necessary under

1    the federal sentencing statutes.

2         For those reasons, I would ask the court to

3    consider not only a sentence of less than a minimum, but

4    most importantly, to consider a -- to order a concurrent

10:53:12    5    sentence with the anticipated state sentence in that

6    underlying state case.

7         Thank you.

8         THE COURT:  Thank you, Mr. Thompson.

9         MR. THOMPSON:  Do you want me to get that paper

10:53:23   10    for you?

11         THE COURT:  Thank you again, Mr. Malone.  When

12    you're ready, I'm ready, sir.

13         Mr. Thompson, direct upwards that microphone.

14    Thank you.

10:53:44   15         THE DEFENDANT:  Your Honor, today I stand in front

16    of you and accept full responsibility for my actions.  There

17    isn't one day that passes where I don't feel ashamed about

18    how I let my family down.  I understand that life throws

19    challenges your way and it is up to you in order to overcome

10:54:01   20    them.

21         I would like to say to you, as well as my family,

22    that I will not let this situation define me.  I am

23    determined to clean myself up, not only for the sake -- for

24    the sake of not only myself, but for my family and my

10:54:17   25    beautiful daughter as well.

1    Despite my shortcomings, my family has been very,

2    very supportive, and have shown that they are willing to

3    help as long as I put forth the effort.  I am sure to be in

4    the age of my 30s upon my release, and I can honestly admit

10:54:35  5    that I need to become more responsible and take advantage of

6    my life while I still have the chance.

7    As far as my future plans, when I am released, I

8    will enroll back into college in order to finish and receive

9    my business degree.  I also plan on going back to class to

10:54:48  10   renew my asbestos certification so that I can obtain some

11   consistent employment in order to further my success while

12   being able to take care of myself and return the love and

13   support back to my loved ones.

14   Thank you.

10:55:02  15   THE COURT:  Thank you, sir.  I appreciate that you

16   gave some advance thought to what you'd say, and I know from

17   this sentencing memorandum that Mr. Thompson and you had

18   spoken about your plans, and I am pleased that you have

19   them.  That shows hope.

10:55:17  20   I've received these letters that I mentioned to

21   you as a supplement to your sentencing memorandum, and again

22   and again, "Your Honor, Ryan is not a bad person," "Ryan was

23   on the right track."  It's repeated over and over again.

24   And what's not explained to me by the letters, and

10:55:43  25   that's understandable, but not even by you, is how in the

1   world did you let this happen again.  Not only do you have a

2   dense, serious criminal history, one that reeks of violence,

3   but you've been through federal court.  You've served five

4   years.  You've even been through Reentry Court.  And I have

10:56:08   5   to believe you've stood before judges at various times

6   saying much of the same things you've said today.  I've got

7   to believe there's probably no one in the courtroom who

8   hasn't been in a courtroom like this before with you

9   standing before a judge waiting to find out what would

10:56:23   10   happen.

11   THE DEFENDANT:  Uh-huh.

12   THE COURT:  So I understand what you said.  I've

13   heard it.  I am having trouble understanding, first, how it

14   is you're back here.

10:56:33   15   THE DEFENDANT:  Your Honor, upon reading my

16   letter, I didn't want to stop, I wanted to get the entire

17   letter out before I spoke on how I allowed the situation to

18   happen once again.  And like --

19   THE COURT:  Well, if you have something to tell

10:56:49   20   me, tell me now.  Because the next time I start speaking,

21   you won't have another opportunity.

22   THE DEFENDANT:  All right.

23   THE COURT:  So if there's anything you'd like to

24   tell me -- because I tell you, quite frankly, what I am

10:57:00   25   trying to decide is when you're going to be ready to

1    interact with society.

2                THE DEFENDANT:  Uh-huh.

3                THE COURT:  And if you can help me with that, say

4    it now or you'll forever hold your peace.

10:57:13  5            THE DEFENDANT:  I will say it now, Your Honor.

6    Upon this situation, the time -- the sentence that you hand

7    down, Your Honor, I will use that time wisely.  I have no

8    other choice.  I have no other option.  I don't want to

9    spend the rest of my life incarcerated.  I have a family

10:57:31 10   that loves me.  I have a daughter that I love, and I know

11   she loves me.  I have to use this time to get myself

12   together.  There are no more options at all, Your Honor.

