1

                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
                          EASTERN DIVISION


UNITED STATES OF AMERICA,    )
                             )  Case No. 1:14-cr-438
          Plaintiff,         )  Youngstown, Ohio
                             )  Tuesday, March 3, 2015
     vs.                     )  11:15 a.m.
                             )
RYAN D. MALONE and VIRGIL    )
COOPER,                      )
                             )
          Defendants.        )

                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE BENITA Y. PEARSON
                   UNITED STATES DISTRICT JUDGE

                         FINAL PRETRIAL

APPEARANCES:

For the Government:
     Office of the U.S. Attorney
     Northern District of Ohio
     By:  Mary Kendra Klump, Esq.
     Suite 400
     801 Superior Avenue, West
     Cleveland, Ohio  44113
     (216) 622-3689
     kendra.klump@usdoj.gov




                    Mary L. Uphold, RDR, CRR
     Thomas D. Lambros Federal Building and U.S. Courthouse
                  125 Market Street, Room 337
                Youngstown, Ohio  44503-1780
                        (330) 884-7424
                Mary_Uphold@ohnd.uscourts.gov

          Proceedings recorded by mechanical stenography;
     transcript produced by computer-aided transcription.

2

1     **APPEARANCES (CONTINUED):**

2     **For the Defendant Ryan D. Malone:**
           Office of the Federal Public Defender
3          Northern District of Ohio
           **By:**  Darin Thompson, Esq.
4          750 Skylight Office Tower
           1660 West Second Street
5          Cleveland, Ohio  44113
           (216) 522-4856
6          darin_thompson@fd.org

7     **For the Defendant Virgil Cooper:**
           Francis A. Gorczyca, Esq.
8          2000 Standard Building
           1370 Ontario Street
9          Cleveland, Ohio  44113
           (440) 465-7031
10         gorczycalaw@hotmail.com

11
                                    - - -
12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

                        P R O C E E D I N G S

                              - - -

               THE CLERK:  The matter before the court is Case

Number 1:14-cr-438, the United States of America versus

Defendant Number 1, Ryan D. Malone, and Defendant Number 2,

Virgil Cooper.

               THE COURT:  Good morning, all of you.  Please

retake your seats.

               Counsel for the United States, please introduce

yourself for the record.

               MS. KLUMP:  Good morning, Your Honor.  Kendra

Klump for the United States.

               THE COURT:  Thank you for being here, Ms. Klump.

               Counsel for Mr. Malone, please introduce yourself

for the record.

               MR. THOMPSON:  Good morning, Your Honor.  Darin

Thompson from the Federal Public Defender Office.  To my

left is Ryan Malone.

               THE COURT:  Welcome to you both.

               Counsel for Mr. Cooper, please introduce yourself

for the record, along with your client.

               MR. GORCZYCA:  Good morning, Your Honor.  Frank

Gorczyca, and I represent Mr. Cooper.

               THE COURT:  Welcome to both of you as well.

               This matter has been scheduled as a final

4

1      pretrial, and that is the final meeting with the court

2      before the trial that will commence in this matter on the

3      16th of March, this year, 2015.

4            It is my understanding that there has been

11:16:14  5      opportunities for both parties, along with counsel, to

6      entertain options to resolve the indictment against them

7      without a trial.  It is my understanding, and I have learned

8      that most recently regarding Mr. Malone, that it is indeed

9      the choice of both defendants to proceed to trial.

11:16:33 10            Have I gotten that right, Mr. Thompson?

11            MR. THOMPSON:  Your Honor, I would clarify that

12      Mr. Malone had, prior to this morning, indicated a desire to

13      enter a guilty plea to the indictment; however, this morning

14      indicated that he had some additional questions he wanted

11:16:53 15      answered, and if possible, wanted to move the court to have

16      a preplea/presentence report generated.

17            I believe the basis of that concern is that based

18      on my calculations of the guidelines, as well as that of the

19      government, Mr. Malone is likely going to be facing a

11:17:15 20      sentence at or near the statutory maximum of ten years.

21            THE COURT:  When you say "at or near," you mean

22      the suggested guidelines?

23            MR. THOMPSON:  The suggested guidelines will put

24      him very close to the ten years, depending on exactly how

11:17:31 25      the calculation proceeds.

5

1          THE COURT:  You may know that in this case, I

2     ordered a presentence criminal history only report for

3     Mr. Cooper, but not for Mr. Malone.  And the reason I did it

4     for Mr. Cooper was counsel had a legitimate question about

11:17:48  5     whether or not Mr. Cooper would be an armed career criminal.

6     It appears he may not be.  And I think that's a fair ask,

7     because that would have required a statutory minimum

8     sentence.

9          Your ask, if I understand it, is simply that the

11:18:04 10     guidelines might suggest something close to the maximum.  I

11     am not encouraged that that is worth the extra work,

12     especially given that we're within two weeks of trial.

13     Because as you know, the guidelines are just the guidelines.

14     It is a suggestion.  I'll impose what I believe is a

11:18:23 15     sufficient, a fair sentence.  And what I won't do is exceed

16     the statutory maximum.  But what the guidelines will not

17     discourage me from doing is bumping right up against them

18     or, indeed, imposing a sentence equal to the guidelines.

19          So what I am trying to say is, I'm not so sure a

11:18:44 20     preplea criminal history only would be of assistance,

21     especially since at the end of the day, I will have

22     discretion regarding what I do relative to the statutory

23     maximum.

24          Does that make sense?

11:18:58 25          MR. THOMPSON:  It does make sense, Your Honor.  We

6

1       are making the request.  I am not sure I can provide any

2       additional argument in support of it or additional reasons.

