IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:14CR438-001 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| RYAN D. MALONE, | ) | UNITED STATES' |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by its counsel, Carole S. Rendon, United States Attorney, and M. Kendra Klump, Assistant United States Attorney, and respectfully submits the following memorandum in anticipation of the sentencing of Defendant Ryan D. Malone. For the reasons set forth below and those to be articulated at sentencing, the United States respectfully requests that the Court impose a sentence of 120 months imprisonment.

I.     **PROCEDURAL BACKGROUND**

On December 9, 2014, a two-count indictment was filed, charging Defendant Ryan D. Malone and co-defendant Virgil Cooper with Felon in Possession of a Firearm or Ammunition, in violation of 18 U.S.C. § 922(g)(1). (R. 1: Indictment, PageID 1). Malone pleaded guilty without a plea agreement. (R. 39: Plea Hrg Tr., PageID 145-46). On July 2, 2015, this Court

sentenced Malone to 120 months[1] imprisonment, followed by three years of supervised release, and ordered him to pay a $100 special assessment.[2] (R. 60: Judgment, PageID 319-21, 323). The Court entered final judgment five days later. (*Id.*, PageID 319). Malone appealed to the Sixth Circuit. (R. 65: Notice of Appeal, PageID 375).

On appeal, Malone argued that (1) his base offense level was predicated on an offense that no longer constituted a "crime of violence" under U.S.S.G. § 2K2.1(a)(2), and (2) his offense level was improperly enhanced under U.S.S.G. § 2K2.1(b)(6)(B). *United States v. Malone*, No. 15-3765, 2016 WL 1696871, at *1 (6th Cir. April 27, 2016). More specifically, in his first claim, Malone argued that his prior Aggravated Burglary conviction (under OHIO REV. CODE § 2911.11(A)(2) (effective July 1, 1996)) was no longer a "crime of violence" following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). *Malone*, 2016 WL 1696871, at *3. The United States conceded that this subsection of the Ohio statute no longer qualified as a predicate offense under U.S.S.G. § 2K2.1(a)(2). *Malone*, 2016 WL 1696871, at *3. Therefore, the Sixth Circuit "vacate[d] the judgment and remanded for reconsideration in light of *Johnson*." *Id.*

In his second appellate claim, Malone argued that the Court improperly increased his offense level for using or possessing the firearm in connection with another felony offense. *Id.* The Sixth Circuit "agree[d] with the government," however, that Malone had waived that issue

---

[1] In deciding the sentence, the Court found that Malone's total offense level was 27, that his criminal history category was VI, and that the corresponding Guidelines range was 130 to 162 months (although that was capped by the 120-month statutory maximum). (R. 71: Malone Sent. Tr., PageID 394, 395, 396).

[2] Cooper also received a sentence of 120 months imprisonment. (R. 61: Cooper Judgment, PageID 326). Cooper appealed his sentence; the Sixth Circuit affirmed his judgment. (R. 92: Mandate, PageID 618; *United States v. Cooper*, No. 15-3745, Doc. 37-1: Order, at 4 (6th Cir. May 11, 2016)).

by withdrawing his objection to the enhancement before sentencing. *Id.* The appellate court thus concluded that it "lack[ed] jurisdiction to review the application of the four-level enhancement." *Id.*

Following the Sixth Circuit's decision, the Court set the case for resentencing. (R. 91: Order, PageID 617). On July 26, 2016, a revised Presentence Investigation Report ("PSR") was filed. (R. 100: PSR, PageID 655). The United States now submits the below argument in support of its sentencing position.

## II. FACTUAL BACKGROUND

In support of its sentencing position, the United States offers the following factual summary of Malone's offense and relevant conduct. The United States also refers the Court to the description included in the PSR. (R. 100: PSR, PageID 658-59).

On November 3, 2014, at approximately 8:00 p.m., members of the Cleveland Police Department ("CPD") responded to a kidnapping report. (*See id.*). Witnesses reported that four masked assailants, all wearing black, confronted the victim at gunpoint. The victim then was pistol-whipped and bound with duct tape before being placed in the trunk, and later back seat, of a white Chevy Malibu with tinted windows. (*Id.*; *see also* R. 63-1: CPD Incident Report (redacted), PageID 363). Following the abduction, the victim's father received a telephone call demanding a ransom. (R. 100: PSR, PageID 358). The phone number used to place the ransom call was a telephone number used by Malone. (*Id.*).

