UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:14-cr-438 |
| Plaintiff, | ) | Youngstown, Ohio |
| | ) | Tuesday, November 15, 2016 |
| vs. | ) | 3:09 p.m. |
| | ) | |
| RYAN D. MALONE, | ) | |
| | ) | |
| Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE BENITA Y. PEARSON
UNITED STATES DISTRICT JUDGE

RESENTENCING

APPEARANCES:

**For the Government:**
    Office of the U.S. Attorney
    Northern District of Ohio
    **By:** Mary Kendra Klump, Esq.
    Suite 400
    801 Superior Avenue, West
    Cleveland, Ohio  44113
    (216) 622-3689
    kendra.klump@usdoj.gov

**Mary L. Uphold, RDR, CRR**
Thomas D. Lambros Federal Building and U.S. Courthouse
125 Market Street, Room 337
Youngstown, Ohio  44503-1780
(330) 884-7424
Mary_Uphold@ohnd.uscourts.gov

Proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.

**APPEARANCES (CONTINUED):**

**For the Defendant:**
    Office of the Federal Public Defender
    Northern District of Ohio
    **By:**  Darin Thompson, Esq.
    750 Skylight Office Tower
    1660 West Second Street
    Cleveland, Ohio  44113
    (216) 522-4856
    darin_thompson@fd.org

- - -

P R O C E E D I N G S

- - -

1    THE CLERK:  The matter before the court is Case

2    Number 1:14-cr-438, the United States of America versus

3    Defendant Number 1, Ryan D. Malone.

4    THE COURT:  Good afternoon, everyone.  You may all

5    retake your seats.

6    Counsel for the United States, will you please

7    introduce yourself for the record and the person seated with

8    you at counsel's table?

9    MS. KLUMP:  Good afternoon, Your Honor.  Kendra

10   Klump for the United States, along with FBI Special Agent

11   Paul Cruz.

12   THE COURT:  Welcome to you both.

13   MS. KLUMP:  Thank you.

14   THE COURT:  Counsel for Mr. Malone, will you

15   please introduce yourself for the record along with your

16   client?

17   MR. THOMPSON:  Good afternoon, Your Honor.  Darin

18   Thompson from the Federal Public Defender Office, and to my

19   left is Ryan Malone.

20   THE COURT:  Good afternoon to you, Mr. Thompson,

21   and welcome to you all.

22   This matter has been scheduled to allow the court

23   to resentence you, Mr. Malone, and this resentencing has

1    become necessary given that the Sixth Circuit has vacated my

2    original sentence in line with intervening case law that we

3    colloquially refer to as Johnson.

4         Since then, there have been reissued presentence

15:10:46   5    reports and memoranda on behalf of the United States and you

6    by Mr. Thompson.  But in a rather uncharacteristic move, I

7    also have several motions filed by you, which is rather

8    surprising given that the court has appointed counsel for

9    you; and not just any counsel, but counsel that hails from

15:11:07   10   one of the best defense firms in the Northern District of

11   Ohio.  And he's seated with you now at counsel's table.

12        So what I'll do is start this hearing by taking up

13   only one of your motions, because only one matters to me

14   today, and it's the motion to discharge and appoint new

15:11:23   15   counsel.  Because you see, if I do neither, discharge

16   Mr. Thompson or appoint new counsel, then your other motions

17   won't matter, because I will believe, unless he tells me

18   differently, that he has spoken for you.

19        Because when a defendant has counsel, that counsel

15:11:41   20   speaks for the defense in this room.  That makes sense,

21   doesn't it?

22             THE DEFENDANT:  It does, Your Honor.

23             THE COURT:  Then stop.  I didn't ask for an

24   explanation.

15:11:50   25             Mr. Thompson, I am interested in hearing from you.

1    I am speaking about this motion that's docketed as ECF

2    Number 103, dated the 11th of October, 2016.  You've seen

3    it, haven't you?

4              MR. THOMPSON:  I have, Your Honor.

15:12:05    5              THE COURT:  Ms. Klump, you've seen it as well?

6              MS. KLUMP:  Yes, Your Honor.

7              THE COURT:  Mr. Thompson, I'd like to know what

8    your position is regarding this, what discussions you've had

9    that you can share that don't violate attorney-client

15:12:17   10    privilege, and, quite simply, if you're still interested in

11    representing Mr. Malone and/or whether or not he has an

12    interest in persisting with this motion or withdrawing it.

13              MR. THOMPSON:  Your Honor, in my opinion, there

14    isn't a breakdown of communication such that new counsel

15:12:35   15    needs to be appointed.  Mr. Malone and I have had

16    disagreements about a number of legal theories he wants to

17    pursue.  Some of them are addressed in his pro se motions.

18    It's not uncommon for appointed counsel and defendant to

19    disagree about things like this.  So it didn't strike me as

15:13:00   20    sufficiently unusual or outside the norm.

21              THE COURT:  Well, it's outside of the norm and

22    sufficiently unusual for these to be memorialized on the

23    docket.  Maybe not in general conversation.  But I

24    referenced ECF 103, the Motion to Discharge, and then what's

15:13:17   25    stated there is echoed in ECF 111, which is styled both as a

1    Motion to Compel Answer to Defendant's Filed Motion to

2    Discharge and Appoint New Counsel.  And I'm not sure from

3    whom Mr. Malone intended to compel an answer, perhaps from

4    myself.

15:13:34  5    So your answer to the question appears to be you

6    don't believe there is a breakdown and you are not asking me

7    to remove you as counsel?

8    MR. THOMPSON:  That's correct, Your Honor.

9    THE COURT:  Let me hear from you, Mr. Malone.

15:13:45  10   Stand up, please.

11   I have your motion, motions, maybe, given the echo

12   in ECF 111.  Are you still interested in having me remove

13   Mr. Thompson or at least consider doing that?

14   THE DEFENDANT:  Well, Your Honor, Mr. Thompson and

15:14:08  15   myself did have a conversation last week prior to him coming

16   to see me on November the 1st when I refused to speak with

17   him.  He returned to see me on November the 7th, and we did

18   sit down and have a conversation.

19   So as of today, I do not wish to continue to

15:14:27  20   remove him.

21   THE COURT:  Are you withdrawing your motion asking

22   me to discharge him and replace him with new counsel then?

23   THE DEFENDANT:  Yes, I am, Your Honor.

24   THE COURT:  I will mark the motion as withdrawn,

15:14:39  25   that being ECF 103 and also ECF 111.

1          Mr. Thompson, what else is on the docket and

2     authored by Mr. Malone and not you come at ECF 107 and 112.

3     One is styled a Motion to Correct Error in PSR.  The other

4     is Addendum to Defendant's Sentencing Memorandum, Downward

15:15:03  5     Departure Request and RDAP Request.  It appears that

6     Mr. Malone had even more to say than you, because you

7     certainly wrote to me about both those points.

8          Have you reviewed these writings?

9          MR. THOMPSON:  I have, Your Honor.

15:15:15 10          THE COURT:  Are you prepared, to the extent you

11     believe it necessary, to incorporate them in your

12     representation of Mr. Malone today?

13          MR. THOMPSON:  Yes, Your Honor.

14          THE COURT:  All right then.  Then that's how we'll

15:15:24 15     address those.

16          Thank you, Mr. Malone.  You may retake your seat.

17          I've already identified matters that -- documents

18     that I've addressed in preparation for today's resentencing

19     hearing, and included in that, the memoranda filed on behalf

15:15:44 20     of the United States by you, Ms. Klump.  Also the memorandum

21     filed by Mr. Thompson.  That will, of course, include, to

22     the extent he believes additional mention is necessary, 107

23     filed by Mr. Malone and 112 filed by Mr. Malone.

24          And there is the revised presentence investigation

15:16:09 25     report.  And perhaps this is the best time for me to

1    introduce, or ask that he introduce himself on the record,

2    the writer of this report.

3              Will you do that, sir?

4              PROBATION OFFICER:  Good afternoon, Your Honor.

15:16:20  5    Jordan Wlotzko with United States Probation.

6              THE COURT:  Thank you for authoring this report

7    and for being here today.

8              And the report I'm referring to, as you know,

9    there are several, but I'm looking at the one that was last

15:16:32 10    revised on October 1st, this year, 2016.

11              Ms. Klump, do you have that same report?

12              MS. KLUMP:  Yes, Your Honor.

13              THE COURT:  Have you had sufficient time to review

14    it?

15:16:44 15              MS. KLUMP:  Yes, I have.

16              THE COURT:  When I review the objections that are

17    at the back of that report, starting in the addendum on page

18    23, I note that there are no objections there on behalf of

19    the United States.

15:16:55 20              Is that still the case?

21              MS. KLUMP:  Yes, Your Honor.

22              THE COURT:  Mr. Thompson, again, we're focused on

23    the report that was last revised on -- it says last revised

24    October 1, Mr. Wlotzko, but it was filed on November 1.

15:17:16 25              PROBATION OFFICER:  That should be November 1st,

1    Your Honor.

2              THE COURT:  So the revision date is November 1?

3              PROBATION OFFICER:  Yes, Your Honor.

4              THE COURT:  Does that change your answer at all,

15:17:22  5    Ms. Klump?

6              MS. KLUMP:  No, Your Honor.

7              THE COURT:  So, Mr. Thompson, I'm talking about

8    the November 1 report.  Do you have it, sir?

9              MR. THOMPSON:  I do, Your Honor.

15:17:30 10              THE COURT:  And when I ask you to look at the

11    addendum, there are objections there on behalf of your

12    client.  Are all of your objections summarized on the pages

13    that span from 23 to 25, sir?

