IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RYAN D. MALONE, | ) CASE NO.: 1:14CR438 |
| | )        1:17CV2290 |
| Petitioner, | ) |
| | ) JUDGE BENITA Y. PEARSON |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) RESPONSE IN OPPOSITION TO |
| | ) <u>MOTION TO VACATE, SET ASIDE, OR</u> |
| Respondent. | ) <u>CORRECT SENTENCE PURSUANT TO</u> |
| | ) <u>28 U.S.C. § 2255</u> |

      The United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Elliot Morrison, Assistant U.S. Attorney, hereby responds in opposition to Petitioner Ryan D. Malone's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (R. 89). Petitioner's motion claims that he was denied effective assistance of counsel on his direct appeal from his re-sentencing before this Court. For the reasons that follow, this motion should be denied.

**I.     BACKGROUND**

      Malone's claim here concerns his counsel's performance on his second direct appeal to the Sixth Circuit, but a brief review of the earlier proceedings will inform the Court's analysis of the claims presented.

### A. THE ORIGINAL JUDGMENT AND FIRST APPEAL

On December 9, 2014, a two-count indictment was filed, charging Defendant Ryan D. Malone and co-defendant Virgil Cooper with Felon in Possession of a Firearm or Ammunition, in violation of 18 U.S.C. § 922(g)(1). (R. 1: Indictment, PageID 1). Malone pled guilty without a plea agreement. (R. 39: Plea Tr., PageID 145-46). On July 2, 2015, this Court sentenced Malone to 120 months' imprisonment.[1] (R. 60: Judgment, PageID 319-21, 323). The Court entered final judgment five days later. (*Id.*, PageID 319). Malone appealed to the Sixth Circuit. (R. 65: Notice of Appeal, PageID 375).

On appeal, Malone claimed two errors in his Guidelines calculation. First, he claimed that his conviction for Aggravated Burglary under Ohio Rev. Code § 2911.11(A)(2) was not a "crime of violence" under *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See United States v. Malone*, No. 15-3765, 2016 WL 1696871, at *3 (6th Cir. April 27, 2016). This Court had found that it was, increasing Malone's based offense level under U.S.S.G. § 2K2.1(a)(2). In light of intervening case law, the Government conceded on appeal the conviction did not qualify, and the Sixth Circuit agreed. Second, Malone claimed that the Court improperly increased his offense level for using or possessing the firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B). *Id.* But the Sixth Circuit held that Malone had waived that issue by withdrawing his objection to the enhancement before sentencing. *Id.* Accordingly, the Sixth Circuit "vacate[d] the judgment and remanded for reconsideration in light of *Johnson*." *Id.*

---

[1] In deciding the sentence, the Court found that Malone's total offense level was 27, that his criminal history category was VI, and that the corresponding Guidelines range was 120 months, with the statute capping the otherwise-applicable range of 130 to 162 months. (R. 71: Malone Sent. Tr., PageID 394, 395, 396).

B.     THE RESENTENCING AND SECOND APPEAL

On remand, this Court set the case for resentencing. (R. 91: Order, PageID 617). On November 15, 2016, this Court again sentenced Malone to 120 months' imprisonment, and entered final judgement six days later. (R. 113: Judgment:, PageID 757). At the resentencing hearing, the Court adopted the PSR's application of a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(A) based on Malone's commission of the instant offense after sustaining a controlled substance offense. (R. 122: Resentencing Trans., PageID 834).[2] Defense counsel explained that Malone wished to object to treating his F4 drug trafficking conviction as a controlled substance offense, despite counsel's "belie[f] that argument does not have merit." (*Id.*, PageID 836). Argument at resentencing instead focused again on the four-level enhancement for possessing the firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B), where that other felony offense had been charged in state court but dismissed due to witness unavailability. (*E.g., id.*, PageID 842 (referencing *United States v. Ford*, 571 F. App'x. 378 (6th Cir. 2014))). The Court considered all of the evidence and found that this four-level enhancement and a two-level enhancement for the gun being stolen both applied, resulting in an adjusted offense level of 26, before reducing by three levels for acceptance of responsibility. (*See id.*, PageID 851).

