

**FILED**

AUG - 8 2018

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| RYAN D. MALONE, | ) |
| | ) Civil No. 1:17-cv-02290-BYP |
| Petitioner, | ) |
| | ) Crim. No. 1:14-cr-438-1 |
| v. | ) |
| | ) AMENDED PLEADINGS TO 28 U.S.C. § 2255 |
| UNITED STATES OF AMERICA, | ) COLLATERAL ATTACK ON A CONVICTION |
| | ) |
| Respondent. | ) |

To begin, it must never be overlooked: "As every schoolchild learns, our Constitution establishes a system of dual sovereignty between the States and the Federal Government." **Gregory v. Ashcroft**, 501 U.S. 452, 457 (1991).

Thus, quoting James Madison, the Court has observed:

"In our constitutional structure, the federal government's powers are supposed to be "few and defined," while the powers reserved to the States "remain ... numerous and indefinite." The Federalist No. 45, p. 328 (B. Wright ed. 1961)(Madison); **McCulloch v. Maryland**, 4 Wheat. 316, 405, 4 L. Ed. 579 (1819)."

**Artis v. District of Columbia**, 199 L.Ed.2d 473, 497 (2018).

This having been said, we commence with the amended claims, with the Court requested to take notice that the previously filed claims and issues are still reserved for consideration, and that these amended claims are to be considered as in addition to those already on file in this collateral attack, **sub judice.**

I. **Ground One:** INEFFECTIVE ASSISTANCE OF COUNSEL—FAILURE TO CHALLENGE
LACK OF FEDERAL JURISDICTION OVER CONDUCT THE CONSTITUTION
PRECLUDES THE FEDERAL GOVERNMENT FROM PROSECUTING

The Supreme Court has consistently admonished:

"The Federal Government "is acknowledged by all to be one of enumera-
ted powers." ... That is, rather than granting general authority to per-
form all the conceivable functions of government, the Constitution lists,
or enumerates, the Federal Government's powers. ... The enumeration of pow-
ers is also a limitation of powers, because "[t]he enumeration presupposes
something not enumerated." ... The Constitution's express conferral of some
powers makes clear that it does not grant others. And the Federal Govern-

ment "can exercise only the powers granted to it." ...

"The Federal Government has expanded dramatically over the past two centuries, but it still must show that a constitutional grant of power authorizes each of its actions."

Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S.Ct. 2566, 2577, 2578 (2012)(citations omitted).  Accor, United States v. Lopez, 514 U.S. 549, 552 (1995).

When it comes to the regulation of firearms, and Controlled Substances, "[t]he Government frequently defends federal criminal legislation on the ground that the legislation is authorized pursuant to Congree's power to regulate interstate commerce," Bond v. United States ("Bond II"), 134 S.Ct. 2077, 2087 (2014), when it cannot do so, when considering the whole purpose for the Framers to have included the Commerce Clause into the Constitution in the first place.

In this case, the Court instructs: "The object of construction, applied to a constitution, is to give effect to the intent of its framers, and of the people adopting it." Lake County v. Rollins, 130 U.S. 662, 670 (1889).

Nowhere, in the Clause, did the Framers provide for the regulation of any person and his conduct that may have a "substantial effect" on commerce, but for the regulation of the several States, in order to prevent them from interfering with the flow of commerce through their jurisdicitons by imposing duties of any kind on the goods flowing through their jurisdictions, on their way to other States beyond those borders.  Or, as the Supreme Court put it, it is a means of "preventing a State from retreating into economic isolation or jeopardizing the welfare of the Nation as a whole, as it would do if it were free to place burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear." Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 179-80 (1995)(citations omitted).

That the Commerce Clause was put into the Constitution to promote for an evenhanded flow of commerce, free from the jealousies of other States, and the competition that usually came aboutm the Court made clear why the Clause was im-

-2-

portant enough to be included in the Constitution, when the Court observed:

> "The provision thus "'reflect[s] a central concern of the Framers
> that was an immediate reason for calling the Constitutional Convention:
> the conviction that in order to succeed, the new Union would have to a-
> void the tendencies toward economic Balkanization that had plagued rela-
> tions among the Colonies and later among the States under the Articles
> of Confederation.'"'"

**Ibid.** (citations omitted).

In short, the Commerce Clause does not reach the conduct of individuals at all, but only the conduct and actions of the several States, and the use of the so-called commerce power of Congress to enact criminal legislation is more than clearly erroneous, it is unconstitutional, and renders all federal criminal laws that base their existence on the Commerce Clause void laws, and must be treated as such, as the Court observed when dealing with purported laws that have no constitutional basis for existence:

> "We have upheld laws that are "'convenient, or useful' or 'conducive'
> to the authority's 'beneficial exercise.'" ... But we have also carried
> out our responsibility to declare unconstitutional those laws that under-
> mine the structure of government established by the Constitution.  Such
> laws, which are not "consist[ent] with the letter and spirit of the Con-
> stitution," ... are not **proper** [means] for carrying into Execution" Con-
> gress's enumerated powers.  Rather, they are, "in the words of The Feder-
> alist, 'merely acts of usurpation' which 'deserve to be treated as such.'"'"

**Nat'l Fed'n, supra,** 132 S.Ct., at 2592 (citations omitted).

Because neither firearm possession, or controlled substances, is enumerated in the Constitution for federal involvement or regulation, the Commerce Clause notwithstanding, as pointed out, **supra,** the purported federal criminal case was beyond this Court's jurisdiction to even sit in judgment of at all.