13           And I can honestly say that I made a mistake.  You

14   know, things became hard for me.  I became depressed and I

10:57:56 15   let myself down.  But I will -- I will rebound from this

16   situation, Your Honor.

17                THE COURT:  Are you finished?

18                THE DEFENDANT:  Yes.

19                THE COURT:  Thank you.

10:58:06 20           I have listened to all that's been said.  I've

21   reviewed the record, and I am prepared to state the reasons

22   why I will impose the maximum of 120 months, Mr. Malone.

23           I have heard what you've said, and I know the

24   chances you've been given, and I can't accept so little

10:58:26 25   provocation as things got hard.  Things are always hard.

1      They will always be hard, and you are going to have to be

2      prepared for that.

3              What you did was a blatant disrespect not only for

4      society and its laws, but for human life.  And I accept that

5      you had a difficult upbringing.  But you know what you've

6      done now?  You've ensured that many possibly, but certainly

7      one person is going to have a difficult upbringing, and

8      that's your daughter.  You know, loving her is good.  I love

9      her too.  But I don't pay her bills and neither do you.  And

10     you're not going to start doing that for a real long time.

11             And you have to stop thinking about yourself.

12     It's easy to be depressed, especially when you refuse to

13     change the circumstances surrounding you.  And I don't

14     pretend to know what you face daily, but I know some of the

15     tools and chances that you've been given, especially when

16     I'm made to know that you've gone through one of our Reentry

17     Courts.  And you blew it.  You came out and you did this

18     most horrific thing.  You possessed a firearm and ammunition

19     after having been convicted as a felon.  There is absolutely

20     no bases for that.

21             THE DEFENDANT:  Uh-huh.

22             THE COURT:  That's against federal law.

23             Don't speak.  I've told you once.  Don't part your

24     lips with the anticipation of uttering a sound.  Am I clear?

25             THE DEFENDANT:  Yes, Your Honor.

1      THE COURT:  It's done.

2          For all of the reasons I've stated, having

3      considered the 3553(a) factors, I can only hope that you

4      truly have gotten it.  Federal prison is no place to grow

11:00:09    5      up.  It's not what it's designed for.

6          I find that the statutory maximum is appropriate

7      for you based upon your past.  I find it's appropriate for

8      you because adequately deterring you is what I hope to do.

9      This time you have twice the federal sentence you received

11:00:28   10      the last time.  If this doesn't deter you, I can almost

11      guarantee you, you're going to come back an armed career

12      criminal or something worse, you are going to be looking at

13      a 15 mandatory minimum or a life sentence.  And you had

14      better consider that before you allow depression or things

11:00:47   15      getting hard to allow you to act in a way that's disruptive

16      to society and violative of our laws.

17          So for all of those reasons, I hereby impose a

18      120-month term of incarceration.  Upon your release from

19      prison, sir, you are going to serve, and I know you're well

11:01:07   20      familiar with this, supervision for three years.

21          Within 72 hours after you leave prison, you must

22      report to the nearest probation officer.  If you don't, that

23      would be your very first opportunity to violate your

24      three-year term of supervision.

11:01:24   25          And I know that you know this already, but I am

1    going to say it so that it's clear.  If you violate

2    supervision, that's a reason for supervision to be revoked

3    and for you to be returned to prison.

4             You understand that, don't you?

11:01:36    5    THE DEFENDANT:  Yes.

6             THE COURT:  I am not imposing a fine, but I do

7    require that you pay the $100 special assessment.  It's

8    essentially court costs.

9             Restitution is not an issue in this case;

11:01:47    10   therefore, there is none imposed.

11            Sir, I know you know this.  You knew it 13 points

12   ago.  But I tell you this for the record so there's no

13   further confusion.  For the rest of your life, I hope this

14   case, but certainly during this three years while you're on

11:02:04    15   supervision, you shall never again commit a federal, local

16   or state crime.  That's no crime.  You can't be a little bit

17   law-abiding and partially lawbreaking.

18            So if you leave prison without a valid driver's

19   license, you can't drive.  You can't even drive to the

11:02:22    20   bureau to get your license.  You can't jaywalk.  You can't

21   text while driving.  If you're driving, you must buckle up.

22   You can't violate the law.  Because if you violate the law

23   while you're on federal supervision, that's a reason to

24   revoke your supervision and return you to prison.

11:02:37    25            I know that you understand that, don't you?