3       I don't know if Mr. Malone would like to address the court.

4       But I did indicate to him that I would ask this morning.

11:19:13   5           And I understand his trepidation, certainly given

6       the gravity of the charge he is facing.

7                 THE COURT:  Sure.  And let me make sure that it is

8       clear on the record.  I respect your work.  I know your

9       work.  So I know that it's taken a lot for you to ask for

11:19:30  10      this extraordinary thing so close to trial, and I have given

11      you my candid response.  I just don't see it worth the

12      while, meaning putting the probation office under the

13      additional strain when this matter will be resolved, whether

14      it is by plea or trial, and right now it is going to be by

11:19:49  15      trial, that I should indulge in that.  Because what is left

16      is to my full discretion.

17                Where the difference is regarding Mr. Cooper, he

18      may have faced a floor.  I mean, it doesn't mean he still

19      may not get a sentence that is fair, sufficient, no greater

11:20:08  20      than necessary, that is, 15 or more years, but now at least

21      he understands I am probably not obligated to impose that

22      sentence, but I will use my discretion if there is a

23      conviction in his case as well.

24                So just no reasons to be apologetic about the ask.

11:20:26  25      I just wanted to be clear about my refusal at this time.

7

1          MR. THOMPSON:  Your Honor, may I just have one

2     second, please?

3          THE COURT:  You may.

4          Ms. Klump, in a moment, I am going to ask you to

11:20:39  5     spread on the record the maximum possible penalties each

6     defendant faces if convicted, and then also to tell me

7     separately, first regarding Mr. Malone, then regarding

8     Mr. Cooper, what plea offers, if any, have been made.  And

9     collectively, this information, along with the responses I

11:20:59 10     receive from defense counsel and the defendants, will be the

11     equivalent of the Frye conference.  All right?

12          MS. KLUMP:  Yes, Your Honor.

13          THE COURT:  Mr. Thompson, anything else for me?

14          MR. THOMPSON:  Your Honor, as an alternative, I

11:21:19 15     just -- in meeting with Mr. Malone, Mr. Malone is also

16     facing a state charge.  We've confirmed -- we've both

17     conferred with his state attorney.  We've repeatedly

18     discussed potential resolutions with Ms. Klump.  Even though

19     there hasn't been a formal plea offer, we have discussed a

11:21:42 20     number of possibilities.

21          Prior to this morning's hesitation, I believe it

22     was his intention to enter into a plea.  I would ask the

23     court if we could return before Magistrate Judge Limbert on

24     Friday morning, which would give me just a couple more days

11:22:03 25     to meet with him, answer any questions he has, and make sure

1   he understands everything.  And then on Friday, either enter

2   into a guilty plea with those questions answered, or affirm

3   a desire for trial at that point.

4         I realize we are perilously close to trial, and I

11:22:26  5   have to ask for that for my client, unfortunately.

6         THE COURT:  Do you know if Magistrate Judge

7   Limbert would be willing to accommodate you on Friday?

8         MR. THOMPSON:  I believe he would, Your Honor.  We

9   did check with his schedule.  Though, of course, he

11:22:40  10   indicated he was not going to be scheduling anything without

11   guidance from Your Honor.

12         THE COURT:  Fair enough.  I am going to proceed

13   with the final pretrial, because if there is the

14   opportunity, if you desire to enter a plea, you will have

11:22:53  15   that chance if Magistrate Judge Limbert can accommodate you,

16   ideally on Friday.  Should he not be able to, we can always

17   make other arrangements if it's indeed your intention to

18   enter a plea.

19         But in any case, I will have done what's necessary

11:23:09  20   to make sure that you're fully informed, because unless

21   there's a plea this Friday, I will proceed to trial.

22         Is that clear, sir?

23         DEFENDANT MALONE:  Yes, Your Honor.

24         THE COURT:  And I don't want you to think of this

11:23:21  25   as being coercive or anything less than full judicial

1    patience.  It simply is the matter is ready for trial.  I

2    have continued it once, finding that the ends of justice

3    made that necessary.  It was the right thing to do.  But

4    enough is enough.

11:23:36    5         The ends of justice requires not only that I look

6    at your desires, but also those of the United States, and

7    also those of the citizens who do not speak for themselves

8    through the court's docket.  And based upon that, and at

9    least at this time, I have no reason to move this further,

11:23:54   10    and indeed, am already prepared, I have already summoned

11    jurors, and I intend to put them to work starting on the

12    16th, whether I have one or two defendants to try at that

13    time.

14         Does that make sense?

11:24:10   15         DEFENDANT MALONE:  Yes.

16         THE COURT:  Mr. -- I want to check the

17    pronunciation of your name.

18         MR. GORCZYCA:  "Gorczyca," Your Honor.

19         THE COURT:  Say it again.

11:24:16   20         MR. GORCZYCA:  "Gorczyca."

21         THE COURT:  "Gorczyca."

22         MR. GORCZYCA:  Like the model Chevy Corsica.

23         THE COURT:  Well, I don't know about that analogy.

24    But I think I will not forget --

11:24:22   25         MR. GORCZYCA:  Actually, I give that to my

10

1    clients, Spring Island, Corsica.

2            THE COURT:  Corsica, that is a little more -- but

3    it's a "G," not a "C," right?

4            MR. GORCZYCA:  But close enough, Your Honor.

11:24:31   5            THE COURT:  Okay.  Sir, you have heard what I've

6    asked Ms. Klump be prepared to do, to spell out the

7    maximums, and then also to reveal to the court any plea

8    offers made.  And then, of course, I will turn to you, as I

9    will Mr. Thompson, along with your clients, to make a

11:24:49  10    response.

11            But before I start that Frye component of the

12    final pretrial, I'd like to know if there is anything

13    particular to your client that you'd like to discuss with

14    me.