The next morning, members of the Federal Bureau of Investigation ("FBI") and CPD tracked Malone's phone to an address in Maple Heights, Ohio. (*Id.*). Outside of the residence, agents and officers observed a white 2015 Chevy Malibu matching the description of the assailants' vehicle. (*Id.*; R. 63-1: CPD Incident Report, PageID 364). Officers next saw two men, one of whom matched the description and pictures of Malone, leave the residence and enter the

Malibu. (R. 100: PSR, PageID 659). Officer initiated a stop of the vehicle, at which time both Malone and Cooper were arrested. (*Id.*).

Officers discovered a Glock 19 handgun in Malone's waistband. (*Id.*). The weapon – which had been reported stolen – was loaded with 15 rounds of ammunition and one round in the chamber. (*Id.*). Officers also found a piece of duct tape, a black mask, and a black hat inside Malone's pockets. (*Id.*). Malone's co-defendant, Virgil Cooper, was carrying a loaded Firestorm handgun, a handcuff key, and a black winter hat. (*Id.*). Suspected blood smears were found on the rear seat of the Malibu. (R. 63-1: CPD Incident Report, PageID 367). Firearms were also recovered from the home where Cooper and Malone had been staying. (*Id.*, PageID 368).

### III. SENTENCING POSITION

#### A. APPLICABLE LEGAL STANDARD

A well-established legal framework guides the Court's sentencing determination. The advisory Guidelines range serves as "the starting point and the initial benchmark," *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006), and thus remains an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. The Sentencing "Commission fills an important institutional role: It has the capacity courts lack to 'base its determination on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal citation omitted). After determining the appropriate Guidelines range, the Court considers the factors set forth in 18 U.S.C. § 3553(a).

#### B. SENTENCING GUIDELINES COMPUTATION

The United States respectfully submits that the Guidelines calculation described herein is the correct application in the present case.

### 1. Base Offense Level & Stolen-Firearm Enhancement

The base offense level is 20 under U.S.S.G. § 2K2.1(a)(4)(A), because Malone committed the present offense after sustaining a felony conviction for a controlled substance offense (Trafficking Offenses with Schoolyard and Firearm Specifications). (R. 100: PSR, PageID 659, 665-66). Two levels are added because the firearm was stolen. (*Id.*, PageID 660; U.S.S.G. § 2K2.1(b)(4)(A)).

### 2. Other-Felony-Offense Enhancement

Malone's offense level increases another four levels because he "used or possessed *any* firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (emphasis added). This enhancement applies when the firearm (which need not be the same one cited in the offense of conviction) "facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, comment. (n. 14(A)). "Another felony offense" is defined in turn as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.*, comment. (n. 14(C)).

To apply this enhancement, "the district court must find that the government has established by a preponderance of the evidence that the defendant (1) committed another felony, and (2) used or possessed a firearm in connection with that offense." *United States v. Jones*, 470 F. App'x 477, 480 (6th Cir. 2012). To show the necessary nexus between the firearm and the other felony, "the government must prove that 'the connection between the firearm and the other felony was not merely coincidental, that the firearm served some purpose in relation to the other offense.'" *Id.* (internal citation omitted). Establishing this nexus is "not a particularly onerous burden." *United States v. Davis*, 372 F. App'x 628, 629 (6th Cir. 2010). Nor must the other

felony be charged (much less a conviction secured) in order for the enhancement to apply. *United States v. Burns*, 498 F.3d 578, 580 n.2 (6th Cir. 2007).

Here, the evidence establishes that Malone committed other felony offenses – kidnapping, abduction, and felonious assault, to name a few – just hours before his arrest. As set forth above, witnesses reported that four assailants, armed with guns, attacked and bound the victim. Malone's phone placed the ransom call. That phone led officers to the residence where Malone and Cooper were seen. Malone and Cooper exited the residence and entered a white 2015 Chevy Malibu that was an almost identical match to the assailants' vehicle. In addition, suspected blood smears were found in the Malibu, and duct tape was found in Malone's pockets. Cooper possessed a handcuff key, further indication that the two men were involvement in the kidnapping. Also, Malone was carrying a black hat and mask, consistent with witnesses' descriptions of the kidnappers.