14              MR. THOMPSON:  Yes, Your Honor.

15:17:51 15              THE COURT:  And, of course, if you believe, before

16    we separate, that there's something more you'd like to bring

17    up, you are free to do it here today and I'll decide what to

18    do about that.

19              What I'd like to do is to speak about these

15:18:07 20    objections as we go through the final presentence report,

21    Mr. Malone.  It tends to make more sense when we do it that

22    way.

23              There are a couple of statements in this section,

24    Mr. Wlotzko, that I don't really understand, so it's hard

15:18:26 25    for me to weave them in.

1          So, for instance, sir, on page 24, at the very

2     top, it says paragraph number 2, and then it speaks about an

3     adjusted offense level that's different from the calculated

4     adjusted offense level.  I'm not sure what you mean there.

15:18:46  5          PROBATION OFFICER:  In my response to objection

6     number 2?

7          THE COURT:  No.  If you're telling -- I'm talking

8     about the paragraph that's at the top of page 24 that begins

9     "2" period.  Are you saying that that's Mr. Malone's

15:19:03  10    objection?

11         PROBATION OFFICER:  Yes.

12         THE COURT:  And then your answer --

13         MR. THOMPSON:  The second objection.

14         THE COURT:  -- is --

15         MR. THOMPSON:  I had the same question the judge

16    has.

17         THE COURT:  Mr. Thompson, will you say that again?

18    I could hear you partially.

19         MR. THOMPSON:  Oh, I apologize, Your Honor.

15:19:19  20         THE COURT:  Well, that's okay, because you may be

21    able to help me.  What is that, if it's not an objection?

22         MR. THOMPSON:  The ones with the numbers in front,

23    "2," and then there's a section with a heading "Response by

24    U.S. Probation Officer," below that there's a section that

15:19:31  25    doesn't have a heading but just says a "3" --

1          THE COURT:  Yes.

2          MR. THOMPSON:  -- and there's a response.  Those

3  are the objections.  The numbered ones are the objections.

4          THE COURT:  And that's what I don't understand.

15:19:41  5  Unless you're saying that because you don't believe the

6  four-level enhancement is appropriate, you think it should

7  be 22 and Mr. Wlotzko is responding, "No, I think 26

8  continues to be correct."

9          Do I understand you both then?

15:19:53  10          MR. THOMPSON:  Yes.

11          PROBATION OFFICER:  Yes, Your Honor.

12          THE COURT:  Then stay on your feet for a moment,

13  because I want to make sure I understand item 3 in the same

14  way.  So then at item 3, Mr. Thompson, based on the

15:20:02  15  objection as noted herein, the total offense level is 19,

16  and that's because you start at 22?

17          MR. THOMPSON:  Yes.

18          THE COURT:  But then you take out the two-level

19  adjustment -- I'm not sure how you get to 19.  Tell me that.

15:20:21  20  Because 19 would require a three-level adjustment.  Correct,

21  Mr. Wlotzko?

22          MR. THOMPSON:  I believe the 19, Your Honor, would

23  be his total offense level after acceptance of

24  responsibility.  I thought that was where I was going with

15:20:41  25  that.

1    THE COURT:  So you would replace 26 with 22 and

2  then reduce it by three to get 19?

3    MR. THOMPSON:  Yes, Your Honor.

4    THE COURT:  All right.  And, Mr. Wlotzko, to make

15:20:53  5  sure I understand you, you are persisting with 23?

6    PROBATION OFFICER:  That's correct, Your Honor.

7    THE COURT:  Okay.  Fair enough.  Then we can weave

8  those in as well.

9    So why don't we do this:  Mr. Malone, you've done

15:21:03 10  this not so long ago, but I want to make sure still that you

11  understand and can follow along, because your assistance to

12  Mr. Thompson is going to be important.

13    The first thing I am going to do is go through

14  this report, make sure that I correctly calculate the

15:21:16 15  advisory sentencing guidelines range.  I will speak with

16  your counsel, with the government's counsel about the

17  objections that are in this report to the calculation as it

18  now exists.

19    Once I've satisfied myself about the offense

15:21:29 20  level, I will move on to the criminal history category.  I

21  know that Mr. Thompson has something to say about that as

22  well, believing that it overstates your criminal history

23  position.

24    Once I'm satisfied that I have the accurate range,

15:21:44 25  I will then move on to the second phase of the hearing, and

1    that phase is the phase during which I'll hear from counsel.

2    I'll hear from Ms. Klump first on behalf of the United

3    States.  I will then hear from Mr. Thompson.  Lastly, I will

4    hear from you.  Whatever it is you'd like to say, I will

15:21:59  5    seriously consider.

6              And then the third and final phase is the phase

7    during which I impose sentence.

8              Make sense?

9              THE DEFENDANT:  Yes, Your Honor.

15:22:08  10             THE COURT:  All right then.

11             Counselors and Mr. Malone, because we've all

12    reviewed this report, that being the November 1, 2016

13    report, I won't speak about every paragraph of this

14    multi-paragraph, multipage report on the record, but I will

15:22:24  15   ask you to turn to certain portions of it with me, because

16    these portions are of some importance to me, maybe greater

17    than other parts, and also are referenced later.  So I want

18    to be sure that we're all aware.

19             The first place I'd like to draw your attention is

15:22:40  20   at page 4, page 4 and also page 5, under the offense

21    conduct, paragraphs 7 and 8 seems to be pretty consistent

22    with the renditions given in earlier versions of this

23    report.  And these two paragraphs are referenced in the

24    offense calculation, which we'll turn to in a moment.

15:23:05  25             The next place I'd like to -- well, having drawn

1    your attention to that, and while I think I understand that

2    the objections as they stand now are captured in the

3    addendum, any objection to paragraph 7 or 8, Ms. Klump?

4             MS. KLUMP:  No, Your Honor.

15:23:21    5             THE COURT:  Mr. Thompson?

6             MR. THOMPSON:  To be clear, we don't have an

7    objection to the facts related in 7 and 8, only insofar as

8    they are a reflection of what's contained in Cleveland

9    police reports.

15:23:37   10             THE COURT:  Understood.  And I'm certainly not

11    asking you to adopt the report.

12             So then, stay on page 5 with me.  Under

13    "Adjustment for Acceptance of Responsibility," paragraph 12

14    is a very short paragraph that simply states, "The defendant

15:23:57   15    provided the following statement through defense counsel

16    wherein he admitted involvement in the offense."

17             What's in quotes, Mr. Malone, I want to make sure

18    you still agree with, so I'll read it and afterwards ask if

19    it's still indeed your statement and a statement that you

15:24:11   20    continue to agree with.

21             "On November 4th, 2014, I possessed the firearm

22    described in the indictment after having been convicted of a

23    felony.  I deeply regret my conduct and ask the court for

24    lenience."

15:24:25   25             Mr. Malone, is that your statement, sir?

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1          THE DEFENDANT:  Your Honor, so that I wouldn't be

2     confused, I would like to ask this pertaining to your

3     question on page 5, paragraph 12 as far as it is stating

4     that I admitted involvement in the offense, is this

15:24:47  5     referencing the two paragraphs that you just quoted, page

6     7 -- paragraphs 7 and 8?

7          THE COURT:  Mr. Thompson may want to speak with

8     you, but let me say this:  It's your statement, so I think

9     it's probably most fair for you to tell me what you mean in

15:25:03 10    paragraph 12 on page 5.

11         Would you like to speak with him first,

12    Mr. Thompson?

13         MR. THOMPSON:  Please, Your Honor.

14         THE COURT:  Certainly.

15:25:12 15    (Discussion held off the record between the defendant

16         and Mr. Thompson.)

17         THE DEFENDANT:  Okay.  Yes, Your Honor, as far as

18    the statement that I made in paragraph 12, where I admitted

19    that I possessed the firearm described in the indictment,

15:25:41 20    yes, that statement is true.

21         THE COURT:  Thank you.  And it's a statement that

22    you continue to agree with today?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Thank you.  Now, still on page 5, but

15:25:53 25    now we're under the subtopic heading "Offense Level

1    Computation."  You can see what's first there is

2    Mr. Wlotzko's description of which Guidelines Manual he's

3    used; and he's using the most current one, that being the

4    one issued November 1, 2015.  And he explains there that it

15:26:16  5    was used to determine the offense level.

6                    Any objection to that, Ms. Klump?

7                    MS. KLUMP:  No, Your Honor.

8                    THE COURT:  Mr. Thompson?

9                    MR. THOMPSON:  No, Your Honor.

15:26:22  10                    THE COURT:  So now, because there is only the one

11    offense to be calculated, and that is the felon in

12    possession of a firearm and ammunition offense that's

13    summarized without a numbered paragraph, we can move on to

14    paragraph 14.  And I don't expect disagreement here.  I

15:26:46  15    think this is a paragraph that is corrected based upon the

16    Sixth Circuit's ruling following the Supreme Court's

17    issuance of the Johnson decision.

18                    I think we all recall that the last time we saw a

19    paragraph similar to 14 relative to Mr. Malone, there were

15:27:02  20    two offenses there.  Now there is only one prior offense,

21    which is a trafficking offense in which Mr. Malone was

22    convicted in Common Pleas Court in Cuyahoga County.  The

23    Case Number 06483164 is given.  And using that in

24    combination with Section 2K2.1, subsection (a)(4)(A), a base

15:27:27  25    offense level of 20 is attributed to Mr. Malone.

1        Any objection to that, Ms. Klump?

2        MS. KLUMP:  No, Your Honor.

3        THE COURT:  Any objection to that paragraph,

4   Mr. Thompson?

15:27:36  5        MR. THOMPSON:  Your Honor, may I have a moment to

6   speak with Mr. Malone about this?

7        THE COURT:  Certainly.

8        MR. THOMPSON:  Thank you.

9      (Discussion held off the record between the defendant

15:29:36  10       and Mr. Thompson.)