---

[2]     The Government notes that the Glock 19 firearm at issue was actually capable of accepting a large-capacity magazine, which would have yielded a base offense level of 22 under U.S.S.G. 2K2.1(a)(3) & application note 2. Defendant's own sentencing memorandum recognized that this gun could receive a large-capacity magazine. (R.108: Def's Resentencing Mem., PageID 711). And it was undisputed that the Glock was loaded with 16 rounds of ammunition at the time of his arrest. (*E.g.*, R. 109: Rev. PSR ¶ 8, PageID 722). For this additional reason, Malone cannot show prejudice under *Strickland*, as a resentencing would result in a *higher* Guidelines range, not a lower one.

As to Defendant's criminal history, the argument focused on whether to score two convictions—one in state court for trafficking, and one in federal court for a prior § 922(g) violation—separately or as a single sentence. The Court agreed with Probation that they should count separately despite the lack of an intervening arrest, as they stemmed from different charging instruments in different courts, and the sentences were imposed on different days. (*See id.*, PageID 859). Defense counsel again made note of Malone's pro se objection, here to increasing his criminal history score by two levels because he was under post-release control at the time of this offense. (*Id.*, PageID 857). Malone contended that this supervision had been "voided," which in his view rendered it as though it never happened, including for purposes of determining whether he was under a criminal justice sentence at the time of the offense under U.S.S.G. § 4A1.1(d). But Probation found that his supervision had been terminated after this offense occurred, not retroactively voided, and the court of conviction had actually denied Malone's motion to amend its order "to reflect that the previous judgement[,] under which post release control was imposed, is now void." (R. 109: Rev. PSR, PageID 742). Defendant offered no evidence to the contrary, and the Court found the enhancement applied and that Defendant was a Criminal History Category VI. (R. 122: Resentencing Trans., PageID 860).

Defendant's resulting Guidelines range for a total offense level of 23 and Category VI was 92 to 115 months. The Court extensively reviewed the § 3553(a) factors, and chose to vary up by five months and impose a 120-month sentence. (*Id.*, PageID 874).

On appeal from the resentencing, Malone's counsel challenged the application of the four-level increase for a connected felony under U.S.S.G. § 2K2.1(b)(6)(B) and also argued that his sentence was substantively unreasonable. The Sixth Circuit reviewed all of the evidence supporting the connected felony enhancement, and affirmed this Court's finding. The Sixth

Circuit also affirmed the sentence as substantively reasonable, observing that this Court had "appropriately considered several § 3553(a) factors in choosing Malone's sentence." (*See* Sixth Circuit Case No. 16-4347, Doc. 27-2 at 7, attached hereto as an addendum).  As Malone argues, counsel chose not to raise on appeal Malone's pro se Guidelines objections.

### C. THIS MOTION

Malone timely filed this Motion under 28 U.S.C § 2255.  In his motion Malone asserts that his counsel was constitutionally ineffective for failing to raise on appeal his two pro se objections from the resentencing.  First, he claims that counsel should have argued that his prior conviction under O.R.C. § 2925.03(A)(2) was not a "controlled substance offense" under U.S.S.G. § 4B1.2(b) for purposes of increasing his base offense level under U.S.S.G. § 2K2.1(a)(4)(A).  Second, he claims, still without any supporting evidence, that his state post-release control had been declared "void," and that counsel therefore should have argued that U.S.S.G. § 4A1.1(d) did not apply to increase his criminal history score.

## II. LEGAL STANDARD

Section 2255 permits a court to afford relief "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  To prevail on a § 2255 petition alleging Constitutional error, such as a violation of the Sixth Amendment right to counsel, the petitioner must establish an error of constitutional magnitude, which had a substantial and injurious effect or influence on the proceedings.  *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (internal citation omitted).

Claims of ineffective assistance of counsel may generally be asserted in a post-conviction proceeding under § 2255.  *United States v. August*, 984 F.2d 705, 711 (6th Cir. 1992); *United*

*States v. Guthrie*, 144 F.3d 1006, 1012 (6th Cir. 1998). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The *Strickland* standard is also used for determination of ineffective assistance of appellate counsel. *Smith v. Robbins,* 528 U.S. 259, 260, 120 S.Ct. 746, 750, 145 L.Ed.2d 756 (2000).

The defendant must demonstrate both (1) deficient performance by counsel, and (2) prejudice resulting from that inadequate performance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687.