So, where did Congress obtain authorization to legislate over any of the conducts involved in this case?

> "This is a vital question; for nothing is more certain than that be-
> neficient aims, however great or well directed, can never serve in lieu
> of constitutional power.
> "The ruling and firmly established principle is that the powers which
> the general government may exercise are only those specifically enumerated
> in the Constitution, and such implied powers as are necessary and proper

to carry into effect the enumerated powers.  Whether the end sought to be
attained by an act of Congress is legitimate is wholly a matter of consti-
tutional power and not at all of legislative discretion.  Legislative con-
gressional discretion begins with the choice of means and ends with the a-
doption of methods and details to carry the delegated powers into effect.
The distinction between these two things—power and discretion—is not only
very plain but very important.  For while the powers are rigidly limited to
the enumerations of the Constitution, the means which may be employed to
carry the powers into effect are not restricted, save that they must be ap-
propriate, plainly adapted to the end, and not prohibited by, but consis-
tent with, the letter and spirit of the Constitution. ... Thus, it may be
said that to a constitutional end many ways are open; but to an end not
within the terms of the Constitution, all ways are closed."

**Carter v. Carter Coal Co.,** 298 U.S. 238, 291 (1936)(citation omitted).

To allow Congress to get away with enacting laws that are not within its

power, under the limits of the Constitution, has been addressed by the Court,

and the Court made it plain what must be taken into consideration with a law

"that the effect and operation of the law may incidentally extend beyond the lim-

itation of the power," **Pennsylvania v. The Wheeling and Belmont Bridge Co.,** 18 How.

421, 434 (1856), admonishing:

"Upon any such interpretation, the principal object of the framers of
the instrument in conferring the power would be sacrificed to the subordi-
nate consequences resulting from its exercise.  These consequences are very
proper considerations to be urged upon Congress for the purpose of dissuad-
ing that body from its exercise, but afford no ground for denying the power
itself, or the right to exercise it."

**Ibid.**

In other words, if the power to enact a certain law is within the enumera-

tion of the subjects listed in Article I, § 8, for federal reach, Congress may

enact a law reaching that subject; if not, it has no constitutional authority to

enact the law, as was inferred by Chief Justice Marshall:

"Let the end be legitimate, let it be within the scope of the consti-
tution, and all means which are appropriate, which are plainly adapted to
that end, which are not prohibited, but consist with the letter and spirit
of the constitution, are constitutional."

**McCulloch v. Maryland,** 4 Wheat. 316, 421 (1819).

If it is not within the enumeration of subject-conducts conferred upon for

-4-

federal legislation, the Court's admonition that it is "the responsibility of this Court to enforce the limits on federal power by striking down acts of Congress that transgress those limits," Nat'l Fed'n, supra, at 2579-80 (citation omitted), is now before this Court, and must be exercised as to both 18 U.S.C. § 924, and the Controlled Substances Act that is refered to to raise the sentencing level in this case—a sentence that should not have even been imposed on a conviction for conduct the Constitution forbids the Federal Government from even reaching in its legislation, thus enacting into a purported federal criminal prohibition.

As Justice Thomas, in a concurring opinion, so eloquently put it, when it comes to ensuring "the protection of our fundamental liberties,"  Wyeth v. Levine, 555 U.S. 555, 583 (2009)(citation omitted):

> "[T]he "Constitution establishes a system of dual sovereignty between the States and the Federal Government." ... The Framers adopted this "'constitutionally mandated balance of power,'" ... to "reduce the risk of tyranny and abuse from either front," because a "federalist structure of joint sovereigns preserves to the people numerous advantages," .... Furthermore, as the Framers observed, the "compound republic of America" provides "a double security ... to the rights of the people" because "the power surrendered by the people is first divided between two distinct governments, and then the portion allotted to each subdivided among distinct and separate departments." ...
> "As a result, in order to protect the delicate balance of power mandated by the Constitution, the Supremacy Clause must operate only in accordance with its terms. ...
> "With respect to federal laws, then, the Supremacy Clause gives "supreme" status only to those that are "made in Pursuance" of "[t]his Constitution." ...
> "Federal laws "made in Pursuance" of this Constitution must comply with two key structural limitations in the Constitution that ensure that the Federal Government does not amass too much power at the expense of the States. The first structural limitation, ... is "the Constitution's conferral upon Congress of not all governmental powers, but only discrete, enumerated ones." ...
> "The second structural limitation is the complex set of procedures that Congress and the President must follow to enact "Laws of the United States.""

Id., 555 U.S., at 583-584, 585-586 (citations omitted).

In essence, this is the beginning and the end of the discussion: if the sub-

ject for which Congress is to legislate over, and enact a law addressing that subject, is not within the enumeration in the Constitution for federal involvement, the Court has provided the admonition under such circumstances, pointing out: "If no enumerated power authorizes Congress to pass a certain law, that law may not be enacted, even if it would not violate any of the express prohibitions in the Bill of Rights or elsewhere in the Constitution." **Nat'l Fed'n, supra,** at 2577.