1     THE DEFENDANT:  Correct.

2     THE COURT:  Sir, you shall never again, ever,

3  possess a firearm, destructive device, dangerous weapon or

4  even a single bullet.  You're a felon.  And as long as you

11:02:53  5  reside in these United States, that will always be your

6  circumstance.

7     You understand that, don't you?

8     THE DEFENDANT:  Yes.

9     THE COURT:  If you believe that you cannot live

11:02:59 10  safely in a place without possessing a firearm, destructive

11  device or dangerous weapon or even a bullet, move.  Just

12  pick up and go where someone else doesn't know you.  What

13  difference does it make?  As far as I can see, things

14  weren't going so well for you here.  Move to another place.

11:03:21 15  Bus tables.  Do what you can.  If you don't have your

16  asbestos certificate re-upped by then, work.  Honest work is

17  good work.  It will keep you out of trouble.

18     Do you understand that?

19     THE DEFENDANT:  Yes.

11:03:33 20     THE COURT:  And your supervision is not a reason

21  not to relocate, because any right-thinking judge would

22  support you in that, if you make sure that you receive

23  permission from the probation office before changing your

24  address.

11:03:48 25     Do you understand that, sir?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Sir, I am ordering that you approve

3      in -- that you participate in an approved program of

4      substance abuse testing, that can include outpatient or

11:03:59  5      inpatient substance abuse treatment as directed by your

6      supervising probation officer.

7           This is also going to include random drug testing.

8      You are going to have at least three drug tests.  The first

9      will come soon after you're released from prison, within 15

11:04:15  10      days, or it could come sooner, within that

11      72-hours-after-you're-released-from-prison meeting with your

12      probation officer.

13           Never do anything to interfere with the test.

14      Don't misunderstand me.  I'm not telling you that you can

11:04:30  15      ever use drugs, illegal drugs or take a prescription drug

16      prescribed for someone else, but I'd much rather you test

17      positive than avoid the test.  Meaning don't show up, or

18      show up and pretend you can't make urine, or show up and

19      present someone else's urine as your own.  Because those

11:04:48  20      will be reasons for automatic revocation of your

21      supervision.

22           If you're using, that can be dealt with, to some

23      extent, before any revocation circumstances come into play.

24      Does that make sense?

11:05:00  25           THE DEFENDANT:  Yes.

1          THE COURT:  Sir, your DNA will be collected.  When

2     your supervising probation officer asks that you participate

3     in that DNA submission, please abide.  All right?

4          THE DEFENDANT:  Okay.

11:05:14    5          THE COURT:  While you're on this three-year term

6     of supervision, I am going to allow the probation office to

7     search you, without a warrant, if reasonable suspicion

8     suggests that you're in any way in violation of your

9     supervision or in violation of law or in possession of

11:05:26   10    contraband.  So the search can be not only of your body,

11    sir, but it can be of the place where you live.

12          Family, the probation officers can come to your

13    homes if you've welcomed Mr. Malone in.  Don't interrupt,

14    none of you.  That can be an automatic revocation of

11:05:43   15    supervision.  If something is found, we'll take it up after

16    it's found.

17          The search can be at a place where you work.

18    Please, while you make sure that anyone with whom you make

19    your home knows that you can be searched, you don't need to

11:05:57   20    do that at work.  If it happens at work, it will be done

21    respectively.  The results will be taken up once they're

22    known.

23          Make sense?

24          THE DEFENDANT:  Yes.

11:06:05   25          THE COURT:  The search can happen in any car that

1    you typically drive or are driven in.  And it can also be of

2    a computer that you use or have access to, if it's believed

3    that the computer is involved in the reasonable suspicion

4    circumstances.

11:06:20    5    Mr. Thompson, your commonsense approach to

6    imposing the 120-year -- 120-month sentence makes the most

7    sense.  While I don't like anticipating a sentence,

8    especially when, as you've pointed out, Mr. Malone is

9    presumed innocent of the kidnapping charges that await him

11:06:41   10    in state court, I will follow 5G1.3 and remark now and

11    restate it in writing when I issue the judgment and

12    commitment order, that the 120-month sentence is to be

13    served concurrently to, and as Ms. Klump stated, the

14    sentence anticipated in the pending case in Cuyahoga County

11:07:05   15    Court of Common Pleas, and that is the case for kidnapping

16    with firearm specifications and repeat offender

17    specification, abduction with firearm specifications,

18    felonious assault and firearm specifications with a repeat

19    offender specification, having weapons while under

11:07:23   20    disability, carrying concealed weapons, possessing criminal

21    tools, receiving stolen property, and all of those are given

22    the single case number of CR-14-591007.  And to assist the

23    Bureau of Prisons, that is the charge brought against

24    Mr. Malone that's noted in paragraph 46 of the presentence

11:07:53   25    report.