11:25:01  15            MR. GORCZYCA:  Well, cutting through a lot of

16    things, Your Honor, I would certainly appreciate, and so

17    would Mr. Cooper, he is considering this like a status of

18    whether we're going to get into a plea or not.  It was

19    suggested Friday.  I am sure that would be a sufficient --

11:25:21  20    more than a sufficient amount of time in this case.

21            For the record, here was the problem, Your Honor.

22    I had -- I appreciate that I had the presentence report

23    done.  However, I didn't get that back until Wednesday of

24    last week, the 25th.  And then, quite frankly, the main

11:25:41  25    reason I wanted that was to see if he was an armed career

1    criminal, or could be considered that. And the report came

2    back that it was unclear, and putting me in a further

3    dilemma.

4         So actually, what I did is I researched it myself.

11:26:01  5    There's one case, and it was an older case, and I went to

6    Cuyahoga County, because I discovered that there was a

7    codefendant on the case. Quite frankly, I am satisfied,

8    from reading the indictment in the court of common pleas

9    with the codefendant, in which Mr. Cooper is mentioned in

11:26:23 10    the case, that the case was no more with Mr. Cooper a felony

11    4 as a juvenile, and would not rise to fit the third

12    predicate offense necessary to be an ACC, Your Honor.

13         So I am -- I told Mr. Cooper, I am 99.9 percent

14    sure that he is not -- you know, could not be considered an

11:26:53 15    armed career criminal.

16         But I just want you to know that I got that

17    information like last Wednesday. I saw Mr. Cooper Thursday,

18    Friday and Saturday. And actually, I tried to see him

19    yesterday in Cuyahoga County. I didn't know he was going to

11:27:08 20    be brought here. When I went over to the jail, they told me

21    he was over here. And we could have probably gone over a

22    few things, you know, yesterday.

23         I would certainly appreciate the opportunity that

24    Mr. Thompson has suggested to the court. If I could have a

11:27:29 25    few days here to speak to Mr. Cooper, because it changed a

1    lot of things, finding that out.

2         THE COURT:  Certainly.  And I will remark that you

3    made known the efforts you were making last week by asking

4    that I allow you until today to inform the court of whether

5    or not there be an intent to change a plea from not guilty

6    to guilty, and I surmise from all that you've just said that

7    your client is not inclined to do that today?

8         MR. GORCZYCA:  That is correct, Your Honor.

9         THE COURT:  But now you're asking you join

10   Mr. Malone with an extension until Friday?

11        MR. GORCZYCA:  That's correct, Your Honor.

12        THE COURT:  I grant that motion.  And I say to

13   you, but most directly to Mr. Cooper, if you are inclined to

14   enter a plea, you are welcome to do so.  But in any case, I

15   will begin the trial on the 16th of March, this year, 2015,

16   and with the jury, with your counsel, with the government's

17   counsel, we'll work diligently to resolve the matter that's

18   been brought against you by way of indictment.

19         I also, and we'll talk a little bit more about

20   this in a moment, am of the same mind as Mr. Gorczyca, that

21   it's probably at least 99 percent or something very high

22   like that that you're not an armed career criminal.

23         But I tell you similar to the way I explained it

24   to Mr. Thompson regarding Mr. Malone, that still promises

25   you nothing.  I am going to impose, if you are found guilty

1    whether as a result of trial or a plea, what I believe is a

2    sufficient, a fair sentence.

3         I have looked at your record.  It is nothing to be

4    proud of.  So I don't want you to think that because I'm not

5    legally mandated to give you at least 15 years, if the

6    guidelines suggest or if I employ a variance upward, that

7    you can't still receive a substantial sentence.  I want you

8    to know that, because I don't want you to be tricked into

9    any resolution simply because you believe the judge can't do

10   one thing or the other.

11        I will never violate the law, especially not

12   intentionally, so we'll speak about maximums in just a

13   moment.  But I don't want you to think that if you're not

14   legally considered an armed career criminal, that you still

15   may not face something close to the maximum, which I believe

16   is ten years.

17        MS. KLUMP:  Yes, Your Honor.

18        THE COURT:  Which is, of course, five years less

19   than what an ACCA would require.

20        MS. KLUMP:  Yes, Your Honor.

21        THE COURT:  But no walk in the park, for either of

22   you as I see it now if there is a conviction, unless I am

23   made to see why, indeed, you will be ready to rejoin

24   society.  If you are not convicted, you have absolutely no

25   worries.

14

1          Ms. Klump, the maximum sentences employable for

2     both?

3          MS. KLUMP:  Yes, Your Honor.

4          THE COURT:  And then separately for both the plea

11:30:22  5     negotiations that have been engaged in so far.

6          MS. KLUMP:  Yes, Your Honor.

7          Both of the defendants, Mr. Malone and Mr. Cooper,

8     are charged with violating Title 18 of the United States

9     Code, Section 922(g)(1).  Mr. Malone is charged in Count 1

11:30:37 10     and Mr. Cooper in Count 2 of the indictment.  Both of these

11     counts carry a maximum penalty of up to ten years in prison,

12     three years of supervised release, a $250,000 fine and a

13     $100 special assessment.

14          The court has already discussed with defense

11:30:54 15     counsel the potential of an armed career criminal

16     classification, which would require a mandatory minimum of

17     15 years.

18          I would just add, Your Honor, that my

19     conversations with Mr. Gorczyca reflect exactly what he

11:31:10 20     said.  I would agree with his assessment of the situation,

21     that it does not appear at this time that Mr. Cooper does

22     qualify for the armed career criminal enhancement.