In addition, the evidence establishes a clear nexus between the firearm and the kidnapping. Far from coincidental, possession of a firearm was at the heart of Malone's other felony offense, whether classified as felonious assault[3] or kidnapping.[4] As set forth above, the firearm was used not only to force the victim into the car but also to pistol-whip the victim. Thus, similar to the example cited in the Guideline commentary, *see* U.S.S.G. § 2K2.1, comment. (n. 14(E)(ii) (robbery)), Malone's "other felony offense" was one in which the firearm played a key

---

[3] In Ohio, felonious assault is a crime punishable by more than one year of imprisonment. *See* OHIO REV. CODE § 2903.11(A)(2) ("No person shall knowingly . . . [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon . . . .").

[4] Similarly, in Ohio, kidnapping is a crime punishable by more than one year of imprisonment. *See* OHIO REV. CODE § 2905.01(A)(1) ("No person, by force, threat, or deception . . ., by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (1) To hold for ransom, or as a shield or hostage….").

role and, as such, the enhancement is appropriate. *See United States v. Adkins*, 729 F.3d 559, 565-66 (6th Cir. 2013) (affirming application of enhancement where district court found sufficient evidence to support finding of aggravated assault); *United States v. Smith*, 327 F. App'x 625, 627 (6th Cir. 2009) (felonious assault). The evidence described above establishes an ample basis for the Court to make the necessary factual findings and once again apply the enhancement, increasing Malone's adjusted offense level to 26.[5]

Malone previously accepted responsibility for his offense, and the United States has no objection to a continued three-level downward adjustment to reflect as much. U.S.S.G. § 3E1.1. Thus, Malone's total offense level is 23, and he falls into Criminal History Category VI. (R. 100: PSR, PageID 660, 667). The corresponding Guidelines range is 92 to 115 months. U.S. Sentencing Guidelines, Chapter 5, Pt. A. This calculation coincides with that of the PSR. (R. 100: PSR, PageID 673).

  C.  APPLICATION OF 18 U.S.C. § 3553(A) FACTORS

    1.  Nature and Circumstances of the Offense

The nature and circumstances of this offense weigh in favor of the maximum statutory sentence. Numerous aggravating factors distinguish the instant offense from the "garden variety" felon-in-possession cases which are too often before this Court. First, the Court should consider the nature of Malone's possession: Malone carried the firearm on his person, ready for

---

[5] At Malone's original sentencing, the Court found this enhancement to be appropriate. (R. 71: Malone Sent. Tr., PageID 391-92). In fact, Malone agreed with its application. (*Id.*, PageID 386-87 (defense counsel withdrawing objection to enhancement)). The Court also applied the four-level increase to Cooper's offense level. (R. 82: Cooper Sent. Tr., PageID 555; *see also United States v. Cooper*, No. 15-3745, Doc. 37-1: Order, at 4 (6th Cir. May 11, 2016) ("the sentencing court's [§ 2K2.1(b)(6)(B)] finding is supported by a preponderance of the evidence, including the undisputed description of the offense in Cooper's presentence report and the police report that was submitted at sentencing.")).

immediate use. Second, Malone's gun was ready to fire, loaded with one round in the chamber and 15 more rounds in the magazine. Third, Malone's firearm was stolen. Stolen firearms pose an even greater danger to the community than do their "clean" counterparts.

Just as the aggravating facts surrounding Malone's offense weigh in favor of a significant sentence, the circumstances of his relevant conduct[6] also demonstrate the necessity of a lengthy prison term. As detailed above, Malone participated in an armed kidnapping and assault in the hours leading up to his arrest. His actions were violent, cold-hearted, and callous. Malone, Cooper, and their accomplices not only brandished firearms at their victim but also bound him with duct tape. Malone's phone was used to demand a ransom from the victim's father. This heinous, calculated conduct was motivated by greed and animated by violence. Courts are often left to speculate as to what a defendant might do with a firearm in his or her hands. Here, the evidence shows us exactly what Malone has done and what he may very well do once again. The nature of this offense and the need to protect the public from future crimes necessitate a severe sanction.