11        MR. THOMPSON:  Your Honor?

12        THE COURT:  Yes, sir.

13        MR. THOMPSON:  If I could just indicate on the

14   record the source of -- or, rather, the conversation

15:29:50  15   Mr. Malone and I were just having about this paragraph.

16        Mr. Malone wants me to object to the application

17   of this base offense level 20, application of --

18        THE COURT:  Mr. Thompson, do me the favor of

19   directing upwards your microphone.

15:30:13  20        MR. THOMPSON:  Sorry, Your Honor.

21        Your Honor, Mr. Malone wants me to take the

22   position that the trafficking offense in his past does not

23   qualify as a controlled substance offense.  I believe, and

24   I'm not entirely sure I could articulate it correctly, but I

15:30:37  25   believe that his argument would involve whether or not using

1   the modified categorical approach, that drug trafficking

2   would qualify as a controlled substance offense for purposes

3   of the guidelines.

4        I have indicated to him that I believe that

15:30:52 5   argument does not have merit, and that, therefore, I cannot

6   raise it.  He asks simply that I address it with the court

7   in this fashion, and I don't know if the court has any

8   guidance as to what direction we should go from here.

9        THE COURT:  Well, you have raised it, and I

15:31:12 10  appreciate you raising it and also remarking that you

11  believe it doesn't have merit.  I believe it doesn't have

12  merit.  So it's raised.  It's overruled.

13       THE DEFENDANT:  Okay.

14       THE COURT:  And I do apply the base offense level

15:31:24 15  of 20 for the reasons given in paragraph 14.  It's preserved

16  if you should like it reviewed later.

17       Make sense?

18       THE DEFENDANT:  Yes, Your Honor.

19       MR. THOMPSON:  Thank you, Your Honor.

15:31:33 20       THE COURT:  Certainly.

21       Now then, let's move on to page 6, specific

22  offense characteristic, 15, paragraph 15, I should say.

23  This is one section to which Mr. Malone has an objection

24  that is remarked upon in the addendum.  And what is

15:32:01 25  suggested at paragraph 15 is that -- or perhaps maybe it's

1    not that he's objecting to, Mr. Thompson.  You'll tell me in

2    a moment.

3         The firearm was stolen.  When that's the case,

4    Section 2K2.1(b)(4) suggests increasing the base offense

15:32:21  5    level by two levels.  That was done, as is shown in

6    paragraph 15.

7         Do you have an objection to that increase by two

8    levels because the firearm was stolen, Ms. Klump?

9         MS. KLUMP:  No objection, Your Honor.

15:32:36  10    THE COURT:  And we're talking about the Glock that

11    was found on the possession of Mr. Malone when he was

12    arrested, correct, Ms. Klump?

13         MS. KLUMP:  Yes, Your Honor.

14         THE COURT:  Mr. Thompson, your position regarding

15:32:47  15    paragraph 15's increase by two levels?

16         MR. THOMPSON:  No objection, Your Honor.

17         THE COURT:  Then I adopt that increase by two

18    levels.

19         So now we're on specific offense characteristic

15:33:01  20    identified in paragraph 15.  And this is one that's been

21    subject of much discussion.  It's pursuant to Section

22    2K2.1(b)(6)(B), and it is applied if the defendant used or

23    possessed any firearm or ammunition in connection with

24    another felony offense or, possessed or transferred any

15:33:23  25    firearm or ammunition with intent, knowledge or reason to

1   believe that it would be used or possessed in connection

2   with another felony offense.

3          You can see what explanation is written there.

4   And this is when Mr. Wlotzko refers back to paragraphs 7 and

15:33:41   5   8 that we've already spoken about.

6          What's written here is, "As noted in the offense

7   conduct section," and that's primarily paragraphs 7 and 8,

8   "the defendant was arrested while in possession of a firearm

9   after committing numerous felony offenses where a firearm

15:33:55   10   was possessed.  Defendant was indicted on charges of

11   kidnapping with firearm specifications, repeat violent

12   offender specification, abduction with firearm

13   specifications, felonious assault with firearm

14   specifications, and repeat violent offender specifications,

15:34:13   15   having weapons while under a disability, carrying concealed

16   weapons, possessing criminal tools and receiving stolen

17   property in Cuyahoga County Court of Common Pleas," and the

18   case number is given as 14591007.

19          And as we know, that same case is remarked upon

15:34:34   20   later in this report in the criminal history section, and

21   that is not scored.  It is paragraph 48.  And it's remarked

22   there that "Victim failed to appear.  Prosecutor's motion to

23   continue denied.  Case dismissed."

24          So, Mr. Thompson, now might be the best time to

15:34:54   25   let you go first this time to weave in your objection to the

1      application.  You've written articulately in the memorandum,

2      and Ms. Klump has as well.  So I'll let you start and I'll

3      allow her to respond, give you the last word and I'll rule.

4              Is that fair?

15:35:12  5      MR. THOMPSON:  It is, Your Honor.

6              Your Honor, if I may just -- whenever I appear

7      before Your Honor, I say the same thing I feel, which is,

8      you know, I'm going to try not to just repeat what I put in

9      the memorandum, but as a lawyer, unfortunately, I can't help

15:35:28 10      but repeat myself sometimes.  I feel like sometimes I

11      believe I'm getting paid by the word.  But I can't help but

12      go over this argument again, Your Honor.

13              I understand that the standard is low for

14      establishing a special offense characteristic like this,

15:35:44 15      that it's not beyond a reasonable doubt.  But at the same

16      time, it's more than a scintilla, it's more than probable

17      cause.

18              This case was dismissed against him.  There is no

19      evidence in the record about who this witness was,

15:36:00 20      specifically what they saw, the circumstances under which

21      they saw it.  They identify one handgun, four individuals.

22      Who has the handgun?  There's no indication.  Does this

23      witness have any kind of criminal record, any baggage?

24      There's no indication at all.

15:36:16 25              Why did the -- why didn't the people who were

1    necessary to prosecute this case fail to show up?  Well, the

2    government will suggest, I would surmise, that, well,

3    perhaps they were intimidated, or perhaps they were --

4    perhaps there is some nefarious explanation that is still

15:36:38  5    consistent with guilt of this conduct.

6              But I would respectfully suggest that it is far

7    more likely that the reason they did not go forward was

8    because they did not -- they didn't want to go into court

9    and continue telling this false story.

15:36:57 10              Not only do I think there isn't sufficient

11    evidence to show the connection between the firearm he was

12    arrested with and whatever firearm is alleged to have been

13    used by whomever in this prior alleged kidnapping, I am not

14    even sure that there is sufficient proof here that a

15:37:17 15    kidnapping even occurred.

16              This call to someone asking for $200,000 in

17    ransom, why would anybody have a belief that this Mr. Yates

18    has $200,000 in cash to give up as a ransom?  This is --

19    according to the police reports, this stemmed from a

15:37:35 20    purchase of -- attempted purchase of stolen clothes by the

21    alleged victim, Ivory Yates, from the brother of Mr. Malone,

22    and then spiraled into this.  After a call to the police,

23    they managed to locate two individuals.  People calling did

24    accurately describe someone they obviously knew, because

15:37:51 25    they were buying and selling stolen clothes from each other.

1          But there's no proof that anything that happened

2     before that was anything like this alleged kidnapping that's

3     described.  The blood that's found in the car, is it ever

4     tested?  I would assume that -- I mean, the reports indicate

15:38:10  5     that it was sent for testing.  Does it match anybody?

6          Your Honor, quite simply, I understand that the

7     burden of proof is low, but the burden of proof can't be

8     just, "Well, it shows up in a police report."

9          For those reasons, we would ask the court to not

15:38:26  10    apply the four levels.  Thank you.

11          THE COURT:  Thank you, Mr. Thompson.

12          Ms. Klump?

13          MS. KLUMP:  Thank you, Your Honor.  I'd like to

14    just briefly respond to a couple of the legal points that

15:38:36  15    Mr. Thompson made.

16          First, as I cited in my memorandum, as I too would

17    like to incorporate my comments in my memorandum, the fact

18    that the charges were dismissed or even if no charges had

19    been brought at all in connection with the kidnapping, that

15:38:53  20    is not determinative for this court.  And we know that, of

21    course, because this enhancement was applied at the

22    defendant's original sentencing and those charges at that

23    time were still pending.

24          Along those lines, the fact that the victim did

15:39:07  25    not show up in the county and the county prosecutor's motion

1    to continue that trial was denied should not defeat

2    application of this enhancement here.

3         We know from the Ford case, which was cited in

4    Mr. Thompson's memo, that the victim's unavailability does

15:39:26  5    not bar the imposition of this enhancement.  Certainly, his

6    failure to show up for the trial, under circumstances that

7    we don't know the reasons why, should not undermine the

8    evidence that otherwise supports this enhancement.

9         Similarly, with respect to the victim,

15:39:50 10    Mr. Thompson made comments suggesting that perhaps the

11    victim and other witnesses had baggage of their own.  That

12    certainly may be true.  I am not aware of the circumstances

13    surrounding that.  But regardless of the character of a

14    victim, they are still protected from violence that's

15:40:11 15    brought against them.

16         Also, with regards to the standard and going into

17    the facts that are relevant here, I would dispute

18    Mr. Thompson's statement that the standard is low.  He's

19    certainly correct, the standard is not probable cause, but

15:40:28 20    is preponderance of the evidence.  And I think that is a

21    standard that is -- that holds weight and is satisfied here.

22         I know the court has already reviewed my

23    memorandum.  I've also referenced in that memorandum the

24    police report, Docket 63-1, which was already in the record

15:40:52 25    and already available for the court's review.