Judicial scrutiny of counsel's performance "must be highly deferential." *Strickland*, 466 U.S. at 689. The focus is on the adequacy of counsel's actual performance, not hindsight potential for improvement. *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998). Before a hearing on a § 2255 petition is required, "the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner has actual proof of the allegations going beyond mere unsupported assertions." *Barry v. United States*, 528 F.2d 1094, 1101 (7th Cir. 1976). A § 2255 movant is not entitled to a hearing upon his claim of ineffective assistance if his supporting affidavit makes only a conclusory claim without presenting a factual question of a violation. *Turner v. United States*, 183 F.3d 474, 477-78 (6th Cir. 1999). Further, the Court exercises its discretion in deciding

whether to admit and receive such affidavits as evidence. *Bofford v. Marshall*, 751 F.2d 845, 853 (6th Cir. 1985) (citations omitted).

Where "the file and records of the case conclusively show that the moving party is entitled to no relief," a § 2255 movant is not entitled to a hearing, and the court may in its discretion deny relief based on the pleadings and record. *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003) (quoting *Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995)). Though Malone failed to rebut the presumption that his attorney's representation was reasonable, the Government responds to his arguments below.

### III. ARGUMENT

#### A. COUNSEL CORRECTLY CHOSE NOT TO ARGUE THAT, CONTRARY TO ALL PUBLISHED DECISIONS ON THE ISSUE, AN OHIO TRAFFICKING CONVICTION IS NOT A CONTROLLED SUBSTANCE OFFENSE.

Malone claims that his counsel should have appealed this Court's holding that a violation of O.R.C. 2925.03(A)(2) for drug trafficking is a "controlled substance offence" under the Guidelines. Under longstanding Supreme Court precedent, as clarified by *Mathis v. United States*, 136 S. Ct. 2243 (2016), this Court must engage in a "modified categorical" analysis, distinguishing between statutes that define different crimes (divisible statutes) and statutes that provide alternative means of committing the same crime (indivisible statutes). *See, e.g.*, *United States v. Smith*, 681 F. App'x 483, 488 (6th Cir. 2017), *cert. denied* 137 S. Ct. 2144 (2017) (applying categorical approach to Illinois drug trafficking statute). Under that approach, this Court must compare the Guidelines' definition of a "controlled substance offence" to the elements of Malone's drug trafficking conviction. *Id.*

The Guidelines define "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance

>（or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).  It is undisputed that Malone was convicted of trafficking marijuana under Ohio's drug trafficking statute, which provides as follows:

> No person shall knowingly…[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

O.R.C. 2925.03(A)(2).

Court after court has held that a violation O.R.C. 2925.03(A)(2) categorically qualifies as a controlled substance offense under the Guidelines.  The Sixth Circuit so held only two months ago, reiterating prior holdings.  *See United States v. Burris*, No. 16-3855, 2017 WL 6368852, at *1 (6th Cir. Dec. 13, 2017) ("each alternative enumerated in Ohio Rev. Code § 2923.03 satisfies the Guideline definition of a controlled substance offense"); *see also id.* (quoting *United States v. Evans*, 699 F.3d 858, 868 (6th Cir. 2012)) ("Ohio's drug trafficking statute [O.R.C. 2925.03] has been found to 'categorically qualif[y] as a controlled substance offense' under the Guidelines"); *United States v. Robinson*, 333 F. App'x 33, 35-36 (6th Cir. 2009) ("Because § 2925.03(A)(2) includes an element of 'manufacture, import, export, distribution, or dispensing,' or intent to do those things, that subsection of the Ohio statute falls within the ambit of U.S.S.G. § 4B1.2(b)."). Another court in this District held likewise last year.  *Bullard v. United States*, No. 1:14-CR-411, 2017 WL 2291419, at *5 (N.D. Ohio May 25, 2017) ("Under the categorical approach, [defendant]'s Ohio Rev. Code § 2925.03(A)(2) conviction is a qualifying offense under U.S.S.G. § 4B1.2(b).")