Justice Ginsburg put it in a way that leaves no doubt that the courts must notice a law's unconstitutionality, and address it in a proceeding such as this, when she wrote:

> "Other defendants might assert that a law exceeds Congress' power because it violates the Ex Post Facto Clause, or the Establishment Clause, or the Due Process Clause.  Whatever the claim, success on the merits would require the reversal of the conviction.  "An offence created by [an unconstitutional law]," the Court has held, "is not a crime." ..."A conviction under [such a law] is not merely erroneous but is illegal and void, and cannot be a legal cause of imprisonment." ... If a law is invalid as applied to the criminal defendant's conduct, the defendant is entitled to go free.
> "For this reason, a court has no "prudential" license to decline to consider whether the statute under which the defendant has been charged lacks constitutional application to her conduct. ...
> "In short, a law "beyond the power of Congress," for any reason, is "no law at all." ... The validity of [defendant's] conviction depends upon whether the Constitution permits Congress to enact [the law].  [The] claim that it does not must be considered and decided on the merits."

**Bond v. United States ("Bond I"),** 131 S.Ct. 2355, 2367-68 (2011)(citations omitted, alterations added)(Ginsburg, J., with whom Breyer, J., joins, concurring).

Thus, with the federal courts having a "primary role—"to protect the rights of the individual that are embodied in the Federal Constitution," **Pennsylvania v. Lebron,** 518 U.S. 938, 950 (1996)(citation omitted), it is incumbent on this Tribunal to take cognizance of the claims raised in these amended pleadings, "when justice so requires," Rule 15(a)(2), Fed.R.Civ.P., and reach the merits that conclusively set out "substantive" issues of the sort that raise questions whether the jurisdiction of this Court over the "subject-conduct" of this case (subject-

-6-

matter jurisdiction) ever existed over conduct the Constitution precludes the

Government from prosecuting, thus demonstrating that not even personal juris-

diction over Petitioner existed.

> "First, personal jurisdiction requires a forum-by-forum, or sover-
> eign-by-sovereign, analysis. ... Personal jurisdiction, of course, re-
> stricts "judicial power not as a matter of sovereignty, but as a matter
> of individual liberty," for due process protects the individual's right
> to be subject only to lawful power. ... But whether a judicial judgment
> is lawful depends on whether the sovereign has authority to render it."

**McIntyre Mach., Ltd. v. Nicastro**, 131 S.Ct. 2780, 2789 (2011)(citations omitted).

As to a showing that the statutory provisions must be struck down as being

unconstitutional acts that are beyond the power of Congress, the concurring

opinion of the Justices makes it plain what must be considered, writing:

> "Due respect for the Legislative Branch requires that we exercise
> our power to strike down enactments sparingly.  For this reason, "[w]hen
> the validity of an act of Congress is drawn in question, and even if a
> serious doubt of constitutionality is raised, it is a cardinal principle
> that this Court will first ascertain whether a construction of the stat-
> ute is fairly possible by which the question may be avoided." ...
> "But our duty to avoid constitutional questions through statutory
> construction is not unlimited: it is subject to the condition that the
> construction adopted be "fairly possible."  As Chief Justice Taft warned,
> "amendment may not be substituted for construction, and ... a court may
> not exercise legislative functions to save the law from conflict with con-
> stitutional limitation." ... Justice Brandeis, ... is frequently cited as
> the difinitive statement of the rule of "constitutional avoidance," him-
> self cautioned: "The court may not, in order to avoid holding a statute
> unconstitutional, engraft upon it an exception or other provision. ...
> Neither may it do so to avoid having to resolve a constitutional doubt."
> ... Adoption of a particular construction to avoid a constitutional ruling,
> Justice Brandeis states, was appropriate only "where a statute is equally
> susceptible of two constructions, under one of which it is clearly valid
> and under the other of which it may be unconstitutional.""

**Lowe v. S.E.C.**, 472 U.S. 181, 212 (1985)(White, J., with whom The Chief Justice,

and Rehnquist, J., join, concurring)(citations omitted).

Relying on relevant case law, Justice Stevens has admonished:

> "Relatedly, rather than evaluate liberty claims on an abstract plane,
> the Court has "required in substantive-due-process cases a 'careful de-
> scription' of the asserted fundamental liberty interest." ... And just as
> we have required such careful description from the litigants, we have re-
> quired of ourselves that we "focus on the allegations in the complaint to

determine how petitioner describes the constitutional right at stake.""
**McDonald v. Chicago**, 177 L.Ed.2d 894, 985 (2010)(citations omitted)(Stevens, J.,
dissenting).

With the firearms federal laws, and the Controlled Substances Act, neither
of the two acts can be construed but one way: they are unconstitutional because
the Constitution does not include the regulation of either in the enumeration of
powers for Congress to enact such prohibitions, the Commerce Clause notwithstand-
ing for the reasons and matters of law set out in this Memorandum in Support of
this collateral attack on the convictions, and brings into play a recent case of
the Supreme Court, where the question presented "is whether a guilty plea by it-
self bars a federal criminal defendant from challenging the constitutionality of
the statute of conviction," and the Court held that it did not. **Class v. United
States**, 138 S.Ct. 798, 803 (February 21, 2018).

In the case of **Johnson v. United States**, 135 S.ct. 2551 (2015), the Court
"held the residual clause" "of the Armed Career Criminal Act of 1984, 18 U.S.C.
§ 924(e)(2)(B)(ii) ... void for vagueness." **See Welch v. United States**, 136 S.
Ct. 1257, 1260-61 (2016), where "[t]he void-for-vagueness doctrine prohibits the
government from imposing sanctions "under a criminal law so vague that it fails
to give ordinary people fair notice of the conduct it punishes, or so standard-
less that it invites arbitrary enforcement."" **Id.**, 136 S.Ct., at 1262 (citing
**Johnson**, 135 S.Ct., at 2556).