1          Mr. Wlotzko, what have I missed, sir?

2          PROBATION OFFICER:  Nothing, Your Honor.

3          THE COURT:  Mr. Thompson?

4      (Discussion held off the record between Mr. Thompson

5      and the Defendant.)

6          MR. THOMPSON:  Nothing, Your Honor.  Thank you.

7          THE COURT:  Did I give you enough time to finish?

8          MR. THOMPSON:  Yes.  Thank you.

9          THE COURT:  I know that you know this, and I am

10     going to state it for the record so that you can start the

11     discussion with Mr. Malone about his appellate rights.  You

12     entered a plea of guilty without a plea agreement, so you

13     haven't waived any of your appellate rights.

14          You only have 14 days after I reduce to writing

15     the sentence that I've just imposed to file a notice of

16     appeal.  And all that is is a one sentence notice telling

17     the appellate court to set a schedule to allow you to more

18     fully explain the theories that you believe may be viable on

19     appeal.

20          But if you file that notice after the 14 days has

21     expired, you may have forever waived your appellate rights.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Mr. Thompson, I don't know if you or

25     Mr. Malone will decide to work together on any appeal that

1    he files, but will you at least file timely the notice of

2    appeal for him should he ask you to do so?

3           MR. THOMPSON:  Yes, Your Honor.

4           THE COURT:  Mr. Malone, you should not allow the

11:09:04  5    fact that you may not be able to afford counsel to stop you

6    from filing an appeal, because just as Mr. Thompson has been

7    appointed to represent you, the appellate court can assure

8    that you're appointed counsel if you're found to be unable

9    to afford counsel.

11:09:19 10           Do you understand that, sir?

11           THE DEFENDANT:  Yes.

12           THE COURT:  I am going to start with Ms. Klump and

13    then come back to you, Mr. Thompson.

14           Ms. Klump, tell me, what have I missed?

11:09:31 15           MS. KLUMP:  Nothing, Your Honor.

16           THE COURT:  Please take a moment now to state any

17    objections you have to any part of the proceedings as to

18    Mr. Malone.  And state specifically any objections to the

19    sentence that I've just imposed.

11:09:45 20           MS. KLUMP:  No objections, Your Honor.  And no

21    objections to the proceedings.

22           THE COURT:  Thank you.

23           Mr. Thompson, now is the opportunity for you to

24    state for the record any objection you have to any part of

11:09:55 25    the proceedings.  And please separately state any objection

1    to the sentence imposed.

2         MR. THOMPSON:  No objection to the proceedings,

3    Your Honor.  To preserve his appellate rights, I would note

4    an objection to the maximum sentence, because we did request

11:10:12   5    less than a maximum sentence.

6         Thank you.

7         THE COURT:  Certainly.  Your objection is noted

8    and overruled for the reasons stated on the record.

9         Mr. Malone, your future is in your hands.  I hope

11:10:23  10    you will continue to grow and improve yourself while in

11    prison.  Please don't spend your time there developing how,

12    when you leave prison, you can further your criminal

13    conduct, but prepare yourself for life in society without

14    any more lawbreaking.

11:10:39  15         I can almost guarantee you that when you alight

16    from prison this time, if you are in your 30s, that may not

17    happen again.  The next time, if you're incarcerated,

18    especially as a result of a federal conviction, you're

19    likely to spend the rest of your life in prison.

11:10:53  20         And I think you know, the federal system and the

21    state system are very different.  Life, when issued by a

22    federal judge, is just that, life.  There is no such thing

23    as parole.  There is no such thing as expungement.

24         And I hope you will do your very, very best to

11:11:09  25    make up for your absence from your daughter's life in every

1    way that you possibly can.  I wish you nothing but the best,

2    sir.

3            This hearing is adjourned.

4            THE CLERK:  All rise.

11:11:20  5       (Proceedings concluded at 11:11 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3        I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled

5    matter.

6

7            /s/ Mary L. Uphold          July 28, 2015
             Mary L. Uphold, RDR, CRR     Date
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25