23          As to plea negotiations, as to both defendants,

24     the government has had informal discussions regarding the

11:31:29 25     guidelines, which likely or may apply.  In the case of both

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1   Mr. Malone and Mr. Cooper, no formal agreements have been

2   written up or offered to the defendants, but those informal

3   negotiations have taken place. And I believe all parties

4   are cognizant and have discussed the potential enhancements

11:31:52   5   that could apply in this case.

6   THE COURT: What do you believe would be the

7   likely guidelines for Mr. Malone?

8   MS. KLUMP: For Mr. Malone, Your Honor, he

9   would -- under Guideline 2K2.1, Mr. Malone would likely

11:32:06   10   start at a base offense level of 24. There would likely be

11   an enhancement under that same guideline of an additional

12   two levels, because the firearm he's alleged to have

13   possessed was stolen.

14   There is also a potential, which I anticipate the

11:32:27   15   parties would litigate, there is a potential four-level

16   enhancement for use or possession of the firearm in

17   connection with another felony offense.

18   Assuming the worst case and all of those

19   enhancements apply, that would bring Mr. Malone to an

11:32:43   20   offense level 30 prior to acceptance.

21   And, of course, if he went to trial -- or I'm

22   sorry, if he pled guilty and his actions reflected

23   acceptance of responsibility, he would receive a three-level

24   reduction, Your Honor.

11:32:57   25   THE COURT: Do you have an estimate as to what you

16

1    believe Mr. Malone's criminal history might be?

2              MS. KLUMP:  Yes, Your Honor.  I believe Mr. Malone

3    falls into Criminal History Category V.

4              THE COURT:  When you say there is likely to be

11:33:11  5    litigation over whether or not the weapon was used in

6    connection with another felony, help me to understand that.

7              This case is a little different.  I have two

8    defendants indicted together in a way that's not obvious why

9    on the face of the indictment, especially since both are

11:33:30 10    charged with felon in possession of firearm or ammunition.

11              So can you help me to understand why Mr. Malone

12    and Mr. Cooper were charged in a single indictment?  And

13    that might answer the question about your belief there may

14    be the four-level enhancement for use of the weapon in

11:33:47 15    another felony.  But if not, tell me about that as well.

16              MS. KLUMP:  Yes, Your Honor.

17              THE COURT:  And, Mr. Thompson, I will certainly

18    hear from you.

19              MS. KLUMP:  As to why the defendants are charged

11:33:59 20    in a single indictment, Your Honor, the facts and

21    circumstances surrounding their arrest are that both of the

22    defendants were present together in a vehicle.  When that

23    vehicle was stopped and the defendants were taken out of the

24    vehicle by law enforcement, the firearms, which were both

11:34:15 25    loaded, were found on their persons.

17

1              So given the testimony regarding the stop of the

2    vehicle and the same law enforcement officers were involved

3    in the arrest of both individuals, it was the arrest of both

4    and the possession of the firearms in the case of both

11:34:37  5    defendants arose out of the same incident.  And for that

6    reason, the government has joined them together in a single

7    indictment.

8              THE COURT:  Okay.

9              MS. KLUMP:  As --

11:34:47 10              THE COURT:  Thank you.  You may go on.  I think

11    you're going where I want you to go now, the four-level

12    enhancement, the possibility of that.

13              MS. KLUMP:  Yes, Your Honor.  As to the four-level

14    enhancement, the reason for the potential application of

11:35:00 15    this enhancement is that earlier, prior to the defendants'

16    arrest, it was -- the defendants were arrested on November

17    4th of 2014.  On November 3rd of 2014, the defendants are

18    charged in state court in connection with a kidnapping and

19    felonious assault of an individual.  That kidnapping and

11:35:28 20    felonious assault involved firearms.

21              Therefore, if the government could prove that the

22    firearm that was used in that felonious assault and/or

23    kidnapping was the one that the defendants -- were the ones

24    that the defendants possessed the following day on November

11:35:48 25    4th, that enhancement would likely apply.

18

1          THE COURT:  Now, if for any reason there was no

2     trial -- well, let me ask you this:  If there is a trial,

3     would you attempt to put that evidence on at trial?

4          MS. KLUMP:  To be honest, Your Honor, given my

11:36:12 5     discussions with defense counsel, I hadn't anticipated there

6     being a trial.  I haven't filed any sort of 404(b) notice.

7     I do think it would be arguably background evidence of the

8     reason why the defendants were arrested, because that was

9     why they were arrested on November 4th of 2014.

11:36:40 10          To be totally open with the court, I do think

11     there would likely be some discussion of the prejudicial

12     value, the prejudicial impact of that evidence versus the

13     probative value, given that the firearms were found on the

14     defendants' person.

11:36:57 15          So I just want to put that up in front of the

16     court, that that would --

17          THE COURT:  Sure.

18          MS. KLUMP:  I would very much anticipate that that

19     would be an issue that the court would need to give

11:37:06 20     additional attention.

21          THE COURT:  If there were a plea or pleas, what

22     would be your intention regarding that at a sentencing

23     hearing?

24          MS. KLUMP:  If either one of the defendants pled

11:37:23 25     open, meaning that there was no plea agreement of any sort,

1    so that enhancement was left open, in light of the other

2    enhancements that apply, I anticipate that I would pursue

3    the case with applying the base offense level for both

4    defendants, plus the enhancement for the stolen and/or

11:37:49   5    obliterated weapon.  That already gets the defendants very

6    high up in the guideline range.  The additional four-level

7    enhancement simply pushes them higher up, but it actually

8    has no real substantive effect, Your Honor, on the

9    guidelines since potentially they would be maxed out anyway

11:38:13   10    at the 120 months.

11            I would reserve the right to -- respectfully

12    reserve the right to pursue that enhancement at sentencing.