        2.      <u>History and Characteristics of the Defendant</u>

When viewed against the backdrop of his criminal history, Malone's behavior in November 2014 is not surprising. Malone's criminal record is replete with violence. As a juvenile, he amassed three delinquencies by age 13. (R. 100: PSR, PageID 661-62). In 2002, Malone accrued another delinquency for Felonious Assault, Aggravated Assault, and Assault. (*Id.*, PageID 662). That offense involved the use of "a firearm to cause or threaten to cause harm." (*Id.*). As an adult, Malone's behavior worsened. In 2004, he was convicted of Aggravated Burglary (F-1) and Attempted Aggravated Assault (F-5). (*Id.*, PageID 662-63). There, law

---

[6] The Guidelines direct the Court to consider relevant conduct. *See* U.S.S.G. § 1B1.3.

enforcement responded to a call of shots fired and found Malone in possession of a revolver. (*Id.*, PageID 663-64). Malone admitted to firing the gun. (*Id.*, PageID 664). One year later, Malone was found guilty of Aggravated Riot with various specifications, including firearm and repeat violent offender. (*Id.*). Once again, the offense involved firearms and violence. (*See id.*, PageID 665). Malone received probationary sentences for each of those convictions. (*Id.*, PageID 662, 664). Malone squandered those opportunities to correct his behavior, however, by violating his probation and committing new crimes. (*Id.*, PageID 662-64).

Malone's criminal conduct continued. In 2007, he was convicted of Trafficking Offenses with Schoolyard and Firearm Specifications. (*Id.*, PageID 665). On May 23, 2006, Malone possessed, on his person, drugs packaged for resale and a loaded Ruger, Model P345 pistol. (*Id.*, PageID 666-67). This arrest resulted, in part, from police officers' response to a report of males brandishing firearms. (*Id.*, PageID 666). Malone was convicted of Felon in Possession of a Firearm in federal court for possessing the Ruger on May 23, 2006. (*Id.*, PageID 666-67). In the same federal indictment, Malone was also charged with illegally possessing a Ruger, Model P95DC pistol on January 12, 2006. (*Id.*). That incident also involved a shooting, and the evidence (including witness statements, gunshot residue, forensic testing, and a partial admission) strongly suggested that Malone had fired multiple rounds. (*Id.*, PageID 667). One of the rounds hit a 61-year old man who was inside his home. (*Id.*). Malone received a sentence of 65 months in federal court. (*Id.*, PageID 666).

This case was remanded for resentencing due to an intervening change in the definition of a "crime of violence" and the corresponding impact on Malone's base offense level. While the law may have changed, however, nothing has changed in Malone's criminal record. As laid out above, his history is characterized by violence, firearms, and a refusal to comport with the

9

standards and ethics of society. Past community-control and custody sanctions have not deterred Malone from repeatedly returning to criminal conduct. (*See id.*, PageID 661-67). A significant sentence is necessary to deter Malone from future crimes and to protect society.

        3.    <u>Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence</u>

The remaining § 3553(a) factors further support a 120-month sentence. The aggravating circumstances of this case and Malone's history distinguish it from a standard felon-in-possession case and demonstrate why the maximum sentence is needed. Malone's past and present are dominated by firearms. A sentence of 120 months (an upward departure of only five months) will address that concern, deter Malone, and protect the public while also deterring others, promoting respect for the law, and achieving just punishment.

## IV. **CONCLUSION**

For the reasons set forth above and those to be articulated at the sentencing hearing, the United States respectfully requests that the Court impose a sentence of 120 months imprisonment.

      Respectfully submitted,

      CAROLE S. RENDON
      United States Attorney

By:   /s/ M. Kendra Klump
      M. Kendra Klump (CO: 43382)
      Assistant United States Attorney
      United States Court House
      801 West Superior Avenue, Suite 400
      Cleveland, OH 44113
      (216) 622-3689
      (216) 522-2403 (facsimile)
      Kendra.Klump@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October 2016, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ M. Kendra Klump
M. Kendra Klump
Assistant U.S. Attorney