1                But I think a review of all of those facts, as

2       well as the facts in the PSR, support the enhancement.  Not

3       to belabor that, but just to quickly touch on some of those

4       facts.  Starting with the matching vehicle.  There were

15:41:10   5       witness reports of a vehicle, which was later very similar,

6       if not identical to the vehicle that was seen at the time of

7       Mr. Malone's arrest, along with Mr. Cooper.

8                In addition, the telephone number that was

9       reported, and then the telephone number for which those

15:41:33  10       phone records were reviewed traced physically to the address

11       referenced in the police report at which Mr. Malone and

12       Mr. Cooper were present.

13                That further supports the reliability, at least to

14       this extent, of the victim's and witnesses' statements.

15:41:56  15       Once there, not only did the ransom call phone number pan

16       out and trace to a location where Mr. Malone was present,

17       but, again, there was the car that was matching the

18       description of the vehicle that was involved in the

19       kidnapping.

15:42:09  20                Mr. Malone and Mr. Cooper, of course, both had

21       firearms on them.  That's consistent with the report that

22       each offender pointed a handgun at Yates and Malone.  So to

23       the extent Mr. Thompson argued there was only one firearm

24       involved, it appears that each offender, each of the four

15:42:25  25       kidnappers had a firearm.

Again, that's consistent here with the evidence
found on these men.  Mr. Malone himself had duct tape, a
black mask and hat.  A black hat and mask would be
consistent with the descriptions given by the witnesses, as
well as the duct tape being consistent with the fact that
the victim was bound during the course of the incident.

As far as Mr. Cooper, Mr. Cooper also had a black
hat.  Of course, the firearm.  And he had a handcuff key,
which, again, is consistent with the reports by the
witnesses.

There was some argument made regarding which
firearm was involved.  As I've already pointed out in my
memorandum, and I think is clear in the guideline
commentary, the firearm that Mr. Malone was arrested with
need not be the exact same firearm that he used in the
kidnapping.  I think there is sufficient evidence here to
make that inference.  But regardless, even if the court
didn't find that that identity was demonstrated by the
government, I think there is certainly the necessary clear
connection that the law requires here.

I mean, here we have an ongoing event,
essentially, from the kidnapping at approximately 8 p.m., a
relatively short time elapses from the kidnapping, and then
there's the ransom call, the police and the FBI are
involved, and then the arrest of Mr. Malone and Mr. Cooper

1    the next morning, when the corroborating evidence is still

2    on their persons.  That's not coincidental, but a clear

3    connection between the two incidents.

4            I would just close, Your Honor, with, again,

15:44:04  5    reiterating the evidence in the record that we see, both in

6    the PSR and that is highlighted in my memo.  And would also

7    note that the case law in Ford, as well as Johnson, a

8    different Johnson than the infamous Johnson referenced

9    earlier, but both of those Sixth Circuit cases support that

15:44:27  10   "reliable evidence such as a 911 call or police report

11   supplies the requisite facts."  Then, in that case, the

12   enhancement can be applied.

13           Here I think the police reports in evidence, as

14   well as some of the dispatch records that are included in

15:44:43  15   that report, and I think all that together supplies ample

16   evidence for this court to apply the four levels.

17           Thank you.

18           THE COURT:  Thank you.  Mr. Thompson, would you

19   like the last word?

15:44:54  20           MR. THOMPSON:  Yes, Your Honor.

21           I believe the only thing I'd directly respond to

22   is the concept that a police report is inherently reliable

23   evidence.  I think there's a different question that's

24   being -- or a different factual scenario that's being

15:45:11  25   presented here, and I don't think there is a police officer

1    that would disagree with the statement that although -- just

2    because a witness statement is contained in a police report

3    doesn't make it reliable.  No one believes that.  Otherwise,

4    there would be no need for courts.  There would be no need

15:45:32  5    for cross-examination or jurors.  They would simply present

6    police reports to judges and it would be a fait accompli.

7         I would ask the court again to not apply the four

8    levels.  Thank you.

9         THE COURT:  Thank you both.  And just so that the

15:45:48  10   record is clear, when we speak about this objection,

11   Mr. Thompson, I think it also incorporates your -- it

12   certainly incorporates the objection on page 23 that's

13   identified as number 1, correct?

14        MR. THOMPSON:  Yes, Your Honor.

15:46:05  15        THE COURT:  And then, of course, number 2, because

16   that would reflect the number, whether 22 or 26, agreed?

17        MR. THOMPSON:  Yes.

18        THE COURT:  Fair enough.

19        I've listened to what's been said here today and

15:46:19  20   also, in advance of entering the courtroom, reviewed what's

21   been written.  And as Mr. Malone knows, I've had the

22   opportunity to review this record not only once before on

23   the occasion of my sentencing of you, sir, but also of

24   Mr. Cooper, who was with you at the time of your arrest.

15:46:38  25        And I found helpful what was written in both

1   memoranda, that meaning the one filed by the government and

2   also that filed on behalf of Mr. Malone by Mr. Thompson,

3   drawing my attention to the standard.

4   And while I agree with both of you in the sense it

15:46:58  5   is not the highest standard, but the preponderance of the

6   evidence is a substantial enough standard, meaning it more

7   likely than not is the test that I must employ.  And when I

8   employ that test, the question I must answer is whether or

9   not there is a preponderance of the evidence presented by

15:47:20  10  the government that you, Mr. Malone, committed another

11  felony offense and/or -- and used or possessed a firearm in

12  connection with that offense.

13  And the guidelines offers a fair amount of help.

14  It starts by reminding me that this enhancement is only to

15:47:37  15  be applied if the firearm or ammunition facilitated or had

16  the potential of facilitating another felony offense or

17  another offense respectively, it's written.

18  And it also makes clear that in determining

19  whether or not this application is appropriate, I must

15:47:56  20  consider the relationship between the instant offense and

21  the other offense.  And we know the other offense is that

22  that's either referred to as a kidnapping or felonious

23  assault, but that conduct which occurred in violation of law

24  on the 3rd and/or 4th of November, 2014, wherein Mr. Yates

15:48:19  25  was pistol-whipped and taken, presumably against his will.

1           So when I consider whether or not the connection

2     between the firearm and the other felony was merely

3     coincidental, I find that it's not for many of the reasons

4     not only written by Ms. Klump, but also articulated by her

15:48:43    5     here today.

6           And if you follow just the timeline, that being

7     the time of the alleged abduction -- and I say that because

8     while it's certainly not the case that there would be a

9     conviction in state court of the matter that's now

15:48:57   10     dismissed, because there was a dismissal, I won't presume

11     that there is more finality to that charge than there

12     otherwise is.

13           But the timeline ties together your possession of

14     the firearm in connection with another felony offense.  I

15:49:14   15     find the phone call to be extremely damning evidence if this

16     matter were to have gone to trial for you.

17           It matters to me significantly when I consider the

18     connection between your possession of the firearm and the

19     other felony offense, that the call was made from a phone

15:49:34   20     that was tied to you, that call and phone service technology

21     was used to find you at the place where you were arrested

22     shortly after leaving.  And that's more than just mere

23     coincidence.

24           I also -- and this is without reciting all of the

15:49:54   25     facts, although I am very tempted, as you were, Ms. Klump,

1    to do just that.

2         That you were carrying a black hat and a mask

3    consistent with the witnesses' descriptions of what the

4    kidnappers had.

5         And I understand your point, Mr. Thompson, about

6    confrontation and cross-examination, but this is the

7    preponderance of the evidence.  And I don't need the test

8    that results when there is confrontation to have what

9    witnesses at least were able to report to the police, that

10   is memorialized in a report that's nothing more than a

11   report.  But when there is so much of that report that is at

12   least supported by information such as that found on

13   Mr. Malone, not to mention the least of which was a loaded

14   weapon.

15        I mean, you didn't just have a weapon in your car,

16   you had a weapon on your person, a weapon that was ready to

17   shoot, a bullet in the chamber, as well as a fully loaded

18   clip.  So that tells me that you probably had some intention

19   of at least being able to readily fire that firearm should

20   it become necessary.

21        So what I will state for the record is what's

22   written at government's memorandum, that styled at -- or

23   docketed as ECF Number 106, starting on page ID number 698,

24   under subsection 2, "Other Felony Offense Enhancement," and

25   continuing on to page ID 700, I adopt.  I think it makes

1   sense. It certainly supports beyond, by a preponderance of

2   the evidence that the application suggested by the

3   presentence report of the four-level enhancement is

4   appropriate.

15:51:47  5   And I find that by a preponderance of the

6   evidence, you did possess the firearm during the commission

7   of another felony offense, and in particular, that charged,

8   albeit now dismissed, that occurred between the 3rd and the

9   4th of November, 2014.

15:52:07  10   That you used or possessed a firearm in connection

11   with that offense.

12   That the connection was not merely coincidental.

13   And I agree with you, Ms. Klump, that the

14   recovered firearm need not be the same firearm used in the

15:52:21  15   prior incident, although I do infer that it was, especially

16   since so much of what was also used in the prior incident

17   remained with or on Mr. Malone. Meaning he still had the

18   mask. He still had the duct tape. So why shouldn't he

19   still have the same weapon that was one of the four

15:52:40  20   brandished on that evening?

21   I also find that the -- by a preponderance of the

22   evidence, that the felon in possession charge, which is

23   brought here in federal court, and the felonious assault

24   and/or kidnapping offenses that have been dismissed were

15:53:01  25   part of the same course of conduct, scheme or plan.

1          And for all of those reasons, I overrule your

2    objection, Mr. Malone, and I do apply, as I did before, the

3    four-level enhancement suggested in the presentence report.