Other Circuits considering prior convictions under this same Ohio statute have followed suit. *See United States v. Walker*, 858 F.3d 196, 201 & n.4 (4th Cir. 2017) (defendant's "prior conviction under Ohio Rev. Code Ann. § 2925.03(A)(2) categorically qualifies as a 'drug trafficking offense' as defined in U.S.S.G. § 2L1.2," which is equivalent to the definition of a "controlled substance offense" here); *United States v. Karam*, 496 F.3d 1157, 1167 (10th Cir. 2007) (holding that "[t]here can be no dispute that" a conviction under O.R.C. § 2925.03(A)(2) is a controlled substance offense). So too district courts outside Ohio. *United States v. Rushin*, No. CR 3:16-00140-01, 2017 WL 3401296, at *2 (S.D.W. Va. Aug. 8, 2017) (holding that "the elements of [O.R.C. 2925.05](A)(2), examined without regard to the underlying facts of [defendant]'s particular conviction, [] meet the generic offense defined in the Guidelines" and therefore define a categorical "controlled substance offense"); *Wortham v. United States*, No. 5:11CR25, 2016 WL 4384761, at *2 (N.D.W. Va. Aug. 17, 2016) ("prior Ohio convictions for trafficking in drugs" under O.R.C. 2925.03 were categorical controlled substance offenses).

The Sixth Circuit has also recently rejected Malone's argument that his conviction does not qualify because the statute—in referencing controlled substance *analogs*—reaches substances possibly not covered by federal trafficking statutes. *See United States v. Smith*, 681 F. App'x 483, 489 (6th Cir. 2017). In *Smith*, like here, the state statute prohibited the distribution of a "controlled substance analog," and the defendant also argued that his conviction was therefore not categorically a controlled substance offense under the Guidelines. *Id.* at 488 (quoting 720 Ill. Comp. Stat. § 570/401). Writing for a unanimous panel, Judge Martha Craig Daughtrey easily rejected that argument:

> Because there is no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government, and because the Guidelines specifically include offenses under state law in § 4B1.2, the fact that Illinois may have

>criminalized the "manufacture, import, export, distribution, or dispensing" of some substances that are not criminalized under federal law does not prevent conduct prohibited under the Illinois statute from qualifying, categorically, as a predicate offense.

*Id.* at 489. Accordingly, under *Smith*, the fact that Ohio's drug trafficking law may criminalize substances not controlled by federal law does not prevent Section 2925.03(A)(2) from qualifying as a categorical controlled substance offense.

The Guidelines Career Offender provision does not rely solely on the definition of "controlled substance" found at 21 U.S.C. § 802(6). To the contrary, a "controlled substance offense" is expressly any felony "offense under federal *or state law* . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession" or the same with intent to distribute. U.S.S.G. § 4B1.2(b). As *Smith* recognized, the Guidelines clearly expand the universe of predicate crimes to include state crimes with state definitions of what substances are controlled. *See Smith*, 681 F. App'x at 489.[3]

In any event, O.R.C. 2925.03(A)(2) is divisible as to the particular substance; the specific substance is an element of the offense, as it defines the possible penalties. Although subsection section (A)(2) refers to controlled substances general, subsection (C) provides a lengthy sentencing structure that determines the severity of the Ohio drug trafficking offense based

---

[3] *See also Bullard*, 2017 WL 2291419, at *4 (distinguishing the Guidelines definition of a "controlled substance offense" from the parallel definition of qualifying predicates in the Immigration and Nationality Act for the reasons set forth in *Smith*: "Bullard misses a key distinction between the Sentencing Guidelines and INA's definitions of a 'controlled substance' offense. Under the INA, a 'controlled substance offense must involve substances on the Federal Controlled Substance Schedule. In contrast, the Sentencing Guidelines do not narrow 'controlled substance' offenses to offenses involving only substances controlled by the federal government." (footnote omitted)).

primarily on the type of controlled substance, the amount of controlled substance, and any aggravating location where the trafficking offense took place (e.g., around a school, as was the case here). This is settled Ohio Supreme Court law: "[Section] 2925.03 sets forth more than one criminal offense with the identity of each being determined by the type of controlled substance involved. As such, the type of controlled substance involved constitutes an essential element of the crime which must be included in the indictment." *State v. Headley*, 453 N.E.2d 716, 720 (Ohio 1983).