This case, on the other hand, presents the claim that the statute under
which Petitioner was charged and prosecuted under, 18 U.S.C. §§ 922 and 924, de-
fines conduct for which the Government is precluded from even reaching by legis-
lation, much less prosecuting under it, even where a defendant enters a plea of
guilty to the charge, in this case a charge the Government is constitutionally
proscribed from prosecuting at all.

-8-

The principle is quite elementary, really. Although their has been no new "substantive rule" announced by the Court, it bears noticing, as the Court explained:

> "If, however, the Constitution establishes a rule and requires that the rule have retroactive application, then a state court's refusal to give the rule retroactive effect is reviewable by this Court. ...
> **Teague v. Lane**, 489 U.S. 288, ... recognized, however, two categories of rules that are not subject to its general retroactive bar. First, courts must give retroactive effect to new substantive rules of constitutional law. Substantive rules include "rules forbidding criminal punishment of certain primary conduct," as well as "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." ...
> "This Court's precedents addressing the nature of substantive rules, their differences from procedural rules, and their history of retroactive application establish that the Constitution requires substantive rules to have retroactive effect regardless of when a conviction became final."

**Montgomery v. Louisiana**, 136 S.Ct. 718, 727, 728, 729 (2016)(citations omitted).

When the Framers enumerated the powers of the Federal Government, thus of Congress, as to what conduct the Government was limited to reaching and enforcing by criminal laws, they set out "substantive rules" that have prospective effect, and, therefore, sets the limits to the types of conduct the Government is limited to prosecuting in a court of law. Therefore, it goes without saying:

> "In support of its holding that a conviction obtained under an unconstitutional law warrants habeas relief, the **Siebold** Court explained that "[a]n unconstitutional law is void, and is as no law." **Ibid.** A penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional. There is no grandfather clause that permits States to enforce punishments the Constitution forbids. To conclude otherwise would undercut the Constitution's substantive guarantees."

**Montgomery, supra**, 136 S.Ct., at 731 (citation omitted).

On this claim, alone, the conviction must be reversed, and the indictment dismissed with prejudice, on want of jurisdiction principles of law.

II. **Ground Two:** INEFFECTIVE ASSISTANCE OF COUNSEL—FAILURE TO CHALLENGE LACK OF TERRITORIAL JURISDICTION OF THE COURT AND OF THE GOVERNMENT

An established principle of jurisdictional law is that, while a parcel of land is not a state, but is within the boundaries of the United States, the Court has made clear:

> "By the Constitution, as is now well settled, the United States, having rightfully acquired the territories, and being the only government which can impose laws upon them, have the entire dominion and soverignty, national and municipal, Federal and state, over all the territories, so long as they remain in a territorial condition."

**Shively v. Bowlby**, 152 U.S. 1, 48 (1894)(citations omitted).

The consequences of this constitutional principle is that the Federal Government is precluded from enforcing its federal laws, when certain conduct, not within the enumeration of powers of Congress in the Legislative Article, is alleged to have been committed on such area that is within the territorial jurisdiction of the sovereign State.  Once the territory loses its "territorial condition," by becoming a State, the Court made clear:

> "[T]here was a transfer of sovereignty; a territory became a state, and it was held "the territorial government ceased to exist and all authority under it, including the laws organizing its courts of justice."

**Bird v. United States**, 187 U.S. 118, 124 (1902)(citations omitted).

As an example that the district courts cannot adjudicate cases in which a crime was alleged to have been committed within a State, the Court asked and answered the question as to what is the extent of jurisdiction that a State does possess, by writing:

> "[T]he jurisdiction of a state is co-extensive with its territory; co-extensive with its legislative power. ...
> "To bring an offense within the jurisdiction of the courts of the Union, it must have been committed in [an area] out of the jurisdiction of any state.  It is not the offense committed, but the [place] in which it is committed, which must be out of the jurisdiction of the state. ...
> "Congress may pass all laws which are necessary and proper for giving the most complete effect to this power.  Still, the general jurisdiction over the place, subject to this grant of power, adheres to the territory, as a portion of sovereignty not yet given away."

**United States v. Bevans**, 3 Wheat. 336, 386-87, 387-88, 389 (1818)(alterations added).

Stated another way, relevant to this argument:

"Generally speaking, within any state of this Union the preservation of the peace and the protection of person and property are the functions of the state government, and are not part of the primary duty, as least, of the nation. The laws of Congress in respect to those matters do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government."

**Caha v. United States**, 152 U.S. 211, 215 (1894).

The Court, in explaining the obvious fact that each of the two sovereigns is relegated to its own territorial boundaries for law enforcement, pointed out:

"This constitutionally mandated division of authority "was adopted by the Framers to ensure protection of our fundamental liberties." ... "Just as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front.""