13    But I don't know how -- I'm not sure how worthwhile

14    extensive litigation on that issue would be given the other

11:38:31   15    enhancements and the criminal histories place the defendants

16    at such a high guideline level.

17            THE COURT:  Before I turn to Mr. Thompson, let me

18    just ask if you believe then that Mr. Malone's criminal

19    history of V intersecting with a before-any-adjustment

11:38:57   20    offense level of 30 intersects at the range of suggested

21    guidelines 151 to 188?

22            MS. KLUMP:  Yes, Your Honor, with, of course, the

23    statutory maximum limiting that guideline range to 120.

24            THE COURT:  Right.  So realistically, even without

11:39:20   25    an adjustment downwards possibly for acceptance, you're more

1    in line with the 28, which is the first below which

2    incorporates 120, because it goes from 110 to 137?

3              Do you see where I am?  I am moving --

4              MS. KLUMP:  Mr. Malone -- I believe Mr. Malone

11:39:42  5    falls in Category V.

6              THE COURT:  Oh, V; yes, one over.  So that takes

7    it to a 27?

8              MS. KLUMP:  Yes, Your Honor.

9              THE COURT:  Okay.  Fair enough.  Thank you,

11:39:53  10   Ms. Klump.

11             Mr. Thompson, I believe that many of these things

12   I've just asked government's counsel about may have been

13   items that you and Mr. Malone are thinking about.  And I can

14   certainly understand why you've been having substantial

11:40:10  15   discussions for a long period of time.  The possibility of a

16   lengthy sentence is strong, certainly if I believe the

17   government's suggested guidelines.  And I've right now just

18   heard the government's side.  I haven't heard yours, and I'm

19   willing now to hear yours.

11:40:34  20             So if even most of what she suggested you agree

21   with, then I certainly understand the furrowed brow you are

22   giving me now.

23             So will you tell me -- first of all, you've heard

24   Ms. Klump say there has been no written agreement, but there

11:40:49  25   have been discussions.  Today, if the plea colloquy had gone

1    as you both thought it might, would there have been a

2    written agreement or no written agreement?

3            MR. THOMPSON:  There would not have been a written

4    agreement, Your Honor.  I would just note, obviously, for

11:41:03  5    the record, we would intend to reserve the right to argue

6    against any of these enhancements and keep our options open

7    with regard to criminal history category as well.

8            I believe the government's predicted criminal

9    history category of V is a likely one, I would indicate,

11:41:25  10    again, without waiving any kind of objections.  And I agree

11    that the enhancements listed by the government are all

12    potentially in play.  And Mr. Malone and I have certainly

13    discussed all that as well.

14            THE COURT:  What about Ms. Klump's forecasting

11:41:47  15    that while she hadn't thought about it, and I think the

16    docket reflects there's been no filing of a notice of intent

17    to use 404(b) evidence, do you see it the way she does, that

18    it would be 404(b), not likely to come under an exception;

19    and even if it does, you would argue 403, more prejudicial

11:42:07  20    than probative?

21            MR. THOMPSON:  I think that's completely correct,

22    Your Honor.

23            THE COURT:  Okay.  Fair enough.

24            Then I think I've heard you both fully, unless

11:42:13  25    there is something more.  The next thing is for me to ask

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

22

1    Mr. Malone.  And I know, sir, you've been listening

2    attentively.  Unless, Mr. Thompson, there is something more,

3    I intend to ask you, Mr. Malone, the plea negotiations that

4    have been spoken about, you have been made aware of those,

11:42:32   5    haven't you, sir?

6         DEFENDANT MALONE:  Correct.

7         THE COURT:  And, in fact, you were before a

8    magistrate judge today involved in -- when I speak about a

9    plea colloquy, that's what you and I are having now, just a

11:42:42   10   colloquy, just a conversation, back-and-forth exchange.

11        You had begun a conversation with the magistrate

12   judge about possibly changing your plea from not guilty to

13   guilty, sir?

14        DEFENDANT MALONE:  I believe so, Your Honor.

11:42:56   15        THE COURT:  Okay.

16        MR. THOMPSON:  Your Honor, just to clarify, he

17   indicated that he did not want to enter into a guilty plea

18   today before we entered into the courtroom, so the colloquy

19   was not begun.

11:43:04   20        THE COURT:  I see, I see.  Thank you.  And that's

21   an important distinction.

22        Let me ask you this question:  Is it your

23   intention right now not to change your plea from not guilty

24   to guilty, as you stand before me now?

11:43:20   25        DEFENDANT MALONE:  I'm sorry, but could you repeat

23

1          that?

2                    THE COURT:  Right now you intend to maintain that

3          you're not guilty as charged?

4                    DEFENDANT MALONE:  No.

11:43:30    5          THE COURT:  Tell me what your intention is, in

6          your own words.

7                    DEFENDANT MALONE:  In my own words, my intention

8          is to plead guilty, but I had wanted the extra few days to

9          discuss a few more things with my counsel.

11:43:41   10          THE COURT:  Okay.  I understand that.  Then I've

11          allowed you, through granting of Mr. Thompson's motion made

12          on your behalf, until Friday.  So I will allow you to

13          continue having those discussions.  And you certainly will

14          have the opportunity to be present before Magistrate Judge

11:43:57   15          Limbert; and, if that doesn't work out again, before the

16          court for trial.

17                    Does that make sense, sir?

18                    DEFENDANT MALONE:  Yes, Your Honor.

19                    THE COURT:  Thank you, sir.

11:44:06   20          Have I heard you fully, Mr. Thompson?