4          Your objection is noted but overruled.

5          So now we're to paragraph 20, which suggests an

6    adjusted offense level of 26.  I don't believe the report is

7    in error when it leaves at zero victim-related adjustments

8    or adjustment for role in the offense or adjustment for

9    obstruction.  I don't think you argue against those.  Do

10   you, Ms. Klump?

11          MS. KLUMP:  No, Your Honor.

12          THE COURT:  Certainly I don't expect you to,

13   Mr. Thompson.  But just tell me, while it's not what you

14   wanted, the math is correct at 26 at paragraph 20, isn't it,

15   sir?

16          MR. THOMPSON:  It is, Your Honor.

17          THE COURT:  So now we're down to acceptance of

18   responsibility.  Not much has changed except the Sixth

19   Circuit has ruled in concert with the United States Supreme

20   Court, so I find that Mr. Malone is, while I'm not thrilled

21   about his ultra vires actions when he had counsel, I don't

22   think they amounted to activity sufficient enough for me to

23   believe that he has no longer accepted responsibility, and

24   I'm still inclined to award the two levels, and I wonder if

25   the government is still inclined to ask for the third level.

1        MS. KLUMP:  Yes.  We make that ask now.

2        THE COURT:  I grant that motion, finding that

3   three levels downwards for acceptance is appropriate.

4        And ask again, do you agree with the math at

15:54:38  5   paragraph 24, Mr. Thompson --

6        MR. THOMPSON:  Yes, Your Honor.

7        THE COURT:  -- twenty-three?

8        Then, Ms. Klump, how about you, 23 is correct?

9        MS. KLUMP:  Yes, Your Honor.

15:54:49  10        THE COURT:  I'd like to make sure, before we go on

11   to criminal history, that I've treated appropriately the

12   objections.  And the next objection is one regarding

13   criminal history, so we're now at objection number 4.

14        So if you'll join me, I'd like you to go to page

15:55:07  15   14, where the criminal history is summarized.  And as we

16   consider page 14, paragraph 38, Mr. Thompson, would you like

17   to be heard about your objections lodged on behalf of

18   Mr. Malone regarding the two cases that result in six

19   criminal history points instead of three?

15:55:30  20        MR. THOMPSON:  Yes.  Thank you, Your Honor.  I

21   just want to make sure I have the correct paragraphs.

22        THE COURT:  Thirty-four and thirty-five.  They're

23   on page 12.

24        MR. THOMPSON:  I believe I identified them

15:55:54  25   incorrectly in my objections.  I think I identified 33 and

1    34.  Thank you for correcting that, Your Honor.

2         THE COURT:  I think Mr. Wlotzko updated it by

3    inserting 34 and 35.  Do you --

4         MR. THOMPSON:  Right.  I see that now.  Thank you.

15:56:14  5    THE COURT:  And that happens.  When the report is

6    revised, the paragraphs almost always increase by one.

7         MR. THOMPSON:  Your Honor, I don't know that I can

8    add anything to the objection as written.  Having said that,

9    I will, once again, repeat it probably unnecessarily.

15:56:30  10        And quite simply, the fact that these two

11   paragraphs are two separate charges, one in federal court,

12   one in state court, is solely by a quirk of the charging

13   decisions of the two respective sovereigns.  Either of the

14   two sovereigns could have handled all of these charges

15:56:50  15   together.  There is no -- it's just simply a quirk of fate,

16   and the difference between three and six points shouldn't be

17   subject to that.  We would ask the court to consider those

18   as one offense for three points.  Thank you.

19        THE COURT:  Thank you.

15:57:07  20   Ms. Klump?

21        MS. KLUMP:  Thank you, Your Honor.  I would agree

22   with the probation officer's response, and I would just also

23   note that to the extent it's a quirk of fate, although I

24   would disagree with that characterization, certainly the

15:57:23  25   sentences that Mr. Malone did receive in the county, for

1    example, for trafficking, may very well have been different

2    had it been a federal indictment with regards to that

3    charge.  Certainly we're not going into speculation as to

4    what that would have been, but likely it would have been

15:57:44  5    higher in federal court.  So to the extent he's benefited by

6    being charged in state court with that offense, I think he

7    certainly should take the arguable, I guess, downside of

8    them counting separately.

9    Also, in addition, I think just on sort of an

15:58:00  10   equitable level, Your Honor, this certainly shouldn't be

11   counted as a single sentence.  Never mind the technical

12   argument that I think very clearly shows that they are

13   counted separately.  But also, if you just look at the

14   trafficking offense that occurred on May 23rd, that only

15:58:20  15   relates to one of the dates for Mr. Malone's federal felon

16   in possession charges.  He also had another offense, which

17   occurred some five or so months earlier.

18   And for all of those reasons, we would ask that

19   the court overrule the objection.

15:58:38  20   THE COURT:  Help me.  You said May 23rd, but you

21   didn't give me the year.

22   MS. KLUMP:  I'm sorry.  May 23rd, 2006 was the --

23   appears to be the date of the trafficking offense in

24   paragraph 34.  And then the federal felon in possession

15:58:54  25   dates were also May 23rd, 2006, and then January 12th, 2006.

1    So approximately five months previously.

2         THE COURT:  Thank you.

3         MS. KLUMP:  Thank you.

4         THE COURT:  Mr. Thompson, and I want to ask you

15:59:07  5    this just so that I don't overlook something that you may

6    have wanted me to pay greater attention to.

7         In the response by Mr. Wlotzko, you see that if

8    you focus primarily on the second paragraph of that

9    response, he gives what I think is a technical reason why

15:59:27 10    it's not an error for those two offenses, that being the

11    offense conduct at paragraph 34 and 35, to be treated

12    separately.

13         I didn't hear you argue against those, but rather,

14    use the quirk of fate explanation and the similarities.

15:59:48 15    Because you can see that Mr. Wlotzko is agreeing, yes, those

16    two offenses, the trafficking and the felon in possession,

17    do stem from a single arrest, but were not in the same

18    charging instrument, could not have been.  One is federal,

19    one is state.  Right?  And the sentences were not imposed on

16:00:04 20    the same day.

21         You don't disagree with that?

22         MR. THOMPSON:  I don't disagree with any of those

23    points, Your Honor.  However, I would -- if I could expand,

24    quirk of fate was probably --

16:00:15 25         THE COURT:  And I'm not picking on you for that.

1    What I'm focused on is this:  I think your objection is

2    without merit and I plan to overrule it.  But if you want to

3    persist with the departure or variance argument because of

4    the quirk of fate, I think that's the better place for you

16:00:31  5    to make that.  I'm not going to pretend that I think it will

6    have better traction then, but I just want you to tell me if

7    you believe there's a technical error in the way paragraphs

8    34 and 35 are scored.

9         I can tell you, I do not believe there is.  I

16:00:50  10   think, for the reasons explained by Mr. Wlotzko, that they

11   are appropriately scored.

12        I understand your quirk of fate argument to mean

13   that had he been charged in one place instead of two, he'd

14   have only three points instead of six.

16:01:07  15        That's why I'm suggesting maybe you suffer the

16   fate of the overruling of that objection now, but you use

17   your talents to ask for what consideration you think may be

18   given when you ask for a departure or variance.  A variance

19   would probably be your take.  But up to you.

16:01:26  20        Make sense?

21        MR. THOMPSON:  Yes, Your Honor.

22        THE COURT:  I adopt the response by the probation

23   officer and overrule Mr. Malone's objection, finding that

24   paragraphs 34 and 35 are appropriately scored, for the

16:01:41  25   reasons identified on page 24.

1          Now, this is the place to -- I am on page 25,

2     Mr. Thompson.  This enhancement, or the additional two

3     points for post-conviction, and that's -- if we go back to

4     page 14, starting at paragraph 36, you can see that when you

16:02:26  5     add the scored convictions, the score is 11.

6          Any objection to that, Ms. Klump?

7          MS. KLUMP:  No, Your Honor.

8          THE COURT:  Mr. Thompson?

9          MR. THOMPSON:  No, Your Honor.

16:02:36 10     THE COURT:  I think it's the next paragraph where

11     you do have an objection, paragraph 37.  And this ties into

12     the objection that I was just speaking about on page 25.

13          Because Mr. Thompson [sic] was on -- or under the

14     supervision of Adult Parole Authority, two points were

16:02:57 15     added.  Would you like to be heard about why you believe

16     those two points should not be added?

17          MR. THOMPSON:  Your Honor --

18          THE COURT:  At least that's what I believe you're

19     saying on page 25.

16:03:05 20     MR. THOMPSON:  Yes, Your Honor.  That's actually

21     the objection submitted directly by Mr. Malone.

22          And to be clear, Mr. Malone, and not myself, was

23     under supervision by parole.

24          But his argument -- and I definitely sympathize

16:03:18 25     with his argument.  His argument is, in essence, that after

1     the fact, the court determined that his post-release control

2     should never have been imposed.  It was void.

3          THE COURT:  Did it really?  Or did it just

4     terminate?  Isn't that the problem?  Because it didn't void

16:03:37  5     it, it just said, "Okay, we'll stop it now."  It's not a

6     nunc pro tunc, is it?

7          MR. THOMPSON:  I think that they rendered it void.

8     I actually think -- I believe legally, the way it works in

9     Ohio, had he been charged with an escape for -- in Ohio, you

16:03:52  10     can be charged with an escape for failing to report to your

11     parole officer.  If you're under post-release control, it's

12     technically charged as an escape.  That escape charge, you

13     can defend that successfully by saying, "Well, no, he was

14     never properly on post-release control."

16:04:09  15          So, I mean, I definitely get where he's coming

16     from.  And if the court could rule on it as Your Honor did

17     his prior objection, that would, I believe, preserve it for

18     the record.