Accordingly, even if, contrary to *Smith*, the Guidelines definition required that a state conviction involve a substance that is federally controlled, this Court would apply the modified categorical approach to determine if Malone's Ohio trafficking convictions concern such a substance. Applying the modified categorical approach here, there can be no dispute that Malone's conviction, as set forth expressly in the charging instrument, concerned trafficking marijuana in a school zone. (*See* R. 109: Rev. PSR ¶ 34, PageID729).

In sum, Malone's reliance on the "controlled substance analog" language in the Ohio trafficking statutes fails for two independent reasons. First, Ohio trafficking under Section 2925.03(A)(2) is a "controlled substance offense" under the Guidelines regardless of whether all of the substances controlled under Ohio law are also controlled under federal law. *See Smith*, 681 F. App'x at 489. Second, even were that not so, Ohio's drug trafficking law is a divisible offense. When the modified categorical approach is applied, the indictment shows the substance he was convicted of trafficking was marijuana, a federally controlled substance.

Accordingly, this Court correctly scored Malone's trafficking conviction as a "controlled substance offense." Because the claim is meritless and would have failed on appeal, appellate counsel acted reasonably when refusing to raise the claim, and no prejudice can be shown.

    B.    <u>COUNSEL CORRECTLY DECLINED TO CHALLENGE THE FINDING THAT DEFENDANT WAS UNDER SUPERVISION WHEN HE COMMITTED THIS OFFENSE BECAUSE IT IS UNDISPUTED HE WAS, AND THE COURT OF CONVICTION DECLINED TO CREATE A LEGAL FICTION THAT HE WAS NOT.</u>

Under U.S.S.G. §4A1.1(d) two points are added to a defendant's criminal history score if he committed the offense while under "any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  Here, it is undisputed that, at the time Malone kidnapped and beat a victim with a firearm he illegally possessed, Ohio Adult Parole was supervising Malone as part of his sentences for multiple prior convictions. That is, he not only committed this offense after sustain multiple prior convictions and serving multiple terms of incarceration, but also did so while he was supposed to be on his best behavior and had tools and professionals available to help him steer clear of illegal activity.

Malone contends that, the undisputed fact of his supervision notwithstanding, the post-release control portion of those sentences was subject to legal challenge, and that because he made that challenge successfully *after committing this crime*, the supervision should be treated as though it never existed.  In Malone's telling, the court of conviction "voided" his post-release control.  But his argument is not evidence, and the record—with which appellate counsel was working—is undisputed that Defendant successfully moved to *terminate* his post-release control while incarcerated for this offense. (R. 109: Rev. PSR, PageID 742).  He then moved the Common Pleas court amend its order, asking the court to instead "to reflect that the previous judgement[,] under which post release control was imposed, is now void." (*Id.*).  But the court denied that motion, making clear that it intended to terminate the supervision as of April 1, 2016, but not to give its order any retroactive effect, as Malone expressly sought. (*Id.*).  Defendant offers no evidence to the contrary.

Accordingly, the Court correctly diagnosed the issue at the resentencing: the court of conviction "didn't void it, it just said, 'Okay, we'll stop it now.' It's not a nunc pro tunc, is it?" (R. 122: Resentencing Trans., PageID 858). Even assuming that a nunc pro tunc order intended to have retroactive effect could defeat U.S.S.G. §4A1.1(d)'s application, the factual record is undisputed that the court of conviction went no further than to end Malone's term of supervision in April 2016. He was therefore, both in fact and under the law, under supervision on November 3, 2014, when he committed this offense. Accordingly, appellate counsel's performance was not deficient because he chose not to pursue this meritless claim, and Malone cannot show prejudice in any event.

## IV. CONCLUSION

For the foregoing reasons, Malone's motion should be denied without a hearing.

Respectfully submitted,

United States Attorney

By: /s/ Elliot Morrison
Elliot Morrison (OH: 0091740)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3919
(216) 522-8355 (facsimile)
Elliot.Morrison@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 15th day of February 2018 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Notice will be sent by regular U.S. Mail to Petitioner Ryan D. Malone, Reg. No. 30802-160, at his correctional institution, USP McCreary, 330 Federal Way, Pine Knot, KY  42635, on February 16, 2018, the next business day.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

    /s/ Elliot Morrison
    Elliot Morrison
    Assistant U.S. Attorney