**Lopez, supra** 514 U.S. at 552 (citations omitted).

And the Tenth Amendment is supposed to prevent exactly what the Government has been transgressing ever since the drafting of the Bill of Rights, and the principle for the Tenth Amendment was explained, thus:

"The principles of limited national powers and state sovereignty are intertwined. While neither originates in the Tenth Amendment, both are expressed by it. Impermissible interference with state sovereignty is not within the enumerated powers of the National Government, ... and action that exceeds the National Government's powers undermines the sovereign interests of States. ... The unconstitutional action can cause concommitent injury to persons in individual cases. ...
"In this case, however, where the litigant is a party to an otherwise justiciable case of controversy, [he] is not forbidden to object that [his] injury results from disregard of the federal structure of our Government. Whether the Tenth Amendment is regarded as simply a "'trusim,'" ... or whether is has independent force of its own, the result here is the same."

**Bond I, supra**, 131 S.Ct., at 2366-67 (citations omitted, alterations added).

In explaining the principles of individual sovereignty of the States, the Court pointed out:

"In 1842, the Court declared that for the 13 original States, the peo-

-11-

ple of each State, based on principles of sovereignty, "hold the absolute
right to all their navigable waters and the soils under them," subject
only to rights surrendered and powers granted by the constitution to the
Federal Government. ... In a series of 19th-century cases, the Court deter-
mined that the same principle applied to States later admitted to the Un-
ion, because the States in the Union are coequal sovereigns under the Con-
stitution. ... These precedents are the basis for the equal-footing doc-
trine, under which a States' title to these lands was "conferred not by
Congress but by the Constitution itself.""

**PPL Montana, LLC v. Montana**, 565 U.S. 576, 182 L.Ed.2d 77, 91 (2012)(citations

omitted).

In a nutshell, the Federal Government is precluded from enforcing its pur-

ported federal criminal laws, such as the firearms act involved in this case, in

the States who have equal laws proscribing such conduct, and the Tenth Amendment

enforces the prevention of federal encroachment into the States' sovereign juris-

diction, and requires the conviction in this case to be reversed, and the indict-

ment dismissed with prejudice on want of jurisdiction.

**III. Ground Three:**  ARTICLE III DISTRICT COURTS ARE PRECLUDED FROM BEING VESTED
WITH "JUDICIAL POWER" OVER CRIMINAL CASES, WHEN CONSTRUING
ARTICLE III, § 2, OF THE CONSTITUTION

When it comes to the cases the federal courts may exercise jurisdiction over,

the Court admonished:

"We think a case arising under the constitution or laws of the United
States, is cognizable in the courts of the Union, whoever may be the par-
ties to that case.
"Had any doubt existed with respect to the just construction of this
part of the section, that doubt would have been removed by the enumeration
of those cases to which the jurisdiction of the federal courts is extended,
in consequence of the character of the parties.  In that enumeration, we
find, "controversies between two or more states, between a state and citi-
zen of another state," "and between a state and foreign states, citizens,
of subjects."

**Cohens v. Virginia**, 6 Wheat. 264, 383 (1821).

Of course, that case was one between a citizen and a State, and, of course,

was a civil suit, not criminal case at all.

When it required a more concise explanation of what "the enumeration of

those cases to which the jurisdiction of the federal courts is extended" meant,
**id.**, at 383, we had to wait until the Court addressed Article III, § 2, of the
Constitution in a later case, where the Court instructed:

> "We first direct attention to the carefully chosen words of § 2, cl.
> 1, Art. 3. By that clause the judicial power is extended to all cases in
> law and equity arising under the Constitution, etc.; to all cases affect-
> ing ambassadors, other public ministers and consuls; and to all cases of
> admiralty and maritime jurisdiction. Then the comprehensive word "all" is
> dropped, and the enumeration continues in terms to apply to controversies
> (but not to "all") to which the United States shall be a party; to contro-
> versies between two or more states, etc. The use of the word "all" in
> some cases, and its omission in others, cannot be regarded as accidental,
> under the rule stated in an early case, ... and ever since fully accepted,
> that "In expounding the Constitution of the United States, every word must
> have its due force, and appropriate meaning; for it is evident from the
> whole instrument, that no word was unnecessarily **used, or need**lessly added.
> The many discussions which have taken place upon the construction of the
> Constitution, have proved the correctness of this proposition; and shown
> the high talent, the caution, and the foresight of the illustrious men who
> framed it. Every word appears to have been weighed with the utmost delib-
> eration, and effect to have been fully understood."

**Williams v. United States**, 289 U.S. 553, 572-73 (1933)(citations omitted).

In a later case, involving two of the classes of cases to which the "judicial
Power" is extended—"maritime and admiralty Jurisdiction—the Court refered to
those classes of cases thus:

> "These provisions of Article 3 are two of the nine separately enumera-
> ted classes of cases to which "judicial power" was extended by the Consti-
> tution and which thereby authorized grants by Congress of "judicial Power"
> to the inferior federal courts. The vast stream of litigation which has
> flowed through these courts from the beginning has done so on the assump-
> tion that, in dealing with a subject as technical as the jurisdiction of
> the courts, the Framers, predominently lawyers, used precise, differentiat-
> ing and not redundant language."