21                    MR. THOMPSON:  Yes, Your Honor.  Thank you.

22                    THE COURT:  Thank you.

23                    Ms. Klump, back to you.  And this time, if you

24          don't mind, let's focus on Virgil Cooper.  The maximums

11:44:16   25          you've already spelled out.  What I'd like you to do now is

1    to give me your idea of what you think the sentencing

2    guidelines calculation would be for him if convicted of

3    Count 2.

4            MS. KLUMP:  Yes, Your Honor.  For Mr. Cooper, the

11:44:29  5    government's anticipated guideline calculation is similar

6    but not identical to the codefendant, Mr. Malone.

7            Mr. Cooper also starts at a base offense level of

8    24 under Guideline 2K2.1.  The government would advocate for

9    a four-level enhancement due to the serial number of the

11:44:52  10    firearm being -- that Mr. Cooper possessed being

11    obliterated.  I have had some discussions about that

12    enhancement with Mr. Gorczyca.  So I believe that would be

13    litigated somewhat.

14            And then again, a potential four-level enhancement

11:45:09  15    for use of -- or possession of any firearm in connection

16    with another felony offense.

17            In the worst-case scenario, and assuming both of

18    those enhancements apply, Mr. Cooper would begin at an

19    offense level 32.  The government anticipates that

11:45:28  20    Mr. Cooper falls under Criminal History Category IV.  So the

21    corresponding range for that would be 168 to 210 months,

22    with, of course, Your Honor, the statutory maximum limiting

23    that range to 120 months.  And that would be prior to any

24    acceptance of responsibility.

11:45:48  25            THE COURT:  Sure.  If there is a resolution short

```
 1   of trial, would it be your intention to move for the third

 2   point?

 3               MS. KLUMP:  Yes, Your Honor, given the

 4   circumstances.  We have -- counsel and I have been

 5   continuing negotiations, so I would have no reason to

 6   withhold the third point, assuming the defendants can -- or

 7   are able to plead by Friday.

 8               THE COURT:  Thank you.

 9               Mr. Gorczyca, I'd like you to tell me if you agree

10   with the suggested guidelines that Ms. Klump has just spread

11   on the record.

12               MR. GORCZYCA:  Your Honor, he's IV, for sure.

13               THE COURT:  I'm sorry.  Say it again.

14               MR. GORCZYCA:  He's IV, for sure.

15               THE COURT:  Okay.  So you believe -- and that's

16   proven out by the preplea criminal history report that we've

17   all had access to.

18               So then let's start, do you believe that your

19   client's a base offense level 24?

20               MR. GORCZYCA:  Yes, Your Honor.

21               THE COURT:  What about the addition of four levels

22   due to an obliterated serial number?

23               MR. GORCZYCA:  We have a disagreement on that,

24   Your Honor.

25               THE COURT:  It seems to me that that should be one
```

1   of the rather more easily resolved enhancements, either the

2   serial number is there or it's not there.

3          Is it there?

4          MS. KLUMP:  Your Honor, if I may address this

5   briefly.

6          THE COURT:  Sure.  Mr. Gorczyca, you don't mind if

7   she goes first?

8          MR. GORCZYCA:  No, not at all, Your Honor.

9          THE COURT:  Okay.

10         MS. KLUMP:  The issue here is when the firearm was

11  taken into custody and secured by law enforcement, the law

12  enforcement officer was unable to read the serial number

13  with plain eyesight.  It was then taken back to the lab,

14  where, I apologize, I don't have the exact name of the

15  procedure, but additional procedures or testing were

16  performed, and they were able to recover the serial number

17  of that firearm.

18         So I think the potential litigation here would be

19  to what extent the officer was able to read or not read the

20  number at the time that the firearm was taken into

21  possession.  And there is case law addressing this issue.

22         THE COURT:  And how would you intend to address it

23  with the court?  Meaning an active hearing, you would have

24  your agent testify, or you would write about it in advance

25  of the hearing?

1          MS. KLUMP:  I would offer both, Your Honor.  I

2     would brief the court -- I would anticipate briefing the

3     court with the cases that I've actually discussed a little

4     bit with Mr. Gorczyca.  And if there was still a dispute

11:48:25  5     after that briefing, I would anticipate calling the officer

6     who was unable to see the serial number initially.

7          THE COURT:  Thank you.

8          Mr. Gorczyca, is that a fair reflection of the

9     discussions you've been having about that four-level

11:48:43 10     possibility?

11          MR. GORCZYCA:  Yes, it is, Your Honor.

12     (Discussion held off the record.)

13          THE COURT:  Is there anything more on that point?

14          MR. GORCZYCA:  Mr. Cooper wants to see the gun,

11:49:07 15     because he believes that it's visible.

16          THE COURT:  Pardon me?

17          MR. GORCZYCA:  He wants to see the gun.

18          THE COURT:  Who wants to see the gun?

19          MR. GORCZYCA:  Mr. Cooper.

20          THE COURT:  Again?

21          MR. GORCZYCA:  Am I saying that right, Virgil?

22     (Discussion held off the record between Mr. Gorczyca

23       and Defendant Cooper.)

24          MR. GORCZYCA:  If he can speak, Your Honor.

11:49:21 25          THE COURT:  Sure, you can speak to me.  If you

1    stand that up, then I can hear you if you maintain -- thank

2    you.

3                DEFENDANT COOPER:  Well, exactly, those weren't my

4    exact words, saying that I needed to see the gun.  I rather

11:49:35 5    said to my attorney here, you know, just simply asked him,

6    could he view the photos of the gun himself and see, you

7    know, the before photos, before this procedure here was done

8    that the prosecutor just spoke about, you know, was it

9    visible before the procedure.  I never said I wanted to see

11:49:50 10   the gun.  You know, I just wanted my attorney to.