19          THE COURT:  Thank you.

16:04:19  20          Let me hear from Ms. Klump.

21          MS. KLUMP:  Thank you, Your Honor.  I wasn't aware

22     there was a dispute as to the factual statements made by the

23     probation officer, from which it appears to me that the

24     defendant's motion to render his period of supervision void

16:04:40  25     was denied, but rather, as the court said, it was simply

1    terminated.  On that basis, I believe the two levels -- or

2    the two additional criminal history points should apply.

3         In addition, speaking on more of the equity

4    grounds, if the court should wish to continue on to that

16:04:59 5    point, I believe regardless of what happened retroactively,

6    and it doesn't appear that Mr. Malone's supervision was

7    voided, but even if it had been for some reason, at the time

8    of the offense, he was certainly under supervision.  That

9    was intact and everything at that point.  He thought he was

16:05:18 10   under valid supervision.

11        For all of those reasons, sort of the heart or the

12   spirit, for lack of a better word, of those two levels

13   certainly apply.  And for the reasons already stated and for

14   the probation officer's factual statements, I would ask the

16:05:37 15   court to apply those two points.

16        THE COURT:  Thank you both for what you've said.

17        I have one question for you, Mr. Wlotzko.  On page

18   25, under your response, the second full paragraph --

19        PROBATION OFFICER:  Uh-huh.

16:05:50 20        THE COURT:  -- where it says, "On April 19, 2016,

21   the defendant filed a motion to modify the judgment of the

22   Cuyahoga County Court of Common Pleas from April 1," then

23   you have quotations around language that says, "'to reflect

24   the previous judgment under which post-release control was

16:06:09 25   imposed is now void.'"

1          Whose quoted language is that, is that

2     Mr. Malone's language?

3          PROBATION OFFICER:  Yes, Your Honor.

4          THE COURT:  All right then.

16:06:18  5          I overrule the objection, Mr. Malone, and find

6     that you were indeed under a term of state supervision at

7     the time the offense was committed, making the two-level

8     increase appropriate, and do preserve your objection for

9     later appellate review.

16:06:37  10          I think, Mr. Thompson, then, that we've included

11     all of the objections that are noted, haven't we, sir?

12          MR. THOMPSON:  Yes, Your Honor.

13          THE COURT:  Then let's make sure that we

14     understand what the range is.  Again, using the calculation

16:06:54  15     of criminal history that is shown on page 14, now we're at

16     paragraph 38, total criminal history score is 13.  The 13

17     corresponds with a criminal history category of VI.  VI

18     intersects with an offense level of 23, suggesting, and it's

19     by no means anything other than a suggestion, but it's one

16:07:20  20     where I will start for sure, 92 months at the low end, 115

21     months at the high end.

22          Any objection to that, Ms. Klump?

23          MS. KLUMP:  No, Your Honor.

24          THE COURT:  And again, Mr. Thompson, I'm not

16:07:33  25     asking that you waive any objections, but just correct me if

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1    I'm wrong when I think our offense level is calculated, at

2    least that by me, as 23, criminal history is VI, the

3    intersection of the two is at 92 to 115 months, sir.

4              MR. THOMPSON:  That's correct, Your Honor.

16:07:50  5              THE COURT:  All right.  We've completed the first

6    phase of the sentencing hearing.  Now I am prepared to move

7    on to the phase of allocution.  I will hear from Ms. Klump

8    first, next Mr. Thompson, and lastly Mr. Malone.

9              Ms. Klump, when you're ready.

16:08:08  10              MS. KLUMP:  Thank you, Your Honor.

11              The government would request that the court impose

12    the same sentence as it previously did, that is, 120 months.

13    The government recognizes that that would represent a

14    five-month upward variance from the guidelines range, but

16:08:25  15    believes that the sentencing factors, in fact, all of the

16    sentencing factors that the court is to consider weigh in

17    favor of a very significant sentence.

18              Just to start with, the nature and circumstances

19    of the offense, Your Honor.  I won't belabor details that

16:08:40  20    I've already discussed in my memo, as well as during the

21    previous enhancement argument.  But again, I would like to

22    just briefly reiterate that Mr. Malone's felon in possession

23    offense demonstrated aggravating factors, if we just isolate

24    our consideration of the facts to his arrest.

16:09:08  25              He had a firearm.  That firearm was stolen.  As

1    the court is aware, that already exacerbates the nature of

2    the offense in terms of where that weapon came from and the

3    other crime that must have been committed at some point in

4    order for it to have been reported stolen.

16:09:24    5        We also know that Mr. Malone's firearm was loaded,

6    as the court already noted, with, I believe it was 15

7    rounds, including one round in the chamber.  The firearm was

8    on Mr. Malone's person and very accessible and ready to go,

9    for lack of a better term.

16:09:42    10        Although knowledge of -- Malone's knowledge of the

11    fact that he was a prohibited person is certainly not an

12    element of the offense, I do think it's relevant for the

13    court's consideration when it looks at what sentence to give

14    Mr. Malone.  As I'll touch upon in just a little bit,

16:10:04    15    Mr. Malone already had a federal felon in possession count.

16    He knew not just that he wasn't allowed to have a firearm

17    based on his state convictions, he knew already that he

18    wasn't allowed to have a firearm, whether it be under state

19    law or federal law, from firsthand experience.

16:10:19    20        And in addition, of course, if you expand your

21    consideration of the conduct from outside his just mere

22    arrest to the relevant conduct that we've already discussed,

23    then you see additional exacerbating factors, the violence

24    involved in this kidnapping, the binding of the victim,

16:10:38    25    putting the victim in the trunk, I believe, of the car,

1    demanding ransom, pistol-whipping, all of these facts weigh

2    further in favor of a very lengthy sentence.

3           As to the history and characteristics of

4    Mr. Malone, I believe those also weigh in favor of the

16:10:55  5    maximum sentence here.  Unlike other defendants who come

6    before the court, we know exactly what the defendant does

7    when he's armed with a firearm.  As I noted in my sentencing

8    memorandum, Mr. Malone has numerous offenses, some of them

9    violent, and I'll use "violent" with a lowercase "V,"

16:11:19  10    post-Johnson.  But regardless, many of his previous offenses

11    involve firearms, whether or not it was a, quote, "firearms

12    offense" that he was charged with and convicted of.

13           As you'll see in the PSR, numerous offenses

14    involved the firearm being discharged, and it was the

16:11:35  15    defendant who discharged the firearm.  In one case, a

16    61-year-old individual was harmed, was shot and injured as a

17    result of Mr. Malone discharging his firearm.  And that

18    isn't -- the evidence, as you can see in the PSR, isn't

19    relying on just victim statements or witness statements or

16:11:59  20    anything, but it's relying on forensic evidence and gunshot

21    residue that was analyzed as a part of that crime.

22           That offense wasn't the only instance in which

23    Mr. Malone discharged a firearm.  And then again, in this

24    current offense that we're looking at, again, he used the

16:12:18  25    firearm.  We don't have evidence that he discharged it, but

1   he certainly used it to manipulate other people to do what

2   he wanted them to do in a violent incident that was

3   motivated apparently by greed.

4           In addition to that, to all of those different

16:12:39  5   prior convictions, he also has the drug trafficking

6   conviction that was referenced.  There are also other

7   references to the defendant being in possession of drugs,

8   regardless of whether or not he picked up a charge in

9   connection with those possessions.

16:12:57  10   There's also numerous probation violations.  And,

11   obviously, none of those prior sanctions carried any -- or

12   I'll back that up, carried a sufficient deterrent effect for

13   Mr. Malone.

14           His previous federal offense resulted in a

16:13:20  15   65-month sentence, and that, as I said, certainly did not

16   deter him from reengaging in violent behavior.  This isn't

17   an individual who had the gun in his upstairs dresser or

18   tucked underneath the seat of his car, but it was one that

19   was in his hand, being actively used to the detriment of his

16:13:37  20   community.

21           In light of all those factors, Your Honor, and all

22   of the things that I mentioned in my sentencing memorandum,

23   the government would request a sentence of 120 months.  We

24   would oppose a downward departure, to the extent the

16:13:51  25   defendant made one pro se.  The criteria set out in

1    Guideline 4A1.3(b)(1) are certainly not met here.  Both the

2    seriousness of Mr. Malone's criminal history and his

3    likelihood of committing new crimes, both of those factors

4    are high and certainly would weigh against a downward

16:14:17    5    departure and, in fact, weigh in favor of an upward

6    variance.

7         So to reflect adequately the severity of the

8    offense, to deter Mr. Malone from continuing to engage in

9    violent criminal behavior, to promote respect for the law,

16:14:31    10    achieve just punishment, and most importantly, to protect

11    the public, the government would request a sentence of 120

12    months.

13         Thank you.

14         THE COURT:  Thank you, Ms. Klump.

16:14:43    15         Mr. Thompson, I am prepared to hear your

16    allocution now.

17         MR. THOMPSON:  Your Honor, if I could start

18    with -- I'm sorry.  I apologize, Your Honor.  I was speaking

19    with Mr. Malone there for a second.

16:14:55    20         THE COURT:  Sure.

21         MR. THOMPSON:  Should we approach the podium?

22         THE COURT:  If you'd like to, please do.

23         MR. THOMPSON:  Would you like to come up?

24         Your Honor, if I could start with the downward

16:15:23    25    departure argument for overrepresentation of criminal

1    history.  This is focused on that quirk of fate I referenced

2    earlier.  This is currently paragraphs 34 and 35.  I want to

3    be sure that the record is clear as to what exactly happened

4    here.  Okay.

16:15:43    5    Mr. Malone is arrested.  He is charged with

6    possession of the firearm in federal court.  He's also

7    charged with drug trafficking, some small amount of

8    marijuana, which would not have carried a significant

9    federal penalty, and a firearm specification in state court.