**Romero v. Int'l Term. Operat. Co.**, 358 U.S. 354, 364 (1959)(citations omitted).

Again, there has been no mention in regard to the "judicial Power" not ex-
tending to criminal cases, until 1998, and thus announced, and pointing out:

> "Article III, § 2, of the Constitution extends the "judicial Power"
> of the United States only to "Cases" and "Controversies." We have always
> taken this to mean cases and controversies of the sort traditionally amen-
> able to, and resolved by, the judicial process. ... Such a meaning is fair-
> ly implied by the text, since otherwise the purported restriction upon the

-13-

judicial power would scarcely be a restriction at all. Every criminal in-
vestigation conducted by the Executive is a "case," and every policy issue
resolved by congressional legislation involves a "controversy." These are
not, however, the sort of cases and controversies that Article III, § 2,
refers to, since "the Constitution's central mechanism of separation of pow-
ers depends largely upon common understanding of what activities are appro-
priate to legislatures, to executives, and to courts." ... Standing to sue
is part of the common understanding of what it takes to make a justiciable
case."

**Steel Co. v. Citizens for Better Env.**, 523 U.S. 83, 101-102 (1998)(citations omit-
ted).

In order for the United States to be a party in any case, as a plaintiff,
as it purports to be in a federal criminal case—cases the "judicial Power" does
not extend to, under the interpretation and construction of the Judicial Article
in the foregoing cases—the plaintiff, the Government, in this case, must demon-
strate it has suffered an injury of some sort, as described by the Court, when it
admonished:

"To establish Article III standing, an injury must be "concrete, par-
ticularized, and actual or imminent; fairly traceable to the challenged
action [of a defendant], and redressable by a favorable ruling." ... Al-
though imminence is concededly a somewhat elastic concept, it cannot be
stretched beyond its purpose—that the injury is certainly impending." .
.. Thus, we have repeatedly reiterated that "threatened injury must be
certainly impending to constitute injury in fact," and that "[a]llegations
of possible future injury" are not sufficient."

**Clapper v. Amnesty Int'l USA**, 568 U.S. 398, 409 (2013)(citations omitted).

Thus, the possession of a firearm by Petitioner, being either a prohibited
person or convicted felon, in no way, fashion, or manner causes any type of an
"injury" that the United States Government can complain about, in order to bring
a purported criminal prosecution, for conduct the Constitution precludes the Fed-
eral Government from reaching by legislation, in a court of law that cannot be
vested with "judicial Power" over criminal "cases" at all, and defeats the Gov-
ernment's attempt to circumvent Article III standing to bring a case to one of
its district courts that cannot sit in judgment over criminal cases at all.

Thus, because this collateral attack is an attack on the lack of subject-matter jurisdiction of this Court over the subject-conduct that the Constitution does not permit Congress to enact for Executive Branch enforcement within the States themselves, under our form of federalism the Constitution establishes, the Supreme Court has admonished:

> "Bain's elastic concept of jurisdiction is not what the term "juris-diction" means today, i.e., "the courts' statutory or constitutional power to adjudicate the case." ... This latter concept of subject-matter juris-diction, because it involves a court's power to hear a case, can never be forfeited or waived.  Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court."

**United States v. Cotton**, 535 U.S. 625, 630 (2002)(citations omitted).

Continuing, the Court observed:

> "Post-Bain cases confirm that defects in an indictment do not deprive a court of its power to adjudicate a case,  In **Lamar v. United States**, ..., the Court rejected the claim that "the court had no jurisdiction because the indictment does not charge a crime against the United States." ... Jus-tice Jolmes explained that a district court has "jurisdiction of all crimes **cognizable** under the authority of the United States ... [and] [t]he objec-tion that the indictment does not charge a crime against the United States goes only to the merits of the case.""

**Id.**, 535 U.S. 630-31 (citations omitted, emphasis added).

But, when the Constitution acts as a bar on the power of Congress to legis-late over conduct not enumerated in the Constitution for federal involvement, the argument that "the indictment does not charge a crime against the United States" is a valid one, since the only crimes that are **cognizable** "under the authority of the United States" are those which are specifically enumerated in the Consti-tution, as Chief Justice Marshall declared in **McCulloch, supra**, 4 Wheat., at 416-417, which was reiterated by Justice Thomas, in **Taylor v. United States**, 136 S. Ct. 2074 (2016), pointing out:

> "The Constitution expressly delegates to Congress authority over only four specific crimes: counterfeiting securities and coin of the United States, Art. I, § 8, cl. 6; piracies and felonies committed on the high seas, Art. I, § 8, cl. 10; offenses against the law of nations, **ibid.**;

and treason, Art. III, § 3, cl. 2. Given these limited grants of federal power, it is "clea[r] that Congress cannot punish felonies generally.""

*Id.*, 136 S.Ct., at 2082-83 (Thomas, J., dissenting).

To illustrate the point that the Federal Government cannot prosecute any criminal case in the district courts, for conduct the Government is precluded from reaching, the Supreme Court found that the power of the Government is "made up of concessions from the several states," and in like fashion the "judicial power of the United States is a consistent part of those concessions." **United States v. Hudson**, 7 Cranch 32, 33 (1812). Furthermore, although the district courts of the United States are created by the general government, those courts "possess[] no jurisdiction but what is given them by the power that creates them, **and can be vested with none but what the power ceded to the general government will authorize them to confer.**" Ibid. (emphasis added).

In other words:

> "The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it. **Their concurrence is necessary to vest it.**"

**Nashville v. Cooper**, 6 Wall. 247, 252 (1868)(emphasis added). **See also Finley v. United States**, 490 U.S. 545, 548 (1989)(same).