11               THE COURT:  Neither case, neither seems

12   problematic to me, and I will leave that to Mr. Gorczyca and

13   Ms. Klump, because it doesn't sound unreasonable if

14   Mr. Gorczyca hasn't seen something of that sort, that he

11:50:07 15   should if he is inclined.  So I won't interfere with that.

16   If Mr. Gorczyca wants more access, I am sure the government

17   can figure out a way to make that happen.

18               I'm correct, aren't I, Ms. Klump?

19               MS. KLUMP:  Yes, Your Honor.  At any time the

11:50:23 20   defense would like to see the physical evidence, they can

21   contact me and arrange a time to do so.

22               THE COURT:  And, of course, if it's a sticking

23   point, I'd strongly suggest you make that time before

24   Friday.

11:50:33 25               MR. GORCZYCA:  It's only that I felt so hurried

1    when I got the preplea/presentence back last week with an

2    undetermined about the armed career criminal possibility,

3    Your Honor.  And I agree that, sure, I would like to --

4    we'll arrange something so I can witness, see the gun.

11:50:57  5          THE COURT:  The last suggested adjustment is the

6    same as that you heard Ms. Klump and I speak about for

7    Mr. Malone, and that's four levels if the firearm was used

8    in another felony.

9          MR. GORCZYCA:  Right.  No, we object to that, too.

11:51:16 10          THE COURT:  And what would be your intention to

11   disprove or to persuade me that that four levels should not

12   be applied to your client?

13          MR. GORCZYCA:  Just not applicable to another

14   case, Your Honor.

11:51:31 15          THE COURT:  I'll only suggest that at the time of

16   sentencing, you might want to do a little more than just say

17   "We don't agree" if you maintain that position.  Of course,

18   you know that I am permitted by 18, U.S.C., 3661, and

19   Section 1B1.1 of the United States Guidelines to consider

11:51:53 20   all that I know about both of you when I decide what is the

21   correct sentence, a fair, sufficient, no greater than

22   necessary, not to exceed the statutory maximum, and I need

23   only be persuaded by the preponderance of the evidence in

24   using that information.

11:52:14 25          So just keep that in mind.  I think you know that

1    already, and I just don't want you to walk in thinking

2    simple disagreement would be enough if the government brings

3    in that which gives me at least a 51 percent comfort that it

4    should be applied.  All right?

11:52:26    5          MR. GORCZYCA:  I didn't mean to play that down,

6    Your Honor.  I apologize for that.

7          THE COURT:  I know you didn't.

8          Let me then ask if -- Mr. Cooper, you've heard

9    this discussion.  You are as attentive as Mr. Malone.  And I

11:52:40   10    know already that you've been involved.

11          Is it true that as you stand before me now, it is

12    your intention to go to trial, not enter a plea of guilty?

13          DEFENDANT COOPER:  Your Honor, that's actually not

14    my intentions.  My intention was just simply to, you know,

11:52:56   15    resolve my, you know, confusion of the steps with taking the

16    plea with my attorney.

17          THE COURT:  Okay.  Now, I don't want to involve

18    myself in attorney-client privileged information, but if

19    there is any confusion that I can assist with eliminating, I

11:53:18   20    am happy to do so while we're here together.  That's part of

21    the goals of the final pretrial.

22          If there is anything regarding the operation of

23    the court that you're still uncertain about, because it's

24    important what you're thinking about, for both of you,

11:53:34   25    absolutely.  You are in trouble.  I mean, you have been

1    federally indicted.  If convicted, whether it's by plea or

2    trial, you face substantial sentences.  Nothing to play

3    around with.

4         I want you to be as knowledgeable about your

11:53:49  5    options, and that's why I share mine as well.  Because

6    there's only so much that you can do before the obligation,

7    the discretion transfers to me, and then I do what I believe

8    is best.

9         So if today there is something that I can assist

11:54:07 10    with, again, not breaching attorney-client privilege, it's

11    my pleasure to do so.  And you can certainly ask

12    Mr. Gorczyca first if you're concerned about saying out loud

13    anything that you think I can help with.  But if you'd like

14    to ask me something, you certainly can.

11:54:23 15         DEFENDANT COOPER:  Okay.  Well, I will take a

16    short moment to --

17         THE COURT:  Sure.  Just direct your voice away

18    from the microphone.

19      (Discussion held off the record between Mr. Gorczyca

11:54:37 20         and Defendant Cooper.)

21         THE COURT:  Sirs, are you ready?  Is there

22    anything for me?

23         MR. GORCZYCA:  I --

24         DEFENDANT COOPER:  Well, I just wanted to make

11:56:06 25    mention of, you know, my attorney had mentioned to me about

1    a deal of 84 to 105 months.  Is the court like aware of

2    that?  Because I didn't hear none of that mentioned, when

3    the prosecutor was speaking, if I'm not overstepping my

4    boundary here.

11:56:24    5           THE COURT:  Ms. Klump, can you help me?  My

6    reading of the table tells me that's a Criminal History

7    Category IV, intersecting with an offense level 25.  Was

8    that part of your discussion?

9           MS. KLUMP:  I'm sorry, I was just making sure I

11:56:45   10    had the right criminal history category.

11           THE COURT:  Sure.

12           MS. KLUMP:  Yes, Your Honor.  Mr. Gorczyca and I

13    had had some informal plea negotiations -- or discussions, I

14    would say, regarding a written plea agreement in which the

11:57:01   15    obliterated serial number enhancement was applied, but the

16    additional four level in connection with another felony

17    offense enhancement is not applied.  That would bring the

18    defendant to an offense level of 28.  Following a

19    three-level reduction for acceptance of responsibility, and

11:57:18   20    an anticipated criminal history category -- although, I

21    would add that our plea agreements don't usually -- or do

22    not agree to the criminal history category, we leave that up

23    to the court -- that would place the defendant at a range,

24    anticipated range of 84 to 105 months.