16:16:01    10    He's charged with that same gun in both state and federal

11    court.

12    In the federal case, coincidentally, or not

13    coincidentally, incidentally, he receives, in his

14    calculation, a plus four-level increase for use of a firearm

16:16:18    15    in facilitating another felony offense.  He also, in that

16    federal case, has a second federal 922(g) charge.

17    In scoring that as two separate convictions and

18    scoring it as six total points rather than three, that

19    overrepresents -- in the plainest of language, in common

16:16:39    20    sense use of the phrase "overrepresents," it pretends, it

21    creates the legal fiction that there were two separate acts

22    by him, as opposed to the reality of one.

23    For that reason, we would -- and in addition to

24    the arguments set forth in the memorandum, we would ask the

16:16:54    25    court to downward vary by -- downward vary and/or depart by

1    one level, down to a range of 84 to 105 months.

2         I am not going to belabor the arguments made in

3    our sentencing memorandum.  I would ask for the court to

4    consider RDAP.  His drug history is significant.  And it's

16:17:20  5    clear that he's taking full advantage of the programs that

6    are available to him in prison.

7         I would emphasize one of the points he raised in

8    one of his pro se filings, which is he would like this court

9    to note that he has not had any incidents while he has been

16:17:37 10    in federal prison.

11         THE COURT:  There is a discontinuation from one of

12    the programs without explanation.  What can you tell me

13    about that?

14         MR. THOMPSON:  I would ask Mr. Malone to address

16:17:49 15    it, Your Honor.

16         THE COURT:  It's referenced on page 4, paragraph

17    5.

18         THE DEFENDANT:  I don't know which program it is.

19         THE COURT:  It's the Personal Success class -- no,

16:17:59 20    it isn't.  It is the Non-Residential Drug Treatment Program.

21    On May 17, 2016, you were discontinued.  The caseworker was

22    unable to tell us why.  What can you tell me?

23         THE DEFENDANT:  The reason, Your Honor, that it

24    was discontinued was because I signed up for both programs

16:18:15 25    at the same time and I was accepted into the Challenge

1    Program first, so the non-residential drug treatment

2    specialist told me that I cannot take both programs at the

3    same time.  So I chose to stay enrolled at the time in the

4    Challenge Program.

16:18:31  5         THE COURT:  Is it your understanding that at some

6    later time, you'll be eligible for the Non-Residential Drug

7    Treatment Program?

8              THE DEFENDANT:  Yes, after I complete the

9    Challenge Program.

16:18:41 10         THE COURT:  Thank you.

11              Mr. Thompson, have I heard you fully, sir?

12              MR. THOMPSON:  Yes, Your Honor.

13              THE COURT:  Then, Mr. Malone, I am certainly

14    interested in hearing what it is you'd like to say.

16:18:54 15         THE DEFENDANT:  First off, Your Honor, I would

16    like to apologize to the court.  You know, there is no

17    excuse for my actions.  It was blatant disrespect.

18              Since being incarcerated, I have had the

19    opportunity to sit down and specifically focus on, you know,

16:19:10 20    the reasons why I continue to do what I do.  And being that

21    I had the time to speak, you know, with my treatment

22    specialist, you know, I determined that, you know, my

23    attitude, my behavior and, you know, the reasons for doing

24    what I was doing, it was wrong.  So I would like to ask the

16:19:29 25    court for leniency.  You know, me dealing with issues with,

1    you know, my upbringing, my family, you know, the shame that

2    I've caused them, that is more than enough for me to, you

3    know, have learned my lesson.  And despite what sentence you

4    choose to impose today, you know, I ask the court for

16:19:48   5    leniency.

6         THE COURT:  You know, I was hoping to hear

7    something maybe a little different from you or maybe a

8    little more, or maybe hoping against hope that there might

9    be some explanation.

16:20:01   10         You've spent most of your adult life in prison,

11    and most of the time you're out of prison, you're working on

12    getting back into prison.  Are you finished?  Is there

13    anything else you'd like to say to help me to understand why

14    it is you're more trustworthy outside of prison than in

16:20:18   15    prison?  It seems that when you're outside of prison, you

16    carry weapons, you sling drugs, you hurt people.  Yeah, you

17    disappoint your family, but more than anything else, you

18    break the laws our society must rely on to keep us all safe.

19         And I don't know, based on this record, of course

16:20:37   20    now, while you're in prison, it seems that you're doing

21    well, but, of course, you're in prison.  I am not sure -- if

22    there's anything else you can say, now is the time to say

23    it, because I don't mind telling you, I'm almost entirely,

24    almost entirely unimpressed by what you've said so far.

16:20:55   25         Make sense?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Anything else?

3          THE DEFENDANT:  Well, since being in prison, you

4    know, on a day-to-day basis, it's not an easy environment to

16:21:04    5    survive in.

6          THE COURT:  But why is it different?  Like I said,

7    you've spent most of your adult life in prison.  And this

8    isn't even your first stint in a federal prison.  So why is

9    this time any different?

16:21:15   10          THE DEFENDANT:  Well, Your Honor, a couple -- on a

11   couple different occasions, you know, while I was out in

12   society, there were positive things that I was doing.  But

13   due to my drug use, I relapsed and continued to think in a

14   criminal way.

16:21:32   15          So, like I said, as far as me being out, there

16   were positive -- there were times where, you know, I did

17   strove to do the right thing, but I fell short.

18          THE COURT:  All right.  Anything else, sir, that

19   you'd like me to hear before I sentence you?

16:21:48   20          THE DEFENDANT:  That will be all, Your Honor.

21   Thank you.

22          THE COURT:  Certainly.

23          Mr. Thompson, I respect your work and I do

24   appreciate you taking all the time you've taken in working

16:22:02   25   with Mr. Malone and orally and in writing articulating

1    arguments that I think are the best that could have been

2    made on his behalf.

3         I have considered all that you've asked me,

4    including that which was made known prior to me coming into

16:22:21  5    court here today.  And as I said earlier, I find the

6    technical application of the two-level adjustment upwards

7    for criminal history to be correct.  And while I do

8    appreciate your explanation about paragraphs 34 and 35, I

9    don't find the separation of those charges to be anything

16:22:45 10    that overstates Mr. Malone's criminal history.  In fact, if

11    anything, I think 13 is probably still too low.

12         When I look at the detail, the actual criminal

13    conduct that you've committed, that which you've been

14    convicted of, that which has been either charged and/or

16:23:02 15    dismissed but otherwise is unscored, you are one of the

16    violent, small letter "V," actors, most that I've had in

17    this courtroom.

18         You see, federal court is usually -- certainly a

19    fair number of drug traffickers and felons in possession,

16:23:22 20    but not people who are so ready to use a weapon as you've

21    shown that you are, as you've shown particularly in this

22    case, which is a large part of the reason for the four-level

23    adjustment upwards that we spent so much time on here today.

24         So when I think about the 3553(a) factors, and all

16:23:40 25    of them, while I won't detail all of them, but starting with

1    the nature and circumstances of the offense, which is just

2    horrendous, absolutely horrendous that any person would do

3    to another person what you and Mr. Cooper did to Mr. Yates,

4    and then expect to profit from it.

16:23:56   5    But then when I also look at your history and

6    characteristics, including your prior record, including any

7    violence, your age, the fact that you have had opportunities

8    outside of prison, and really had an upbringing not much

9    different from that of many people.

16:24:13   10    And then move on to need for the sentence imposed.

11    Just punishment, you know that that's part of what I'll do.

12    But more than anything, you're such a young man.  Even with

13    a stiff sentence, which I will impose, I'd like to deter

14    you, for two reasons.  One is to keep society safe.  The

16:24:31   15    other is to give you some chance at some point to live a

16    part of your life outside of prison.

17    I also intend to protect the public, reflect the

18    seriousness of the offense and, to the extent it is still

19    possible, to allow you to improve your conduct and

16:24:49   20    condition.

21    I'm not so sure that what you've said is the case.

22    I believe that you probably don't want to be in prison.  Who

23    does?  You've been there often enough to probably have a

24    greater dislike for it than many who are incarcerated, but

16:25:02   25    not so great that you refuse to go back.

1          Your efforts, despite the adequate, or beyond

2     that, the more-than-competent representation by Mr. Thompson

3     to take the reins and to write to the court, to urge this or

4     that, to compel movement by the court, tells me that you

16:25:22  5     haven't achieved the humility that I hope you may someday

6     achieve.

7          I tell you this:  When I consider whether or not

8     the guidelines range suggested, that being 92 months at the

9     low end and 115 at the high end, is sufficient given your

16:25:41  10    history, I have to agree with you, Ms. Klump, it's not.

11    While five months makes a small difference, I think the only

12    answer I can give to you, to the public, to our system of

13    governance, our system of justice, is to vary upwards by

14    those five months as requested by the government.  And I

16:26:01  15    hereby do that and reimpose the term of incarceration

16    imposed before, not because I did it before, but because it

17    is indeed the right sentence in this case for you.

18          You must learn that everyone has a right to be

19    free of violence and intimidation.  You are a felon not

16:26:21  20    allowed to possess a weapon, loaded or otherwise.  And you

21    know that.

22          One of the reasons, the staunchest, strongest

23    reasons for this five-month variance -- and I will tell you

24    this, I'd go more if I could, but you know the statute stops

16:26:35  25    me at 120 -- this is your second federal felon in possession

1    charge.  You were given 65 months.  That's more than a

2    significant sentence.  And yet you came back.

3          So for those reasons, I find the guidelines

4    inadequate.  120 months is adequate.  And that is the term

16:26:59  5    of incarceration that I impose.