And that is what the reasoning for conferring the police power solely to the States over crime, thus adjudication of them in State courts, is a given, as inferred when the Court admonished:

> "In our federal system, the National Government possesses only limited powers; the States and the people retain the remainder. The States have broad authority to enact legislation for the public good—what we have often called a "police power." ... The Federal Government, by contrast, has no such authority and "can exercise only the powers granted to it," ... including the power to make "all Laws which shall be necessary and proper for carrying into Execution" the enumerated powers, U.S. Const., Art. I, § 8, cl. 18. For nearly two centuries it has been "clear" that, lacking a police power, "Congress cannot punish felonies generally." ... A criminal act committed wholly within a State "cannot be made an offence against the United States, unless it have some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States.""

Bond II, **supra**, 134 S.Ct., at 2086 (citations omitted).

With the limits of the "judicial Power" extendable only to cases and con-
troversies of the kind the Court made clear that the enumeration within Article
III, § 2, limited, it is accepted that if no criminal laws, other than those set
out in the Constitution in Art. I, § 8, cls. 6 and 10, and Art. III, § 3, cl. 2,
it is understood that the Framers would not confer upon Congress any power to
vest the district court with criminal jurisdiction over conduct left exclusively
to the "police power" of the States, and not the federal courts at all.

On these claims, **supra**, it is shown this Court lacked subject-matter juris-
diction over the conduct charged, and the person of the Petitioner, and requires
the reversal of the void conviction and dismissal of the indictment with preju-
dice.

The question begs to be asked: Whether on these claims of a showing of the
continuous "affirmative misconduct" on the part of the Government would this
Court impose equitable estoppel against the Government, where this misconduct,
of charging and prosecuting individuals, in district courts lacking criminal
"judicial Power," for conduct the prosecutors knew or reasonable should have
known the Constitution, with its limits on federal power, does not confer upon
Congress to legislate over the charged conducts in the thousands upon thousands
of purported federal criminal cases ongoing for scores of years in the Nation.

In the case of **Michigan Express, Inc. v. United States**, the Sixth Circuit
has observed:

> ""Estoppel is an equitable doctrine which a court may invoke to avoid
> injustice in particular cases." ... "The traditional elements of equitable
> estoppel are: (1) misrepresentation by the party against whom estoppel is
> asserted; (2) reasonable reliance on the misrepresentation by the party
> asserting estoppel; and (3) detriment to the party asserting estoppel." .
> .. The government, however, "may not be estopped on the same terms as any
> other litigant." ... Instead, "[a] party attempting to estop the government
> bears a heavy burden" in sustaining its argument. ... At a minimum, the

party must demonstrate some "affirmative misconduct" by the government in addition to the other estoppel elements." ...

**Id.**, 374 F.3d 424, 427 (6th Cir. 2004)(citations omitted).

Not having had the chance to define what the term "affirmative estoppel" means in this Circuit, the Court turned to its sister circuits to see how they defined the term, and then proceeded to announce:

> "Finding the common approach of sister circuits prudential, we hold that "affirmative misconduct" is more than mere negligence.  It is an act by the government that either intentionally or recklessly misleads the claimant.  The party asserting estoppel against the government bears the burden of proving an intentional act by an agent of the government and the agent's requisite intent."

**Ibid.**

Just as "[t]rial judges are presumed to know the law," **Walton v. Arizona**, 497 U.S. 639, 653 (1990), "[l]icensed attorneys are presumed competent in Ohio." **Ryder v. Kerns**, 335 Fed.Appx. 529, 534 (6th Cir. 2009)(citation omitted).  A federal prosecutor, being a licensed attorney in Ohio, "is presumed to know the law, and it is incumbent upon an attorney to know the law in an area in which he is practicing," **In re Gettys**, 205 B.R. 515, 524 (6th Cir. 1997)(citations omitted).  Thus, federal prosecutors are considered part of the law enforcement Branch of the Government, and "we must expect as much from law enforcement," **United States v. Hodson**, 10 Wall. 395, 409 (1870), who are "trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment." **Quilan v. AFI Servs., LLC**, 486 B.R. 827, 839 n. 9 (S.D.Tex. 2013)(citations omitted, internal quotation marks omitted).

Therefore, with the presumed knowledge of, and the understanding of, constitutional limits, the Government's attorneys—agents for the United States—did not exercise legal judgment in this case, nor in the thousands of other federql criminal cases, in charging and prosecuting Petitioner, and all the others,

-18-

for crimes the federal statutes should not even exist for enforcement within the territorial boundaries of any State, in district courts of the United States that cannot be conferred with criminal jurisdiction therefore.

With criminal cases, the misconduct begins in the Grand Jury room, with the Government's agent—the United States Attorney representative—misrepresenting to the members of the Grand Jury that the accused is presumed to have committed a constitutionally valid statutory crime, and should answer to the charge, when the truth of the matter, after considering this Memorandum, the charge for which is brought before the Grand Jury is one the Government is constitutionally foreclosed from prosecuting an individual under the circumstances in this case.  Then the misrepresentation continues by filing the void indictment with the Court, and haling the defendant into court to answer charges the agent will reasonable rely the defendant will believe are valid, and then proceed to prosecute him and ex-pose him to the deprivation of his liberty, to the detriment of the defendant, and meets all the requirements for a showing of all the elements of equitable estoppel, as well as the "affirmative misconduct" needed to establish the need to estop the Government from continuing its unconstitutional, thus illegal, prac-tice it has been perpetuationg for over one hundred years against the people of the United States, and not just against this Petitioner.