11:57:35   25           I did not write up a formal or make a formal offer

1    of that nature, given that I hadn't had any indication from

2    Mr. Gorczyca that that was worth the time.  But I believe

3    that is what the defendant is referencing here.

4              THE COURT:  Okay.  So you're right, it has been

5    discussed, and Ms. Klump, I won't ask you to do so right now

6    on the record, but it didn't sound like you were -- that

7    that was off the table.

8              I do agree, criminal history is not agreed to, it

9    is left to the court.  And, in fact, it's often not agreed

10   to for a reason, because if you were to agree that you were

11   an armed career criminal and it turns out that that's not

12   the case, so it's best left to the probation officers or the

13   experts in calculating that.

14             What else isn't agreed to is the sentence that

15   I'll impose.  The rules of criminal procedure, Rule 11

16   allows that.  I don't.  I've never yet accepted a written

17   plea agreement wherein the parties have told me, "This is

18   what the sentence shall be," and I can't imagine the day

19   when I will.  I don't think it's the right, fair thing to

20   do.  I think it's a way to move cases along.  And if that's

21   all I'm after, then that would be the way to do it.

22             But there is still plenty of room for negotiation,

23   give and take on both sides.  Usually the written plea

24   agreements have strictures that both sides wouldn't

25   otherwise have.  And I'll leave that to you to work out.

1          But you are right, that had been discussed, and it

2    sounds like it's something counselors can continue to

3    discuss.

4          And I won't involve myself in those discussions.

11:59:19  5    But just make yourself as actively involved and aware,

6    because it is important, up or down, whether you go to trial

7    or not, it is important that you are comfortable with what

8    you decide.

9          Make sense?

11:59:32  10    DEFENDANT COOPER:  Yes, it absolutely do.

11          THE COURT:  Anything else, sir, at this time?

12          DEFENDANT COOPER:  No.  I would just, you know,

13    discuss the further matters with my attorney.

14          THE COURT:  Sure.

11:59:42  15          MR. GORCZYCA:  Your Honor, I'm sorry.  Can I

16    just --

17          THE COURT:  Yes.

18      (Discussion held off the record between Mr. Gorczyca

19        and Defendant Cooper.)

12:00:39  20          MR. GORCZYCA:  I am sorry, Your Honor.  We're

21    fine.

22          THE COURT:  Is there anything more from either of

23    you?

24          DEFENDANT COOPER:  No.

12:00:46  25          MR. GORCZYCA:  No, Your Honor.

1          THE COURT:  Okay.  I think I've done all that's

2     necessary today, certainly having accomplished my own

3     agenda.

4          Ms. Klump, is there anything else on your agenda,

12:00:56  5     anything else at all that you'd like the court to take up

6     before we separate?

7          MS. KLUMP:  No, Your Honor.  Thank you.

8          THE COURT:  Mr. Gorczyca, anything else for you

9     and Mr. Cooper?

12:01:05 10          MR. GORCZYCA:  No, Your Honor.

11          THE COURT:  Mr. Thompson, anything else for you

12     and Mr. Malone?

13          MR. THOMPSON:  Nothing, Your Honor.  Thank you.

14          THE COURT:  Certainly.

12:01:12 15          MS. KLUMP:  I apologize, Your Honor.  I don't

16     recall the exact date the trial documents are due.  Based on

17     my other experiences in this courtroom, I would anticipate

18     it's prior to Friday, possibly Thursday, although I don't

19     have the exact date in front of me.

12:01:26 20          Could I request the court extend the trial

21     document deadline to Friday in light of the discussions that

22     we've had here today?

23          THE COURT:  Well, trial is to start Monday, the

24     16th.  That's almost two weeks from today.  So it would have

12:01:43 25     been two weeks from yesterday.  And if I understand you --

1    and let me ask you, Judy, trial documents are due on the

2    12th, the Friday before the 16th?  Pardon me, the Thursday

3    before the 16th?

4               THE CLERK:  Correct, Judge.

12:01:58   5               THE COURT:  You are asking for an extension until

6    the 13th?  Do you realize that you would still have --

7    because it's my understanding that these gentlemen are going

8    before Magistrate Judge Limbert on Friday, the 6th.  So

9    there is a whole week before you'd have to file documents,

12:02:14  10    even if I give you your extension.

11               MS. KLUMP:  Oh, I was thinking it was due this

12    week, Your Honor.  Never mind.  I will withdraw that

13    request.

14               THE COURT:  If -- let's agree on this:  I grant

12:02:25  15    the motion, directing that trial documents need not be filed

16    until the 13th.  And that way, if either of us is mistaken,

17    you still have that.  Because I want you all to be able to

18    focus on this matter of negotiation without the worry of

19    also working on trial-related documents.

12:02:47  20               MS. KLUMP:  Thank you, Your Honor.

21               THE COURT:  I don't think they'll be so

22    complicated in this case that if you're forced to do it, it

23    will be unmanageable in a shorter period of time.

24               MS. KLUMP:  Not at all, Your Honor.

12:02:58  25               THE COURT:  Anything else?

37

1              MS. KLUMP:  No.  Thank you.

2              THE COURT:  Sure.  I think I've satisfied us all

3       then.  We're in recess.

4              THE CLERK:  All rise.

5          (Proceedings concluded at 12:02 p.m.)

38

1                    C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4     from the record of proceedings in the above-entitled

5     matter.

6

7               /s/ Mary L. Uphold        August 19, 2015
                Mary L. Uphold, RDR, CRR    Date
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25