6          In addition to that, I impose a three-year term of

7    supervision.  Within 72 hours after being released from the

8    Bureau of Prisons, Mr. Malone, you shall meet with your

9    probation officer, who will reacquaint you with all of the

16:27:14  10   conditions of supervision, whether they are mandatory,

11   special or standard conditions.

12         Please don't miss that first initial meeting,

13   because if you do, that will probably be your first

14   opportunity to violate your three-year term of supervision.

16:27:31  15   I will say now, and I will remark in writing, that

16   I will ask the Bureau of Prisons to give you credit for the

17   time you've already served.  The presentence report remarks

18   upon what that time might be, but I'm sure it still needs

19   further adjustment.

16:27:45  20   I waive the imposition of a fine, but do impose a

21   $100 special assessment.

22         And restitution is not an issue, so I will not

23   impose that.

24         I remind you, Mr. Malone, that you shall not,

16:27:59  25   especially not while on this three-year term of supervision,

1   commit another crime, federal, state or local crime, not

2   possess a drug, whether it's legal or illegal, especially if

3   that legal drug is one prescribed for another person.

4        Within 15 days after you're released from prison,

16:28:15   5   you'll have at least the first of three periodic random drug

6   tests.  You'll have more than three, so please be prepared.

7   Never do anything to avoid the test, dilute your urine or

8   anything else that will cause you to fail the test,

9   especially ingesting illegal or other controlled substances.

16:28:34   10        Sir, for the rest of your life, you shall not

11   possess a firearm, destructive device or dangerous weapon.

12        You understand that, don't you?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  I am ordering that you participate in

16:28:46   15   an approved program of substance abuse testing and/or

16   outpatient/inpatient substance abuse treatment as directed

17   by your supervising probation officer after an appropriate

18   assessment.

19        And again, don't do anything to obstruct, attempt

16:29:01   20   to obstruct or tamper in any way with the efficiency or

21   accuracy of any drug test that you may be given.

22        I also order that you provide a DNA sample, if you

23   haven't already.  My suspicion is that you have.

24        Because of your history of violence, of drug

16:29:18   25   possession, of possession of a weapon, I am ordering that

1    you participate in a search and seizure provision, which

2    allows your person, your body, the place where you live, the

3    place where you work, a computer that you rely on, a car

4    that you drive or are driven in, to be subject to a

16:29:33  5    warrantless search and seizure if there is reasonable

6    suspicion that you're in possession of contraband.

7          So please make sure that those with whom you live

8    or share any of those things, such as a computer or car,

9    know that that can be searched if you have access to it.

16:29:51  10          Mr. Thompson, you spoke to me about RDAP.  As you

11    know, I made a recommendation I believe initially when I

12    sentenced Mr. Malone that he be allowed access to drug

13    treatment in prison.  It sounds like he's gotten that

14    attention.  What were you referring to when you referred to

16:30:10  15    RDAP?

16          MR. THOMPSON:  I believe it's the Residential Drug

17    Treatment Program.

18          THE COURT:  Outside of prison?

19          MR. THOMPSON:  No, Your Honor.

16:30:19  20          THE DEFENDANT:  No.

21          MR. THOMPSON:  Mr. Malone can --

22          THE COURT:  Certainly.

23          THE DEFENDANT:  Your Honor, it's inside of prison.

24    It's a program -- it's the 500-hour program where I would

16:30:27  25    have to be transferred to a special facility in order to

1   complete it.

2          THE COURT:  Do you have any objection to that,

3   Ms. Klump?

4          MS. KLUMP:  No, Your Honor.

16:30:37 5     THE COURT:  I will ask the Bureau of Prisons to

6   consider you for that program, and any other sort of

7   program, especially those regarding education and vocational

8   training that may allow you to lead a law-abiding life once

9   you leave prison.

16:30:55 10        Let me ask you, Mr. Wlotzko, regarding other

11  conditions that I should impose that I haven't mentioned, or

12  if I've mentioned, I haven't mentioned articulately.

13         What do you suggest?

14         PROBATION OFFICER:  I would have nothing further,

16:31:12 15  Your Honor.

16         THE COURT:  Ms. Klump, how about you, before I

17  turn to objections, what would you suggest that I haven't

18  mentioned or that I can perfect if I've mentioned

19  inarticulately?

16:31:25 20        MS. KLUMP:  Nothing, Your Honor.

21         THE COURT:  Then let me ask you about objections,

22  to any part of the proceedings as to Malone, and separately

23  state your objection, if you have one, to the sentence

24  imposed.

16:31:34 25        MS. KLUMP:  No objection, Your Honor.  Thank you.

1          THE COURT:  Mr. Thompson, I don't know if

2     Mr. Malone would like me to consider a different place of

3     incarceration.  You were at McCreary, I believe, U.S.

4     penitentiary?

5          THE DEFENDANT:  Correct, Your Honor.

6          THE COURT:  Are you happy going back there?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  Well, you know that I can't do much

9     about that except if you ask me to, ask the Bureau of

10    Prisons to consider a different place.  Would you like me to

11    do that?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Do you have a place in mind?

14         THE DEFENDANT:  Somewhere closer to home.

15         THE COURT:  If not immediately, eventually?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  You heard me mention educational

18    programs as well as vocational programs.  Do you want me to

19    be more specific?  Can you give me anything you have a

20    greater interest in, welding, construction, automotives?

21         THE DEFENDANT:  Yes.  Yes, Your Honor.  Welding,

22    electrical and HVAC.

23         THE COURT:  I will indicate all three.

24         Mr. Thompson, what have I missed or can improve

25    upon?

1          MR. THOMPSON:  Are you asking for objections now,

2     Your Honor?

3          THE COURT:  Not yet, in a moment.

4          MR. THOMPSON:  Okay.  Then nothing else, I don't

16:32:54  5     believe, Your Honor.

6          THE COURT:  Okay.  Your objections now, please.

7     And all of those stated already you can restate, but know

8     that they're preserved when overruled, but the floor is

9     still yours to articulate them.

16:33:05 10          MR. THOMPSON:  Just one second, Your Honor.

11          (Discussion held off the record between the defendant

12          and Mr. Thompson.)

13          MR. THOMPSON:  Your Honor, in addition to the

14     objections I've already stated on the record and we've

16:33:32 15     already addressed in court, we would object to the

16     five-month upward variance, in part, as Mr. Malone requests

17     that it be based -- the objection be based upon a violation

18     of the principles set forth in Apprendi, then also as a

19     sentencing violation generally.  Thank you.

16:34:04 20          THE COURT:  Certainly.  And I'll respond that I

21     think the advisory guidelines are a good start.  I am

22     certainly not obligated to end with the 115-month sentence.

23     And the advisory guidelines, Mr. Malone, are geared towards

24     the heartland of defendants, most defendants, the common,

16:34:23 25     the general defendant.  You are uncommon.  You are outside

1    of that general grouping.  For several reasons.  And I think

2    when your criminal history is reviewed, those reasons are

3    patent.  They are obvious.  It is violent.  It is

4    repetitive.  You do the same things in contravention of

16:34:39  5    civil society over and over again.

6         But as I said, chief among all of the complaints I

7    have with that history is that this is your second federal

8    felon in possession of a firearm and ammunition violation.

9         So for those reasons, I note, preserve for the

16:34:58  10    record, but continue to adhere to the 120-month sentence

11    that includes the five-month upward variance.

12         And I do mean what I say, if I were permitted to

13    abridge the 120 months, I would go higher.  Maybe another

14    five months.  But I can't and I won't.

16:35:16  15         Fourteen days from the date on which I reduce to

16    writing the sentence that I've now imposed is the cutoff for

17    you at least giving the appellate court notice of your

18    appeal.

19         As you know, you don't have to have it all

16:35:27  20    fine-tuned, but just a notice of appeal timely filed to

21    allow the appellate court to know that you're coming.

22         As you may already know, you don't have to worry

23    about whether or not you can afford counsel, counsel will be

24    appointed to represent you.  If you and Mr. Thompson decide

16:35:44  25    not to work together, don't worry, there are plenty of

1    capable appellate counsel.  So that should not be a reason

2    for you not to appeal.

3         Do you understand, sir?

4         THE DEFENDANT:  Yes, Your Honor.

16:35:53    5         THE COURT:  Mr. Thompson, if Mr. Malone should ask

6    it of you, even if you and he decide not to work together,

7    would you at least timely file the notice of appeal just so

8    that we know that it's perfected without issue?

9         MR. THOMPSON:  Yes, Your Honor.

16:36:06    10         THE COURT:  And I do appreciate your hard work on

11    this case.  I've grown used to it.  You are dogged about all

12    of your cases, but you brought a little extra passion to

13    this one.  I appreciate it.  You didn't win many of your

14    arguments, and I think that's because the facts and the law

16:36:20    15    were not on your side.  But nonetheless, I appreciate what

16    you've done.

17         Is there anything more before I close the record,

18    on behalf of the United States?

19         MS. KLUMP:  No, Your Honor.  Thank you.

16:36:30    20         THE COURT:  On behalf of Mr. Malone?

21         THE DEFENDANT:  No, Your Honor.

22         MR. THOMPSON:  No, Your Honor.

23         THE COURT:  Mr. Malone, I've dealt you a deserved

24    but stiff sentence, and it doesn't mean that I still don't

16:36:38    25    wish you the best, because I do.  I think you're greater

1    than you allow yourself to be, and I hope that you get out

2    of your way and become that person.

3              This hearing is adjourned.

4              THE CLERK:  All rise.

5         (Proceedings concluded at 4:36 p.m.)

16:36:51

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3        I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled

5    matter.

6

7             /s/ Mary L. Uphold          January 12, 2017
             Mary L. Uphold, RDR, CRR     Date
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25