Therefore, this case brings to the fore that there are real limits on federal power—both in legislation by Congress and the "judicial Power" of the United States, and that those limits must be respected by the Government, as was ex-plained by the following statement:

> "Constitutional limitations are placed on government to preserve con-stitutional values in hard cases like these.  "[C]onstitutional lines have to be drawn, and on one side of every one of them is an otherwise sympa-thetic case that provokes impatience with the Constitution and with the line.  But constitutional lines are the price of constitutional government.""

**Zelman v. Simmons-Harris**, 536 U.S. 639, 686 (2002)(Souter, J., with whom Stevens,

-19-

Ginsburg, and Breyer, JJ., join, dissenting)(citations omitted).

A district court in the Fifth Circuit put it very bluntly, writing:

> "The judiciary owes considerable deference to the legislature's po-
> litical policy where they are within the framework of the Constitution's
> grants and restrictions.  When it fails to heed the limits on its own pow-
> er, however, it must be checked, for there is no discretion in the legis-
> lature to suspend the Constitution at all, much less for its own aggran-
> dizement.  'Without that instrument, it is powerless as any other associa-
> tion of men.' ...
> "Much of the opinions that exalt tolerance are given to chatter about
> 'coequal' branches and 'inconvenience' to the public interest.  First, al-
> though the branches are three and equal, the Constitution is supreme.  Sec-
> ond, the adminstrative inconvenience that would result from the invalida-
> tion of a major ... law, ... should concern the courts, but to those in
> power, the Constitution was meant to be a monumental inconvenience.
> "Courts are required occasionally to intrude into the working of the
> other branches, and they have been constitutionally obliged to impose the
> law on them from the beginning."

United States **v.** Hagen, 711 F.Supp. 879, 883 (S.D.Tex. 1989)(citations omitted).

This above principle is easily characterized as coming from the Supreme

Court's admonition, saying:

> "The people made the constitution, and the people can unmake it.  It
> is the creature of their own will, and lives only by their will.  But this
> supreme and irresistible power to make or to unmake, resides only in the
> whole body of the people; not in any sub-division of them.  The attempt of
> any of the parts to exercise it is  usurpation, and ought to be repelled
> by those to whom the people have delegated their power of repelling it."

Cohens, supra, 6 Wheat., at 389.

And this constitutional truth came right from the writings of James Madison,

when he pointed out:

> "As the people are the only legitimate fountain of power, and it is
> from them that the constitutional charter, under which the several branches
> of government hold their power, is derived, it seems strictly consonant to
> the republican theory to recur to the same original authority, not only
> whenever it may be necessary to enlarge, diminish, or new-model the powers
> of government, but also whenever any one of the departments may commit en-
> croachments on the chartered authorities of the others."

The Federalist No. 49 (J. Madison).

Unfortunately, it would appear the people cannot always depend on the fed-

eral courts to exercise their duty of "repelling" the "encroachments" committed

by Congress against the people of this Nation, and it must be reminded what the Supreme Court has admonished: "The Congress is a coequal branch of government whose Members take the same oath we do to uphold the Constitution of the United States." **Northwest Austin Mun. Util. Dist. v. Holder**, 557 U.S. 193, 204 (2009) (citation omitted).

Hopefully, this Court will adhere to its oath, "to impose the law on them," **Hagen, supra,** as the Supreme Court admonishes:

> "We will not shrink from our duty "as the bulwar[k] of a limited con-stitution against legislative encroachments," The Federalist No. 78, p. 526 (J. Cooke ed. 1961)(A. Hamilton), but "[i]t is a well-established prin-ciple governing the prudent exercise of this Court's jurisdiction that not decide a constitutional question if there is some other ground upon which to dispose of the case."

**Northwest Austin, supra,** 557 U.S. at 204 (citations omitted).

In this case, as presented, supra, there is no other way to rule in this case but to declare the statutory provisions charged in this case as being be-yond the power of Congress to legislate over the conduct, thus rendering the law charged in this case unconstitutional.  That is the beginning and the end of it.

CONCLUSION

As this amendment is shown to "relate back to the date of the original plead-ing if the original and amended pleadings "ar[i]se out of the conduct, transac-tion, or occurrence," Rule 15(c)(2)," **Mayle v. Felix**, 545 U.S. 644, 655 (2005), that is the claim of ineffective assistance of counsel raised in the initial plead-ing, this amended pleading, which also should incorporate the original claims, should be considered, and an ORDER to show cause should issue to the Government to answer these amended pleadings, along with the initial claims, as required by Rule 5, Rules Governing Proceedings Under 28 U.S.C. § 2255, and this matter pro-ceed, with the ruling of declaring the conviction void, for the reasons and mat-ters of law presented in this Memorandum in Supprt of this collateral attack on

the void conviction rendered by this Court, in this case.

Dated: August 3, _____, 2018.

Respectfully submitted,

RYAN D. MALONE, # 30802-160
Petitioner pro se
Federal Correctional Institution-Gilmer
P.O. Box 6000
Glenville, WV 26351-6000

### Certificate of Service

I hereby certify that a copy of the foregoing AMENDED PLEADINGS was served, by first class mail, postage prepaid, on this 3rd day of **August**, 2018, on:

Elliot Morrison
Asst. U.S. Attorney
801 West Superior Ave. Ste. 400
Cleveland, OH 44113

RYAN D. MALONE, Petitioner pro se

-22-